> **THIS MOTION SEEKS TO REJECT CERTAIN UNEXPIRED LEASES OF NONRESIDENTIAL REAL PROPERTY.  PARTIES RECEIVING THIS OMNIBUS MOTION SHOULD REVIEW THE MOTION TO SEE IF THEIR NAME(S) AND/OR LEASE(S) ARE SET FORTH IN THE MOTION AND/OR THE EXHIBITS ATTACHED THERETO TO DETERMINE WHETHER THE MOTION AFFECTS THEIR LEASE(S).**

**IN THE UNITED STATES BANKRUPTCY COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION**

| | | |
|---|---|---|
| **In re:** | § | **Chapter 11** |
| | § | |
| **CEC ENTERTAINMENT, INC.,** *et al.*, | § | **Case No. 20-33163 (MI)** |
| | § | |
| Debtors.[1] | § | **(Joint Administration Requested)** |
| | § | |

**OMNIBUS MOTION OF DEBTORS FOR ENTRY
OF ORDER (I) AUTHORIZING DEBTORS TO (A) REJECT
CERTAIN UNEXPIRED LEASES OF NONRESIDENTIAL REAL
PROPERTY AND (B) ABANDON *DE MINIMIS* PROPERTY IN
CONNECTION THEREWITH AND (II) GRANTING RELATED RELIEF**

CEC Entertainment, Inc. and its debtor affiliates, as debtors and debtors in possession in the above-captioned chapter 11 cases (collectively, the "**Debtors**"), respectfully represent as follows in support of this motion (the "**Motion**"):[2]

**Background**

1. The Debtors, on June 24, 2020 (the "**Petition Date**"), commenced their chapter 11 cases by filing voluntary petitions with this Court under chapter 11 of title 11 of the

---

[1] The Debtors in these chapter 11 cases, along with the last four digits of each Debtor's federal tax identification number, as applicable, are BHC Acquisition Corporation (0947); CEC Entertainment Concepts, L.P. (3011); CEC Entertainment Holdings, LLC (9147); CEC Entertainment, Inc. (5805); CEC Entertainment International, LLC (8177); CEC Entertainment Leasing Company (4517); CEC Leaseholder, LLC (N/A); CEC Leaseholder #2, LLC (N/A); Hospitality Distribution Incorporated (5502); Peter Piper Holdings, Inc. (6453); Peter Piper, Inc. (3407); Peter Piper Texas, LLC (6904); Peter Piper Mexico, LLC (1883); Queso Holdings, Inc. (1569); SB Hospitality Corporation (4736); SPT Distribution Company (8656); and Texas PP Beverage, Inc. (6895).  The Debtors' corporate headquarters and service address is 1707 Market Place Boulevard #200, Irving, TX 75063.

[2] The facts and circumstances supporting the relief requested herein are set forth in the First Day Declaration (as defined herein) filed contemporaneously herewith.  Capitalized terms used but not defined herein shall have the respective meanings ascribed to such terms in the First Day Declaration.

United States Code (the "**Bankruptcy Code**").  The Debtors are authorized to continue operating their businesses and managing their properties as debtors in possession pursuant to sections 1107(a) and 1108 of the Bankruptcy Code.  No trustee, examiner, or statutory committee has been appointed in these chapter 11 cases.  The Debtors have also filed a motion requesting joint administration of their chapter 11 cases pursuant to Rule 1015(b) of the Federal Rules of Bankruptcy Procedure (the "**Bankruptcy Rules**") and Rule 1015-1 of the Local Rules of the United States Bankruptcy Court for the Southern District of Texas (the "**Local Bankruptcy Rules**").

2.  The Debtors, together with their non-debtor affiliates, are a leading family entertainment and dining company with a global network of dining, entertainment, and arcade centers that are operated and franchised under the names "Chuck E. Cheese" and "Peter Piper Pizza."  The venues deliver a kid-friendly atmosphere and feature an array of wholesome entertainment offerings including arcade-style and skill-oriented games, rides, live entertainment shows, and the opportunity for guests to win tickets and redeem prizes such as toys, plush dolls, and branded merchandise.

3.  Additional information regarding the Debtors' businesses, capital structure, and the circumstances leading to the commencement of these chapter 11 cases is set forth in the *Declaration of James Howell in Support of Debtors' Chapter 11 Petitions and Related Requests for Relief* (the "**First Day Declaration**"), filed contemporaneously herewith and incorporated herein by reference.

## Jurisdiction

4.  The Court has jurisdiction to consider this matter pursuant to 28 U.S.C. § 1334.  This is a core proceeding pursuant to 28 U.S.C. § 157(b).  Venue is proper before the Court pursuant to 28 U.S.C. §§ 1408 and 1409.

**Relief Requested**

5. By this Motion, the Debtors request, pursuant to sections 365 and 554(a) of title 11 of the United States Code (the "**Bankruptcy Code**"), and Rules 6006 and 6007 of the Federal Rules of Bankruptcy Procedure (the "**Bankruptcy Rules**"), entry of an order (i) authorizing the Debtors to (a) reject the Venue Leases (as defined herein), each effective *nunc pro tunc* to the Petition Date (as defined herein) and (b) abandon any Remaining Property (as defined herein) and (ii) granting related relief.

6. A proposed form of order granting the relief requested herein is annexed hereto as **Exhibit A** (the "**Proposed Order**"). A schedule identifying and describing the Venue Leases (as defined herein) is annexed to the Proposed Order as **Schedule 1**.[3]

**Venue Leases**

7. Prior to commencing these chapter 11 cases, and as part of the Debtors' ongoing efforts to stabilize their business following the closure of several of the Debtors' venues (the "**COVID Closures**"), the Debtors initiated a comprehensive review and analysis of their venue lease portfolio. As a result of the initial phase of this analysis, the Debtors, in their reasonable business judgment, have decided to permanently abandon forty-five (45) closed or underperforming venues (the "**Underperforming Venues**") and seek to reject the associated real property leases (the "**Venue Leases**"). All of the Underperforming Venues were closed prior to the Petition Date and are currently vacant.[4] The Debtors seek authority to reject the Venue Leases *nunc pro tunc* to the Petition Date.

---

[3] The Debtors reserve their rights to modify the schedule of Venue Leases by removing one or more leases from **Schedule 1** with the consent of the applicable landlords, without prejudice to their rights to reject such leases at a later date.

[4] Approximately 27 of the venues were closed due to COVID 19, 4 venues were closed due to lock outs, 3 venues were closed due to expiring leases, and 11 venues that were permanently closed prior to COVID Closures.

8. After evaluating a number of factors, the Debtors concluded that the Underperforming Venues do not meet the requisite performance criteria to rationalize their continued operation. In addition, the leases associated with the Previously Closed Venues have no go-forward value to the Debtors. Given the overall losses that the Debtors have been incurring on the Underperforming Venues and Previously Closed Venues, and their lack of strategic value in the Debtors' go-forward business plan, the Debtors have concluded, in consultation with their advisors, that the Venue Leases are unlikely to generate significant value for the Debtors' estates. As such, the Debtors have determined, in the exercise of their business judgment, that it is in the best interests of their estates to seek authority to reject the Venue Leases. Rejecting the Venue Leases will allow the Debtors to avoid the accrual of unnecessary administrative expenses with no foreseeable benefits to the Debtors' estates.

### Remaining Property

9. During the ordinary course of business, the Debtors accumulated certain miscellaneous assets at the Underperforming Venues, including certain fixtures and equipment. The Debtors generally will remove such assets from the Underperforming Venues and transport the assets to the Debtors' remaining venue locations. The Debtors have determined, in the exercise of their business judgment, that certain of these assets will be exceedingly difficult or expensive to remove or store (the "**Remaining Property**"). The Debtors estimate that the Remaining Property is of *de minimis* value; therefore, the Debtors will not realize any economic benefit by retaining the Remaining Property. Accordingly, the Debtors request authority to abandon any Remaining Property at the Underperforming Venues.

**Relief Requested Should Be Granted**

A.     **Rejection of the Venue Leases Reflects the Debtors' Sound Business Judgment**

10.     Section 365(a) of the Bankruptcy Code provides that a debtor, "subject to the court's approval, may assume or reject any . . . executory contract or unexpired lease of the debtor." 11 U.S.C. § 365(a). The purpose behind section 365(a) is "to permit the trustee or debtor-in-possession to use valuable property of the estate and to renounce title to and abandon burdensome property." *In re Republic Airways Holdings Inc.*, 547 B.R. 578, 582 (Bankr. S.D.N.Y. 2016) (quoting *Orion Pictures Corp. v. Showtime Networks, Inc. (In re Orion Pictures Corp.)*, 4 F.3d 1095, 1098 (2d Cir. 1993)); *see also In re Exide Techs.*, 607 F.3d 957, 967 (3d Cir. 2010) ("Courts may use § 365 to free a [debtor] from burdensome duties that hinder its reorganization"); *In re Bildisco*, 465 U.S. 513, 528 (1984) ("[T]he authority to reject an executory contract is vital to the basic purpose to a Chapter 11 reorganization, because rejection can release the debtor's estate from burdensome obligations that can impede a successful reorganization.").

11.     The standard applied by courts to determine whether the assumption or rejection of an unexpired nonresidential lease should be authorized is the "business judgment" test, which requires a debtor to have determined that the requested assumption or rejection would be beneficial to its estate. *See Richmond Leasing Co. v. Capital Bank,* N.A., 762 F.2d 1303, 1309 (5th Cir. 1985) ("It is well established that 'the question whether a lease should be rejected . . . is one of business judgment.'") (quoting *Grp. of Institutional Inv'rs v. Chi., Milwaukee, St. Paul & Pac. R.R. Co.,* 318 U.S. 523, 550 (1943)); *see also In re Pilgrim's Pride Corp.*, 403 B.R. 413, 422 (Bankr. N.D. Tex. 2009) ("The general rule is that the decision to reject a given contract should be left to the trustee's (or debtor in possession's) sound business judgment.").

12.     In applying the business judgment standard, bankruptcy courts give deference to a debtor's decision to assume or reject leases. *See, e.g., Sharon Steel Corp. v. Nat'l*

*Fuel Gas Distrib. Corp.*, 872 F.2d 36, 39–40 (3d Cir. 1989) (affirming the rejection of a service agreement as a sound exercise of the debtor's business judgment when the bankruptcy court found that such rejection would benefit the debtors' estate); *In re Idearc Inc.*, 423 B.R. 138, 162 (Bankr. N.D. Tex. 2009) (stating that the business judgment standard only "requires a showing that the proposed course of action will be advantageous to the estate." (citation omitted)) .

13.  Rejection of the Venue Leases is well within the Debtors' business judgment and will serve the best interests of their estates. The Debtors seek authority to reject the Venue Leases to avoid the incurrence of any additional, unnecessary expenses related to the Venue Leases and the maintenance of any Underperforming Venues. The Debtors have engaged in a robust process to review and analyze the Venues Leases and have concluded that the cost of maintaining the Underperforming Venues outweighs any revenues or strategic value that the Underperforming Venues could generate in the future.

14.  After evaluation and analysis, the Debtors, with the assistance of their advisors, have determined, in the exercise of their sound business judgment, that there is no net benefit that is likely to be realized from the Debtors' continued efforts to retain and market the Venue Leases and that there is little, if any, likelihood that the Debtors will be able to realize value from the Venue Leases. Accordingly, the Debtors have concluded that rejection of the Venue Leases is in the best interest of the Debtors' estates, their creditors, and other parties in interest.

B.  **Rejection of the Venue Leases as of the Petition Date Is Appropriate**

15.  Section 365 of the Bankruptcy Code does not specifically address whether this Court may order rejection to be applied retroactively. *See In re Amber's Stores, Inc.*, 193 B.R. 819, 826-27 (Bankr. N.D. Tex. 1996) ("[N]othing precludes [the court] . . . from approving . . . rejection of a non-residential real property lease retroactively to an earlier date."). Authorizing the rejection of the Venue Leases *nunc pro tunc* to the Petition Date is consistent with prior rulings of

courts in this and other circuits, which have held that a bankruptcy court may authorize the retroactive rejection of a nonresidential lease if the balance of the equities favors such retroactive rejection. *See e.g. Id.* at 826 (using a standard based on the equities of the case); *In re Stonebridge Techs., Inc.*, 430 F.3d 260, 273 (5th Cir. 2005) ("[W]e note that most courts have held that lease rejection may be retroactively applied."); *see also Thinking Machs. Corp. v. Mellon Fin. Servs. Corp. (In re Thinking Machs. Corp.)*, 67 F.3d 1021, 1028 (1st Cir. 1995) (finding that, in the context of rejections of executory contracts, "bankruptcy courts may enter retroactive orders of approval, and should do so when the balance of equities preponderates in favor of such remediation"); *In re At Home Corp.*, 392 F.3d 1064, 1065–66 (9th Cir. 2004) (affirming bankruptcy court's approval of retroactive rejection), *cert. denied sub nom. Pac. Shores Dev., LLC v. At Home Corp.*, 546 U.S. 814 (2005).

16. In this instance, the balance of the equities favors approval of the rejection of the Venue Leases as of the Petition Date. Rejection of the Venue Leases *nunc pro tunc* to the Petition Date will allow the Debtors to avoid the unnecessary economic burden of paying rent for the Underperforming Venues—all of which currently are closed—on an administrative expense basis. Furthermore, the counterparties to the Venue Leases will not be prejudiced by such retroactive rejection because the Debtors surrendered the respective properties to the applicable landlords (the "**Landlords**") prior to the Petition Date. In the event the Debtors have not surrendered the premises of a particular venue on or before the Petition Date, the effective date of the rejection shall be no earlier than the date the Debtors turn over the premises. Accordingly, the equities weigh in favor of retroactive rejection.

### C.     Abandonment of Any Remaining Property Is Authorized by Section 554(a) of the Bankruptcy Code

17.    Under section 554(a) of the Bankruptcy Code, a debtor, after notice and a hearing, is authorized to "abandon any property of the estate that is burdensome to the estate or that is of inconsequential value and benefit to the estate."  11 U.S.C. § 554(a).   The right to abandon property is virtually unfettered, unless (a) abandonment of the property will contravene laws designed to protect public health and safety or (b) the property poses an imminent threat to the public's welfare. *See In re Midlantic Nat'l Bank*, 474 U.S. 494, 501 (1986).  Neither of these limitations is relevant under the instant facts.

18.    Any Remaining Property left at the Underperforming Venues is of inconsequential value to the Debtors' estates, and the costs to the Debtors of removing or storing the Remaining Property will exceed any realistic economic benefit that might be realized by retaining such property.  Accordingly, the Debtors have determined, in the exercise of their sound business judgment that abandonment of any Remaining Property will be in the best interest of the Debtors and their estates.

### Bankruptcy Rules 6004(a) and (h)

19.    To implement the foregoing successfully, the Debtors request that the Court find that notice of the Motion is adequate under Bankruptcy Rule 6004(a) under the circumstances, and waive the 14-day stay of an order authorizing the use, sale, or lease of property under Bankruptcy Rule 6004(h).  As explained above and in the First Day Declaration, the relief requested herein is necessary to avoid immediate and irreparable harm to the Debtors.  Accordingly, ample cause exists to justify finding that the notice requirements under Bankruptcy Rule 6004(a) have been satisfied and to grant a waiver of the 14-day stay imposed by Bankruptcy Rule 6004(h), to the extent such notice requirements and such stay apply.

**Reservation of Rights**

20. Nothing contained herein is intended or shall be construed as (a) an admission as to the validity of any claim against the Debtors; (b) a waiver of the Debtors' or any appropriate party in interest's rights to dispute the amount of, basis for, or validity of any claim against the Debtors; (c) a waiver of any claims or causes of action which may exist against any creditor or interest holder; or (d) an approval, assumption, adoption, or rejection of any agreement, contract, lease, program, or policy between the Debtors and any third party under section 365 of the Bankruptcy Code. Likewise, if the Court grants the relief sought herein, any payment made pursuant to the Court's order is not intended to be and should not be construed as an admission to the validity of any claim or a waiver of the Debtors' rights to dispute such claim subsequently.

**Notice**

21. Notice of this Motion will be provided to (a) the U.S. Trustee; (b) the holders of the 30 largest unsecured claims against the Debtors on a consolidated basis; (c) Akin Gump Strauss Hauer & Feld LLP, One Bryant Park, Bank of America Tower, New York, NY 10036 (Attn: Ira Dizengoff, Philip Dublin, and Daniel Fisher), on behalf of the Ad Hoc Group; (d) King & Spalding LLP, 353 N. Clark Street, 12th Floor, Chicago, IL 60654 (Attn: Michael Rupe and Matthew Warren), on behalf of the Noteholder Ad Hoc Group; (e) the Internal Revenue Service; (f) the United States Attorney's Office for the Southern District of Texas; (g) the Securities and Exchange Commission; (h) the Landlords; and (i) any other party entitled to notice pursuant to Local Rule 9013-1(d) (collectively, the "**Notice Parties**"). The Debtors believe that no further notice is required under the circumstances.

**No Previous Request**

22. No previous request for the relief sought herein has been made by the Debtors to this or any other court.

WHEREFORE the Debtors respectfully request entry of the Proposed Order granting the relief requested herein and such other and further relief as the Court may deem just and appropriate.

Dated: June 25, 2020
   Houston, Texas

Respectfully submitted,

 /s/  Alfredo R. Pérez
WEIL, GOTSHAL & MANGES LLP
Alfredo R. Pérez (15776275)
Clifford Carlson (24090024)
700 Louisiana Street, Suite 1700
Houston, Texas  77002
Telephone: (713) 546-5000
Facsimile:  (713) 224-9511
Email:  Alfredo.Perez@weil.com
   Clifford.Carlson@weil.com

-and-

WEIL, GOTSHAL & MANGES LLP
Matthew S. Barr (*pro hac vice* admission pending)
Ryan Preston Dahl (*pro hac vice* admission pending)
Scott Bowling (*pro hac vice* admission pending)
767 Fifth Avenue
New York, New York  10153
Telephone:  (212) 310-8000
Facsimile:   (212) 310-8007

*Proposed Attorneys for Debtors
and Debtors in Possession*

**Certificate of Service**

I hereby certify that on June 25, 2020, a true and correct copy of the foregoing document was served by the Electronic Case Filing System for the United States Bankruptcy Court for the Southern District of Texas, and will be served as set forth in the Affidavit of Service to be filed by the Debtors' proposed claims, noticing, and solicitation agent.

                                               */s/ Alfredo R. Pérez*
                                               Alfredo R. Pérez