**IN THE UNITED STATES BANKRUPTCY COURT**
**FOR THE SOUTHERN DISTRICT OF TEXAS**
**HOUSTON DIVISION**

| | | |
|---|---|---|
| In re: | § | **Chapter 11** |
| | § | |
| **CEC ENTERTAINMENT, INC.**, *et al.*, | § | **Case No. 20-33163 (MI)** |
| | § | |
| Debtors.[1] | § | **(Jointly Administered)** |
| | § | |

**DEBTORS' OMNIBUS REPLY TO OBJECTIONS TO EMERGENCY MOTION**
**FOR ENTRY OF ORDER (I) EXTENDING TIME FOR PERFORMANCE OF**
**OBLIGATIONS ARISING UNDER UNEXPIRED NON-RESIDENTIAL**
**REAL PROPERTY LEASES, AND (II) GRANTING RELATED RELIEF**

CEC Entertainment, Inc. and its debtor affiliates in the above-captioned chapter 11 cases, as debtors and debtors in possession (collectively, the "**Debtors**" or the "**Company**"), in reply (the "**Reply**") to the objections (the "**Objections**") to the *Emergency Motion of Debtors for Entry of Order (I) Extending Time for Performance of Obligations Arising Under Unexpired Non-Residential Real Property Leases, and (II) Granting Related Relief* [Docket No. 132] (the "**Motion**"),[2] respectfully represent as follows:

---

[1]  The Debtors in these chapter 11 cases, along with the last four digits of each Debtor's federal tax identification number, as applicable, are BHC Acquisition Corporation (0947); CEC Entertainment Concepts, L.P. (3011); CEC Entertainment Holdings, LLC (9147); CEC Entertainment, Inc. (5805); CEC Entertainment International, LLC (8177); CEC Entertainment Leasing Company (4517); CEC Leaseholder, LLC (N/A); CEC Leaseholder #2, LLC (N/A); Hospitality Distribution Incorporated (5502); Peter Piper Holdings, Inc. (6453); Peter Piper, Inc. (3407); Peter Piper Texas, LLC (6904); Peter Piper Mexico, LLC (1883); Queso Holdings Inc. (1569); SB Hospitality Corporation (4736); SPT Distribution Company (8656); and Texas PP Beverage, Inc. (6895).  The Debtors' corporate headquarters and service address is 1707 Market Place Boulevard #200, Irving, TX 75063.

[2]  Capitalized terms used but not defined herein shall have the respective meanings ascribed to such terms in the Motion.

**Preliminary Statement**

1.      The record is uncontroverted that the present national emergency and global pandemic continue to impose unprecedented challenges for the Debtors, resulting in, among other things, furloughing most hourly employees and approximately 65% of their support center personnel, and, at the height of the pandemic, elimination of upwards of 90% of the Company's year-over-year revenue during each week of suspension of on-premises customer business.  If "cause" does not exist under these facts, it is difficult to imagine when "cause" would ever exist under section 365(d)(3) of the Bankruptcy Code.  Indeed, to the Debtors' knowledge, every single court to consider this issue since the onset of COVID-19 in Spring 2020 has reached this same conclusion.[3]

2.      Under these circumstances, there is "cause" to extend the time for performance of obligations arising under the Debtors' non-residential real property leases ("**Lease**

---

[3] *See* Order Extending the Temporary Procedures in the Order (I) Extending Time for Performance of Obligations Arising under Unexpired Real Property Leases, (II) Establishing Temporary Procedures and (III) Granting Related Relief, *In re True Religion Apparel, Inc.*, Case No. 20-10941 (CSS) [Docket No. 367] (Bankr. D. Del. June 22, 2020); Order (I) Extending Time for Performance of Obligations Arising Under Unexpired Non-Residential Real Property Leases and (II) Granting Related Relief, *In re J.C. Penney Company, Inc.*, Case No. 20-20182 (DRJ) [Docket No. 721] (Bankr. S.D. Tex. June 11, 2020); Order (I) Extending Time for Performance of Obligations Arising Under Unexpired Non-Residential Real Property Leases, and (II) Granting Related Relief, *In re Chinos Holdings, Inc.*, Case No. 20-32181 (KLP) [Docket No. 323] (Bankr. E.D. Va. May 26, 2020); Order Granting Motion of the Chapter 7 Trustee for Entry of an Order Extending the Time for Performance of Any Obligations of the Debtors under Any Unexpired Lease or Nonresidential Real Property Pursuant to Section 365(d)(3) of the Bankruptcy Code, *In re Art Van Furniture,* LLC, Case No. 20-10553 (CSS) [Docket No. 373] (Bankr. D. Del. Apr. 27, 2020); Order (I) Approving Relief Related to the Interim Budget, (II) Temporarily Adjourning Certain Motions and Applications for Payment, and (III) Granting Related Relief, *In re Pier 1 Imports, Inc.*, Case No. 20-30805 [Docket No. 493] (KRH) (Bankr. E.D. Va. Apr. 6, 2020); Order Temporarily Suspending the Debtors' Chapter 11 Cases Pursuant to 11 U.S.C. §§ 105 and 305, *In re Modell's Sporting Goods, Inc.,* Case No. 20-14179 (VFP) [Docket No. 166] (Bankr. D. N.J. Mar. 27, 2020).

**Obligations**") until August 24, 2020, as requested in the Motion (the "**Extension Period**").  The Objections at their core seek to deny relief plainly contemplated and permitted by section 365(d)(3) of the Bankruptcy Code.

3.     The Debtors have faced and continue to face profound uncertainties arising from COVID-19, and absolutely no one could have foreseen the consequences that have resulted since the pandemic began.  Although the Debtors are in the process of gradually reopening venues in certain states and municipalities that have relaxed or lifted shelter-in-place orders, this process is by no means smooth or consistent, as recent resurgences of COVID-19 cases in some states have once again mandated closure of the Debtors' venues.  The Debtors' ability to reopen locations, operate, and serve customers at pre-pandemic levels cannot be taken for granted.  This is especially true given the recent resurgence of COVID-19, with many of the most populous states experiencing record levels of confirmed cases and states pulling back on reopening.

4.     As the Debtors reopen, there will be a significant adjustment period as the Debtors and customers alike balance broader health considerations with the goal of achieving a return to normalcy.  The reality is that customers simply cannot visit the Debtors' locations as they used to before the pandemic.  Significantly, limited re-openings and carryout and delivery service — while allowing the Debtors to continue to employ a few key management-level employees at locations where this is offered — do not generate nearly sufficient revenues to cover the costs associated with paying rent and other operational expenses at those locations.  Yet many of the Landlords still rigidly demand immediate payment of Lease Obligations as if the Debtors' locations were operating at pre-pandemic levels and without regard to the Debtors' rights under section 365(d)(3) of the Bankruptcy Code.

5.      The Objections miss the mark by raising many of the same issues, which can be principally summarized as follow:

- "cause" under section 365(d)(3) does not exist because the Debtors will re-open their venues, the Debtors have sufficient cash on hand to cover the Lease Obligations, and the Debtors cannot show that deferral of Lease Obligations will substantially benefit the estate;

- the Debtors should not be allowed to reserve their right to seek an additional extension of time beyond 60 days, and the Debtors should immediately pay deferred lease obligations upon the expiration of the 60-day period;

- section 365(d)(3) should not apply in a case of this magnitude, where there will be a significant burden on Landlords;

- landlords are entitled to adequate protection (the "**Adequate Protection Objections**") in the form of escrowed or segregated funds to cover the Lease Obligations; maintenance payments like "storage" rent, utilities, or taxes; additional payments beyond the terms of Leases; postpetition rent payments; or preventing a waiver of section 506(c) and 552 of the Bankruptcy Code; and

- miscellaneous objections asserted by various Landlords ("**Other Objections**").

6.      The Debtors, for their part, recognize and acknowledge the hardship that these chapter 11 cases impose on all stakeholders—including their Landlords, but also, and to no lesser extent, their employees, vendors, business partners, and other creditors.  The fact remains, however, that section 365(d)(3) provides the Debtors with relief through at least the Extension Period under the uncontroverted record here.  There can be no real dispute on this point.

7.      The impact of COVID-19 on the Debtors' business cannot be overstated. As noted above, the suspension of on-premises customer business eliminated upwards of 90% of the Company's year-over-year revenue during each week of the suspension.  Unfortunately, with continued uncertainty and possibility of resurgence, the Debtors are not forecasting a recovery of pre-pandemic operations in the near future.  In this environment, the Debtors must defer or reduce expenses and preserve liquidity.  Further, the fact that some locations are beginning to reopen

4

should not preclude the Debtors from receiving the benefit provided by the 60-day Extension Period under Bankruptcy Code section 365(d)(3). The Debtors' reopened locations are, and will be, operating under substantially limited capacities and subject to significant restrictions to protect the Debtors' employees and customers.

8.     The Objectors' assertion that the Debtors should not be allowed to reserve their rights to seek further extensions should also be rejected and is, at best, premature. There is no legal basis on which the Landlords can preemptively enjoin the Debtors from seeking additional relief separately or at a later date. Should the Debtors seek a further extension or relief pursuant to section 365(d)(3) of the Bankruptcy Code or any other provision of applicable law, the Objectors and other parties are free to object at the appropriate time. This is not that time.[4]

9.     As to the Adequate Protection Objections, such demands are procedurally improper and should instead be brought by motion. Even if the Objections could be deemed informal motions (and they cannot), there is no evidence in the record showing the validity, priority, or extent of the interests that would warrant adequate protection. Regardless, like the landlords in *In re Pier 1 Imports, Inc.*, No. 20-30805-KRH, 2020 WL 2374539, at *1 (Bankr. E.D. Va. May 10, 2020), the Landlords here remain adequately protected because the Debtors anticipate having sufficient liquidity to make "catch-up" rent payments following the Extension Period and the Landlords may also pursue administrative expense claims for Lease Obligations extended pursuant to section 365(d)(3). Further, to require rental payments as adequate protection would effectively nullify the 60-day breathing spell provided by section 365(d)(3), which is contrary to basic principles of statutory interpretation. *See Howard Hughes Company, L.L.C. v. C.I.R.*, 805

---

[4] Indeed, the Debtors reserve the right to seek additional relief. Certain states or local governments have orders or ordinances in place that may allow the Debtors to defer or completely avoid rent. The Debtors are currently reviewing and assessing these orders and ordinances.

F.3d 175, 183 (5th Cir. 2015) (quoting *Hibbs v. Winn*, 542 U.S. 88, 89 (2004)) ("[I]n statutory interpretation, we generally follow 'the rule against superfluities, [which] instructs courts to interpret a stature to effectuate all its provisions, so that no part is rendered superfluous.'") (second alteration in original); *see also In re Klein Glass & Mirror, Inc.*, 155 B.R. 718, 721 (Bankr. S.D. Tex. 1992) (quoting *United States v. Wong Kim Bo*, 472 F.2d 720, 722 (5th Cir. 1972)) ("In interpreting a statute … words in statutes should not be discarded as 'meaningless' and 'surplusage' when [the legislature] specifically and expressly included them …") (alterations in original); *In re Fesq*, 153 F.3d 113, 115 (3d Cir. 1998) (quoting *Cushman v. Trans Union Corp.*, 115 F.3d 220, 225 (3d Cir.1997)) ("[A]s a general rule of statutory construction '[w]e strive to avoid a result that would render statutory language superfluous, meaningless, or irrelevant.'").

10.     Finally, the Motion requests a ***deferral*** of the Debtors' Lease Obligations; the Debtors are not seeking to eliminate or extinguish the Objectors' claims.  If the Court grants the Motion, the Landlords will continue to have and accrue administrative expense claims, and will continue to have their remedies under applicable law if the Debtors fail to perform their obligations after the Extension Period.  The Debtors' cash collateral budget contemplates funding being available at the end of the Extension Period to timely pay all outstanding Lease Obligations in full unless otherwise negotiated with Landlords or ordered by the Court.  Additionally, the Debtors intend to file a motion seeking approval of debtor-in-possession financing in the near term. The Motion simply defers the Lease Obligations until a later date while providing the Debtors' estates with a breathing spell that is clearly necessary and appropriate amidst this global pandemic.

11.     For the reasons set forth in the Motion and in this Reply, the Objections should be overruled and the Motion should be granted.

## **Background**

12.     On June 24, 2020 (the "**Petition Date**"), the Debtors each commenced with this Court a voluntary case under chapter 11 of title 11 of the United States Code (the "**Bankruptcy Code**").  The Debtors continue to operate their businesses and manage their properties as debtors in possession pursuant to sections 1107(a) and 1108 of the Bankruptcy Code. On July 13, 2020, the United States Trustee (the "**U.S. Trustee**") appointed an official committee of unsecured creditors (the "**Creditors' Committee**") in these chapter 11 cases pursuant to section 1102 of the Bankruptcy Code.  No trustee or examiner has been appointed in these chapter 11 cases.  The Debtors' chapter 11 cases are being jointly administered for procedural purposes only pursuant to Rule 1015(b) of the Federal Rules of Bankruptcy Procedure (the "**Bankruptcy Rules**") and Rule 1015-1 of the Local Bankruptcy Rules for the United States Bankruptcy Court for the Southern District of Texas (the "**Local Bankruptcy Rules**").

13.     On June 29, 2020, the Debtors filed the Motion.  As of July 30, 2020, the Creditors' Committee, lessors and managing agents to properties leased by the Debtors, and other parties in interest (collectively, the "**Objectors**") have filed approximately 36 objections and joinders.  *See* Docket Nos. 134, 139, 143, 144, 146, 147, 148, 150, 152, 158, 261, 278, 283, 286, 290, 291, 292, 294, 297, 298, 301, 304, 306, 307, 312, 313, 314, 315, 361, 375, 380, 390, 391, 415, 444, 445.

14.     In support of the Motion and this Reply, on June 29, 2020, the Debtors filed the declaration of Chad E. Coben (the "**Coben Declaration**"), and incorporate by reference the First Day Declaration.[5]

---

[5]     Additional information regarding the Debtors' businesses, capital structure, and the circumstances leading to the commencement of these chapter 11 cases is set forth in the

**Reply**

I.  **Exigent Circumstances and the Necessary Breathing Spell for the Debtors' Estates are "Cause" Pursuant to Section 365(d)(3)**

15.    The record is undisputed that the Debtors, like many businesses, have suffered, and continue to suffer, severe adverse effects as a result of the COVID-19 pandemic.  As the Court is aware, this has already required the Debtors to furlough most of their hourly employees and over 65% of its support center personnel who rely on their employment with the Debtors to cover daily living costs.  Of the approximately 300 Chuck E. Cheese venues that reopened by June 30, 2020, only 90 of them were permitted to operate at greater than 50% capacity, and with the recent rise in positive testing in COVID-19, several states have issued orders effectively closing the Debtors' venues or rolling back the permitted occupancies, including, but not limited to, California, Colorado, Massachusetts, Michigan, New Mexico, New Jersey, New York, North Carolina, Texas, and Washington.  For instance, on July 30, 2020 the Governor of New Mexico announced the extended the closure of indoor dining and other indoor activities (e.g., arcades) possibly through the end of August 2020; and Michigan's Governor made a similar announcement on July 29, 2020.  Within those two states plus the other 8 states referenced are the locations of 227 of the Debtors' approximately 500 venues.  Again, the suspension of on-premises customer business eliminated upwards of 90% of the Company's year-over-year revenue during each week of the suspension.

16.    Yet the Objectors assert that the Debtors should not receive an Extension Period because certain locations are open, open on a limited basis, or ***may*** reopen and generate

---

*Declaration of James Howell in Support of Debtors' Chapter 11 Petitions and Related Requests for Relief* [Docket No. 47] (hereinafter, the "**First Day Declaration**").

8

revenue such that deferral of the Lease Obligations is not warranted. *See, e.g.,* Docket Nos. 290, 291, 294, 304.

17. This is simply incorrect, and an over simplification of the constraints placed on the Debtors' businesses. Though certain states are reopening, capacity restrictions and continuing customer uncertainty about the safety of dining and entertainment venues have resulted in much lighter customer traffic compared to prior periods. Further, some locations that have recently re-opened have now closed again due to the resurgence of COVID-19 in certain areas, and additional locations may also be at risk to close. The Debtors are also navigating requests for tightened trade terms from vendors seeking not only greater comfort in transacting with the Debtors, but to repair the damage to their own businesses wrought by a four-month and continuing near-standstill of the retail industry. Therefore, the pandemic is a continuing and ever-fluctuating crisis that, along with the need for the Debtors to quickly recover in the face of ongoing restrictions and fundamentally changed consumer behaviors, creates significant "cause" meriting a brief respite on rent.

18. The Extension Period will provide necessary relief to the Debtors' estates and flexibility to stabilize their business during the early stages of these chapter 11 cases. The Extension Period will give the Debtors greater visibility into their cash flows and required disbursements during this period of unprecedented uncertainty. In addition, the Extension Period provides a necessary breathing spell for the Debtors to negotiate with Landlords in order to make an informed decision on whether to assume or reject unexpired Leases based on the practical circumstances. This breathing spell is precisely what section 365(d)(3) was intended to provide: "Such a request for an extension [under section 365(d)(3)] is usually based on the fact that the Debtors have numerous leases and sixty days is an insufficient period within which to analyze

them all or analyze the Debtor's prospects for a reorganization if it assumes them." *In re HQ Global Holdings, Inc.*, 282 B.R. 169, 175 (Bankr. D. Del. 2002).

19.     The same is true here.  As a key part of their reorganization efforts, the Debtors are working closely with their advisors to analyze their lease obligations and to negotiate with the Landlords in an effort to reach consensual resolutions regarding their current (and future) Lease Obligations.  If the Debtors are unable to reach satisfactory agreements through their negotiations with the Landlords, they may have no choice but to reject Leases that are unduly burdensome to the Debtors' estates.  The Debtors also anticipate that during the requested Extension Period, they can obtain additional information regarding the future desirability of certain venues.  This information will assist the Debtors in deciding whether to assume or reject those leases and will lessen the chance that the Debtors will reject favorable leases due to short-term fiscal constraints.

20.     The Objectors incorrectly argue that the Debtors should not be allowed to reserve the right to seek a further extension of rent deferral.  Not only is this argument premature, it ignores the recent decisions of practically every court asked to address this same issue.  *See In re 24 Hour Fitness Worldwide, Inc.*, Case No. 20-11558 (KBO) [Docket No. 407] (Bankr. D. Del. July 2, 2020) (not restricting the Debtors' right to further relief); *In re True Religion Apparel, Inc.*, Case No. 20-10941 (CSS) [Docket No. 367] (Bankr. D. Del. June 22, 2020) (same); *In re Chinos Holdings, Inc.*, Case No. 20-32181 (KLP) [Docket No. 323] (Bankr. E.D. Va. May 26, 2020) (same); *In re Pier 1 Imports, Inc.* No. 20-30805 (KRH) [Docket No. 637] (Bankr. E.D. Va. May 10, 2020) (preserving the Court's authority to extend the applicable period of relief provided by section 365(d)(3)); *In re Modell's Sporting Goods, Inc.*, No. 20-14179 (VFP) [Docket No. 294] (Bankr. D.N.J. Apr. 30, 2020) (extending the suspension of the Debtors' bankruptcy beyond 60

days without prejudice to the debtors' right to seek a further extension on any and all appropriate grounds). Here too, the Debtors have reserved their right to seek an additional deferral because the nation is in a period of significant uncertainty and the Debtors cannot determine what the future will present, especially given the resurgence of COVID-19. Should the Debtors act upon this reservation of rights and request additional relief, the Landlords are free to raise an objection at the appropriate time.

## II.   Neither the Bankruptcy Code nor Precedent Require the Debtors to Pay Deferred Rent Immediately Upon Expiration of the Extension Period

21.   The Objectors' assertion that the Debtors must pay all of their Lease Obligations immediately upon the expiration of the Extension Period is not supported by the Bankruptcy Code or other applicable law. *See* 11 U.S.C. §§ 365(d)(3), 503. "The determination of the timing of payment of administrative expenses is a matter within the discretion of the bankruptcy court." *In re HQ Glob. Holdings, Inc.*, 282 B.R. at 173. *See also In re Pier 1 Imports, Inc.*, Case No. 20-30805 (KRG) [Docket No. 637] (Bankr. D. Va. May 10, 2020) (finding that to compel immediate payment by the debtors would elevate the payment of rent to superiority status to be paid before all other accrued but unpaid administrative expenses); *In re M.L. Logan Precision Machining Co.*, No. 06-14625 ELF, 2007 WL 1468807, at *3 (Bankr. E.D. Pa. May 14, 2007) ("The time when an expense allowed pursuant to 11 U.S.C. § 365(d)(3) or § 503(b) actually must be paid is within the bankruptcy court's discretion."); *In re Goody's Family Clothing, Inc.*, 392 B.R. 604, 614 (Bankr. D. Del. 2008), *aff'd*, 401 B.R. 656 (D. Del. 2009), *aff'd sub nom. In re Goody's Family Clothing Inc.*, 610 F.3d 812 (3d Cir. 2010) (finding that administrative expense claims need not be paid immediately where there was minimal risk of administrative insolvency); *In re Microvideo Learning Sys., Inc.*, 232 B.R. 602, 607 (Bankr. S.D.N.Y.), *aff'd sub nom. In re Microvideo Learning Sys.*, 254 B.R. 90 (S.D.N.Y. 1999), *aff'd sub nom. In re Microvideo*

*Learning Sys., Inc.*, 227 F.3d 474 (2d Cir. 2000) ("The vast majority of courts have held that § 365(d)(3) does not create, *sub silentio*, an additional class of super-priority administrative claims.").

22.      While the Debtors' budget provides sufficient liquidity for the payment of deferred Lease Obligations, the significant uncertainty regarding the immediate future and the impact of COVID-19—with several states nearing record levels of confirmed COVID-19 cases just this week—should forewarn against directing the Debtors to immediately pay all postpetition Lease Obligations upon the Expiration Period.  Accordingly, at this time, the Court should deny the Objectors' requests for an order directing the immediate payment of all Lease Obligations at the end of the Expiration Period.

## III.      The Complexity of These Cases Warrants Relief under Section 365(d)(3)

23.      Certain Objectors argue that, because the Debtors' combined gross Lease Obligations are substantial, the Debtors should not be permitted a 60-day extension provided by section 365(d)(3) of the Bankruptcy Code.  Other Objectors argue that the magnitude of these Lease Obligations demonstrates the significant burden placed on the Debtors' Landlords.

24.      Such arguments are wholly irrelevant to the Debtors' rights under section 365(d)(3). Whether "cause" exists to grant relief per section 365(d)(3) is determined by the underlying merit rather than the total gross amount of deferred lease obligations, which is precisely why courts have deferred lease obligations under section 365(d)(3) ranging from relatively small amounts to considerable amounts in line with what the Debtors are seeking.  *See In re Chinos Holdings, Inc.*, Case No. 20-32181 (KLP) [Docket No. 323] (Bankr. E.D. Va. May 26, 2020) (granting deferral of lease obligations of approximately $46 million);*In re Pier 1 Imports, Inc.*, Case No. 20-30805 (KRH) [Docket No. 438] (granting deferral of rent of approximately $38

million); *In re DWE Screw Products, Inc.*, 157 B.R. 326, 329 (Bankr. N.D. Ohio 1993) (granting an extension of lease obligations under section 365(d)(3) on a $48,000 annual lease).

25.     The legislative history of section 365(d)(3) makes clear that such relief is entirely appropriate for large and complex cases such as these. *See Statement by the Hon. Peter W. Rodino Jr., Chairman of the House Committee on the Judiciary*, 130 Cong. Rec. S8894–95 (daily ed. June 29, 1984) (stating that the "60-day grace period is intended to give the [debtor] time to determine what lease obligations the debtor has and to locate the cash to make the required payment in *exceptionally large or complicated cases.*") (emphasis added). The Debtors are party to approximately 500 Leases, and while the Landlords assert that deferral of rent imposes a significant burden, the fact remains that the ongoing pandemic and related impact on these complex chapter 11 cases is clearly "cause" per section 365(d)(3). Forcing the Debtors to immediately begin paying Lease Obligations will compel the Debtors to reject a significant amount of additional leases without allowing the Debtors time to determine profitability or negotiate with landlords, which will contravene the very purpose of rent deferral under section 365(d)(3).

## IV.     Requests for Adequate Protection Must be Made by Separate Motion and, in Any Event, Additional Adequate Protection is Not Necessary Here

26.     The Objectors' demands for adequate protection are procedurally improper and should be denied. Courts require creditors to file independent motions for adequate protection:

> [T]he language 'on request' in § 363(e) strongly suggests that a secured creditor is entitled to adequate protection **only upon a motion** and only prospectively from the time protection is sought."

*In re Waverly Textile Processing, Inc.*, 214 B.R. 476, 479 (Bankr. E.D. Va. 1997) (emphasis added) (citation omitted); *see also Matter of Cont'l Airlines, Inc.*, 146 B.R. 536, 539 (Bankr. D. Del. 1992), *subsequently aff'd sub nom. In re Cont'l Airlines*, 91 F.3d 553 (3d Cir. 1996) ("[A] secured creditor can only receive adequate protection to the extent the collateral declined in value after the

secured creditor filed its motion for adequate protection."); *In re Best Prods. Co., Inc.*, 138 B.R. 155, 157 (Bankr. S.D.N.Y.), *aff'd sub nom. IBM Credit Corp. v. Best Prods. Co. (In re Best Prod. Co.*), 149 B.R. 346 (S.D.N.Y. 1992).

27.     This procedural requirement is not merely an elevation of form over substance.  In fact, the entity asserting an interest entitled to adequate protection also bears the burden under section 363(p) of the Bankruptcy Code to show "the validity, priority, or extent of the interest." *See* 11 U.S.C. § 363(p)(2); *In re Waverly Textile*, 214 B.R. at 479 (computing adequate protection as of the motion filing date).  Further, the moving party must establish that such adequate protection is "*necessary*"—not merely 'desirable' or 'preferred'—to adequately protect such interest.  *See* 11 U.S.C. § 363(e).  Such procedural requirements therefore ensure that a request for adequate protection is not merely pro forma but, instead, is supported by an adequate record and provides the debtor or other parties in interest with an opportunity to respond accordingly.

28.     The Objectors have wholly failed to sustain this burden, including by failing to establish the extent of any interest that requires "*necessary*" adequate protection.  Absent developing a *prima facie* case establishing the foregoing—which clearly the Adequate Protection Objections have not done—the demands for adequate protection should be denied at this time. Even if the Landlords had properly requested adequate protection, the Landlords are adequately protected here.  Adequate protection is not to provide Landlords with compensation for "use value."  *See United Sav. Ass'n of Texas v. Timbers of Inwood Forest Assocs., Ltd*., 484 U.S. 365, 369–82 (1988) (finding an undersecured creditor is not entitled to receive monthly payments for the use value of the loan collateral which the stay prevents the creditor from foreclosing on where the collateral is not depreciating).

29.     Nor does "adequate protection" provide Landlords with an absolute right to payment.  Put bluntly, "adequate protection" is not "absolute protection."  *In re Beker Indus. Corp.*, 58 B.R. 725, 741 (Bankr. S.D.N.Y. 1986).  Adequate protection does not require escrowing or otherwise segregating the Lease Obligations, nor does it require the immediate payment of postpetition rent and "stub rent."  Indeed, such an interpretation would, in effect, elevate postpetition rent to a superpriority obligation of the Debtors' estates—a position that has been flatly rejected in other cases.  *See HQ Global Holdings*, 282 B.R. at 175 ("Such rights have no basis in the Bankruptcy Code and go beyond the rights granted under section 365(d)(3) or 503(b). We cannot conclude that the Landlords should have greater rights than other section 503(b) claimants.").  Moreover, a construction of "adequate protection" that permits Landlords to compel payment of postpetition rent that is otherwise deferred by section 365(d)(3) would then render 365(d)(3) meaningless, which is itself contrary to basic principles of statutory interpretation.[6]

30.     In any event, and even assuming an evidentiary record establishing that adequate protection is "necessary" to mitigate diminution in value is actually before the Court (it is not), such diminution would have resulted from mandatory closures or limited operations arising from COVID-19 rather than the Debtors' use or non-use of such property.  Such pre-bankruptcy events do not give rise to a claim for adequate protection.  *See, e.g., Mid-South Bank & Trust Co. v. Cabe, Inc. (In re Cabe, Inc.)*, 41 B.R. 222, 224 (Bankr. M.D. Tenn. 1984) (finding that "[a]dequate protection need not be provided by the debtor for any decline in value which occurred prior to the date of the filing of the bankruptcy petition"); *see also In re Forest Ridge, II, Ltd.*

---

[6]   *See Davis v. Ace Hardware Corp.*, No. CV 12-1185-SLR-CJB, 2014 WL 688132, at *4 (D. Del. Feb. 21, 2014) (quoting *CSX Transp., Inc. v. Alabama Dep't of Revenue*, 131 S.Ct. 1101, 1111 (2011)) ("A court must also be conscious not to 'nullify' a legislature's 'policy choice' or otherwise 'subvert [ ] . . . the statutory plan' when engaging in statutory interpretation.").

*P'ship*, 116 B.R. 937, 950 (Bankr. W.D.N.C. 1990) (finding a lessor was not entitled to adequate protection where real estate collateral was not decreasing in value and there was no evidence of deferred maintenance).  Any perceived decrease in value of the Landlords' interests also is mitigated because here the Lease Obligations are only being deferred rather than eliminated.  Thus, in *Pier 1*, the Court found that "deferred payment of rent while [the Debtors] continue use of the leased premises, does not decrease the value of any Lessor's interest in the property."  *In re Pier 1 Imports, Inc.*, WL 2374539, at *6.

31.     Here, the Debtors forecast sufficient liquidity, as set forth in the budget, to continue performing Lease Obligations after the Extension Period and to make catch-up payments to the extent not otherwise negotiated with the Landlords.  These factors are more than adequate to protect the Landlords from any perceived diminution in value.  Contrary to the Creditors' Committee's assertion, there is absolutely nothing to suggest administrative insolvency in these cases.  As stated on the record at the first day hearing, prior to the Petition Date, the Debtors received and reviewed multiple transaction proposals and expression of interests from constituents within and outside of the Company's capital structure.  Communications with these constituents have continued postpetition and include discussions of debtor-in-possession financing.

32.     Further, continued payment of utilities, taxes, and other "non-rent" Lease Obligations is not appropriate.  As stated above, any perceived decrease in value of the Landlords' interests is mitigated because here the Lease Obligations are only being deferred.  Additionally, the Debtors contend that, in many cases, such "non-rent" obligations are Lease Obligations, pursuant to the four corners of the various Leases, and the Leases provide that the Landlords are responsible for paying such non-rent obligations or that such amounts are included in rent.  As these Landlords agreed to charge what they term "non-rent obligations" to the Debtors in the form

16

of additional rent, those obligations are subject to section 365(d)(3) to the same extent as other Lease Obligations.

33.     Lastly, the section 506(c) and 552 waivers objected to by certain Landlords in connection with the Debtors' use of cash collateral and postpetition financing are simply not before the Court at the present time.  Rather, the Landlords' rights to object to such relief in connection with final approval of the Debtors' use of cash collateral and any future motion to approve debtor-in-possession financing are fully reserved.  All of these factors are more than sufficient to protect the Landlords from any perceived diminution in value, especially in light of the modest request at issue here.

34.     To the extent the Objectors raised issues or Other Objections not addressed in this Reply, the Debtors reserve all rights regarding the same and will respond to the Objections, as appropriate, at the hearing on the Motion.

### <u>Conclusion</u>

Under these circumstances, the Extension Period is in the best interests of the Debtors' estates and a result of a reasonable exercise of the Debtors' business judgment to preserve value for the benefit of all stakeholders.  For all the reasons set forth above and in the Motion, the Court should grant the Motion, overrule the Objections, and approve the Extension Period.

*[Remainder of Page Left Intentionally Blank]*

Dated: July 31, 2020
      Houston, Texas

                                               Respectfully submitted,

                                        */s/  Alfredo R. Pérez*
                                       WEIL, GOTSHAL & MANGES LLP
                                       Alfredo R. Pérez (15776275)
                                       Clifford Carlson (24090024)
                                       700 Louisiana Street, Suite 1700
                                       Houston, Texas  77002
                                       Telephone: (713) 546-5000
                                       Facsimile:  (713) 224-9511
                                       Email:  Alfredo.Perez@weil.com
                                                  Clifford.Carlson@weil.com

                                       -and-

                                       WEIL, GOTSHAL & MANGES LLP
                                       Matthew S. Barr (admitted *pro hac vice*)
                                       Ryan Preston Dahl (admitted *pro hac vice*)
                                       Scott Bowling (admitted *pro hac vice*)
                                       767 Fifth Avenue
                                       New York, New York  10153
                                       Telephone:  (212) 310-8000
                                       Facsimile:   (212) 310-8007

                                       -and-

                                       WEIL, GOTSHAL & MANGES LLP
                                       Paul R. Genender (00790758)
                                       Amanda Pennington Prugh (24083646)
                                       200 Crescent Court, Suite 300
                                       Dallas, Texas 75201
                                       Telephone: (214) 746-7877
                                       Facsimile:  (214) 746-7777
                                              Paul.Genender@weil.com
                                              Amanda.PenningtonPrugh@weil.com

                                       *Proposed Attorneys for Debtors*
                                       *and Debtors in Possession*

## **Certificate of Service**

I hereby certify that on July 31, 2020, a true and correct copy of the foregoing document was served by the Electronic Case Filing System for the United States Bankruptcy Court for the Southern District of Texas.


*/s/  Alfredo R. Pérez*

Alfredo R. Pérez
