IN THE UNITED STATES BANKRUPTCY COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | | |
|---|---|---|
| In re: | § | Chapter 11 |
| | § | |
| CEC ENTERTAINMENT, INC., *et al.*, | § | Case No. 20-33163 (MI) |
| | § | |
| Debtors.[1] | § | (Jointly Administered) |
| | § | |

**MOTION FOR ORDER AUTHORIZING DEBTORS TO ABATE RENT PAYMENTS
AT STORES AFFECTED BY GOVERNMENT REGULATIONS**

A **VIDEO/TELEPHONIC** HEARING WILL BE CONDUCTED ON THIS MATTER ON AUGUST 24, 2020 AT 9:00AM (PREVAILING CENTRAL TIME). PARTIES WISHING TO PARTICIPATE TELEPHONICALLY MUST DIAL IN USING THE COURT'S TELECONFERENCE SYSTEM AT 832-917-1510 AND ENTERING CONFERENCE CODE 954554. PARTIES WHO ALSO WISH TO PARTICIPATE BY VIDEOCONFERENCE MAY DO SO BY USE OF AN INTERNET CONNECTION, USING THE WEBSITE **GOTOMEET.ME/JUDGEISGUR** OR THE FREE GOTOMEETING APPLICATION, SELECTING "JOIN MY MEETING," AND ENTERING MEETING CODE "JudgeIsgur."

IF YOU OBJECT TO THE RELIEF REQUESTED, YOU MUST RESPOND IN WRITING, SPECIFICALLY ANSWERING EACH PARAGRAPH OF THIS PLEADING. UNLESS OTHERWISE DIRECTED BY THE COURT, YOU MUST FILE YOUR RESPONSE WITH THE CLERK OF THE BANKRUPTCY COURT WITHIN TWENTY-ONE DAYS FROM THE DATE YOU WERE SERVED WITH THIS PLEADING. YOU MUST SERVE A COPY OF YOUR RESPONSE ON THE PERSON WHO SENT YOU THE NOTICE; OTHERWISE, THE COURT MAY TREAT THE PLEADING AS UNOPPOSED AND GRANT THE RELIEF REQUESTED.

---

[1] The Debtors in these chapter 11 cases, along with the last four digits of each Debtor's federal tax identification number, as applicable, are BHC Acquisition Corporation (0947); CEC Entertainment Concepts, L.P. (3011); CEC Entertainment Holdings, LLC (9147); CEC Entertainment, Inc. (5805); CEC Entertainment International, LLC (8177); CEC Entertainment Leasing Company (4517); CEC Leaseholder, LLC (N/A); CEC Leaseholder #2, LLC (N/A); Hospitality Distribution Incorporated (5502); Peter Piper Holdings, Inc. (6453); Peter Piper, Inc. (3407); Peter Piper Texas, LLC (6904); Peter Piper Mexico, LLC (1883); Queso Holdings Inc. (1569); SB Hospitality Corporation (4736); SPT Distribution Company (8656); and Texas PP Beverage, Inc. (6895). The Debtors' corporate headquarters and service address is 1707 Market Place Boulevard #200, Irving, TX 75063.

CEC Entertainment, Inc. and its debtor affiliates in the above-captioned chapter 11 cases, as debtors and debtors in possession (collectively, the "**Debtors**" or "**CEC**"), respectfully state the matters set forth below in support of this motion (the "**Motion**").

**<u>Preliminary Statement and Relief Requested</u>**

1.     The Debtors request the Court enter an order abating rent payments for stores closed or otherwise limited in operations as a result of any governmental order or restriction until such restriction or order has been lifted and to reflect the extent and duration of such forced governmental closures or limitations.  This requested relief is necessary to protect the Debtors' contractual and common law rights under certain commercial real estate leases and to ensure their ability to successfully reorganize in these chapter 11 cases, which is in the best interests of the Debtors' estates and all stakeholders.

2.     Like many businesses, the Debtors have experienced, and continue to face, devastating financial impacts and continuing uncertainties arising from the COVID-19 global pandemic, and their operations have been severely hindered as a result.  Specifically, due to the significant safety and health concerns arising from the unforeseen and unprecedented COVID-19 pandemic, the Debtors have been forced to close or otherwise limit the operations of numerous stores.  As of this Motion, there are 141 stores in 12 states affected by government "shelter in place" mandates (the "**Stores**").[2]  Despite their attempts to negotiate in good faith with the Landlords[3] regarding lease modifications, rent abatements, and concessions as part of the Debtors'

---

[2] A chart identifying the Stores currently at issue in this Motion—by store number, name, location, and landlord counter-party (collectively, the "**Landlords**")—is attached to this Motion as "**<u>Exhibit A</u>**" and fully incorporated herein (the "**Stores Tracker**").  Due to the continuing uncertainty surrounding the COVID-19 pandemic and potential resulting government regulations, the Stores Tracker may be further amended or supplemented to seek the same relief as to additional stores, as necessary.

[3] The Landlords identified on the Stores Tracker do not include landlords in the relevant States who have reached agreements with the Debtors in connection with their respective leases.

efforts to comply with governmental orders and ensure the health and safety of the Debtors' employees and customers, the Landlords and the Debtors have not reached an agreement with respect to the Stores.[4]

3.      The Debtors' post-petition obligation to pay rent for the Stores should be excused, in whole or in part, for at least three reasons:  (a) by shutting down or otherwise significantly limiting the Debtors' business operations, the Government Regulations (defined below) entirely frustrated the fundamental purpose of the Debtors' leases; (b) the COVID-19 pandemic and related public health measures triggered certain force majeure provisions in the Debtors' leases which expressly relieve the Debtors of their rent obligations; and (c) the Court can (and should) exercise its inherent, equitable powers to protect the Debtors from paying substantial rent obligations in return for which they receive no—or a significantly limited—benefit. Accordingly, the Debtors request the Court enter an order abating the Debtors' rent payments at the Stores from the date such Government Regulations went into effect until they are lifted.  A proposed form of order granting the relief requested in this Motion is attached as **Exhibit B** (the "**Proposed Order**").

### Brief Background

4.      On June 24, 2020 (the "**Petition Date**"), the Debtors commenced their chapter 11 cases by filing voluntary petitions in this Court under chapter 11 of title 11 of the United States Code (the "**Bankruptcy Code**").  The Debtors continue to operate their businesses, albeit in a limited manner, and manage their properties as debtors in possession pursuant to sections 1107(a) and 1108 of the Bankruptcy Code.  On July 13, 2020, the United States Trustee (the "**U.S.**

---

[4] As suggested by the Court at the August 3, 2020 hearing, and to confirm, the Debtors will engage in discussions with the Landlords and the Creditors' Committee (as defined below) in a good-faith effort to negotiate a commercial solution with respect to the Stores.

Trustee") appointed an official committee of unsecured creditors (the "**Creditors' Committee**") in these chapter 11 cases pursuant to section 1102 of the Bankruptcy Code.  No trustee or examiner has been appointed in these chapter 11 cases.  The Debtors' chapter 11 cases are being jointly administered for procedural purposes only pursuant to Rule 1015(b) of the Federal Rules of Bankruptcy Procedure (the "**Bankruptcy Rules**") and Rule 1015-1 of the Local Bankruptcy Rules for the United States Bankruptcy Court for the Southern District of Texas (the "**Local Rules**").

5.      The Debtors, together with their non-debtor affiliates, are a leading family entertainment and dining company with a global network of dining, entertainment, and arcade centers that are operated and franchised under the names "Chuck E. Cheese" and "Peter Piper Pizza."  The venues deliver a kid-friendly atmosphere and feature an array of wholesome entertainment offerings including arcade-style and skill-oriented games, rides, live entertainment shows, and the opportunity for guests to win tickets and redeem prizes such as toys, plush dolls, and branded merchandise.[5]  The Debtors generate revenue almost exclusively through on-site entertainment experiences, merchandise sales, and food and beverage services.[6]

6.      The Debtors operate stores in commercial spaces governed by lease rental agreements (the "**Leases**") in numerous jurisdictions, including a large footprint in California.  The Stores at issue are located in California (56), New York (13), Michigan (14), New Jersey (12), North Carolina (11), Washington (8), New Mexico (6), Colorado (8), Massachusetts (7), Connecticut (3), Delaware (2), and Oregon (1) (collectively, the "**States**"), all of which have issued governmental regulations, recommendations, or orders as a result of the COVID-19 crisis that

---

[5] Additional information regarding the Debtors' businesses, capital structure, and the circumstances leading to the commencement of these chapter 11 cases is set forth in the *Declaration of James Howell in Support of Debtors' Chapter 11 Petitions and First Day Relief* (the "**First Day Declaration**").  Capitalized terms used but not otherwise defined in this Motion shall have the meanings ascribed to such terms in the First Day Declaration.

[6] *See* First Day Declaration, ¶ 6.

impair economic activity in the States and directly affect the Stores' operations (the "**Government Regulations**").[7]  As a direct result of the Government Regulations, the Debtors' year-over-year revenue has been entirely eliminated for Stores where all services, including carry out, is prohibited.[8]  Even for Stores allowed to continue providing delivery and carryout services, such revenue has been reduced by over 90%.[9]  Moreover, the Debtors' experiential Stores operating on a limited basis include dine-in restaurants, gaming arcades, and according to the interpretation of certain regulatory bodies, "gaming establishments," which are each treated differently and inconsistently under the various Government Regulations.  For example, where States allow dine-in services at 50% capacity, those same States would also need to reopen arcade gaming to fully restore the Debtors' operations—yet in every jurisdiction where "shelter in place" orders have been issued, dine-in services have been allowed to resume weeks before arcades have been.

7.      On March 16, 2020, and again significantly in advance of the hearing on this Motion, the Debtors sent each of the Landlords notice of the substantial and indefinite restrictions on the Debtors' operations as a result of the Government Regulations (the "**Notices**").

---

[7] As of the date of this Motion, the Government Regulations in effect for each of the States are as follows: CA Statewide Public Health Officer Order, July 13, 2020; WA Proclamation No. 20-13 (Mar. 16, 2020) (as extended and amended by Proclamation No. 20-25.7 (Jul. 24, 2020)); NJ Executive Order No. 158 (Jun. 29, 2020); NY Executive Order No. 202.41 (Jun. 13, 2020); CT Executive Order No. 7D (as updated by No. 7ZZ on Jun. 16, 2020); MA Executive Order No. 13 (as updated by No. 35 on Jun. 1, 2020); MI Executive Order No. 2020-110 (Jun. 1, 2020); NC Executive Order No. 118 (Mar. 17, 2020) (as extended and amended by Executive Order Nos. 141, 147 (May 20, 2020, and Jun. 24, 2020 respectively)); NM Jul. 13, 2020 Public Health Order; CO Executive Order No. D 2020 17 (Mar. 25, 2020) (as extended and amended by Executive Order No. D 2020 123 (Jun. 30, 2020)); DE Nineteenth Modification of the Declaration of a State of Emergency for the State of Delaware Due to a Public Health Threat (May 22, 2020); OR Executive Order No. 20-07 (Mar. 16, 2020) (as extended and amended by Executive Order No. 20-27 (Jun. 5, 2020)). New restrictions are being added, and re-openings cancelled, daily. *See, e.g.,* AK – Jul. 31, 2020, Municipality of Anchorage Proclamation of Emergency Order EO-15 "Four Week Reset," *available at* https://www.muni.org/covid-19/documents/eo-15_signed.pdf (last visited Aug. 1, 2020); S. Sutton, *Northeast governors were ready to reopen. The coronavirus had other plans.*, POLITICO, https://www.politico.com/states/new-york/city-hall/story/2020/07/03/northeast-governors-were-ready-to-reopen-the-coronavirus-had-other-plans-1296877 (Jul. 3, 2020 5:00AM EDT) (last visited Aug. 1, 2020).

[8] First Day Declaration, ¶ 23.

[9] *Id.*

In the Notices, the Debtors expressly reserved their rights under the Leases and applicable law, including, without limitation, their right to abate and/or defer rent payments at the Stores.

## Jurisdiction

8.      This Court has jurisdiction to consider this matter pursuant to 28 U.S.C. § 1334.  This is a core proceeding pursuant to 28 U.S.C. § 157(b).  Venue is proper before this Court pursuant to 28 U.S.C. §§ 1408 and 1409.

## Rent Payments at the Stores Should be Abated

**A.      Common Law Doctrines Support the Debtors' Request for Rent Abatement**

9.      When an event or change of circumstances is outside of the realm of possibilities and the parties could not foresee it occurring at the time the contract was entered into, a party's contractual obligations may be excused.  Restatement (Second) of Contract § 265 (1981); *see also, e.g.*, *Weyerhaeuser Real Estate Co. v. Stoneway Concrete*, 96 Wash. 2d 558, 566 (Wash. 1981); *Chase Precast Corp. v. John J. Paonessa Co.*, 409 Mass. 371, 375 (Mass. 1991).  This common law doctrine—the "frustration of purpose"—is recognized in the majority of states and occurs when the "principal purpose" of the contract is "substantially frustrated without . . . fault by the occurrence of an event the non-occurrence of which was a basic assumption on which the contract was made," rendering the remaining duties discharged unless otherwise provided for in the contract.  *See* Restatement (Second) of Contract § 265.  This doctrine applies to leases.  *See, e.g.*, *Stratford v. Seattle Brewing*, 94 Wash. 125, 126 (Sup. Ct. Wash. 1916); *Baird v. Wendt Enterprises, Inc.*, 248 Cal. App. 2d 52, 54–55 (1967).

10.     When changed circumstances "make[] one party's performance virtually worthless to the other," in other words, frustrating the primary purpose of the contract and rendering it meaningless, a party may be excused of its contractual obligations.  *See* Restatement

(Second) of Contracts § 256, Comment a (1981); *Stratford*, 94 Wash. At 126; *see also Indus. Dev. & Land Co. v. Goldschmidt*, 56 Cal. App. 507, 509–11 (1922); *Chang v. Pacificorp*, 157 P.3d 243, 248 (Or. Ct. App. 2007).

11.     As noted in the First Day Declaration, in-store dining and entertainment—including indoor eating, game play, and entertainment experiences—are the core of the Debtors' business.[10]     As such, the Government Regulations prohibiting on-premise dining and entertainment have rendered the purpose of the Debtors' Leases meaningless.  *See, e.g.*, July 13, 2020 New Mexico Public Health Order; June 5, 2020 Michigan Executive Order.  No one, including the Debtors and the Landlords, could have predicted a global pandemic or its catastrophic effects when entering into the Leases.  Accordingly, the Debtors should be excused from paying rent obligations at the Stores because the Government Regulations have wholly frustrated the purpose of the Leases.  *See* Restatement (Second) of Contracts § 256.

**B.     The Government Regulations Triggered the Leases' Force Majeure Clauses, Excusing the Debtors from Their Rent Obligations**

12.     CEC's standard Lease includes a force majeure clause, which provides:

> The time for performance by Landlord or Tenant of any term, provision or covenant of this Lease shall be deemed extended by any time lost due to delays resulting from acts of God, strikes, unavailability of building materials, civil riots, floods, severe and unusual weather conditions, material or labor restrictions by governmental authority and any other cause not within the reasonable control of Landlord or Tenant, as the case may be.[11]

---

[10] *See* First Day Declaration ¶ 7.

[11] Taken from one of CEC's "Standard Ground Leases," Gilroy, CA Lease ("**Gilroy Lease**"), § 24.  Although CEC's leases are too numerous to attach and cite individually, many of CEC's leases contain this exact language. *See, e.g.,* CEC's Greece, NY Lease (§ 24); Bridgewater, NJ Lease (§ 24); Silverdale, WA Lease (§ 24) (collectively, the "**Example Leases**," and with the leases for the stores identified on the Stores Tracker, the "**Leases**").  True and correct copies of relevant excerpts from the Example Leases are attached to this Motion as "**Exhibit C**."

13.     In response to the COVID-19 crisis, the States' governors and/or public health authorities unilaterally shut down dine-in operations for restaurants.  For example, on July 13, 2020, California indefinitely closed (for the second time) dine-in-restaurants and family entertainment centers by prohibiting, state-wide, the provision of dine-in service and family entertainment services to customers.[12]  California's shutdown—similar to the other States—decimated CEC's ability to conduct its business as contemplated by the Leases.  As previously noted, however, the Debtors' allure derives from their unique combination of a dine-in and arcade gaming experience.[13]  Indeed, CEC would have no need to lease over 10,000 square feet of commercial real estate if its business model emphasized takeout dining or delivery; the Leases therefore anticipate significant in-store experiences.  *See, e.g.,* Gilroy Lease (leasing 12,000 square feet to provide CEC with a "restaurant and entertainment center which may include the serving of beer and wine, the operation of indoor mechanical and electrical rides, games and other amusement devices and a merchandise center . . . .").

14.     The unprecedented Government Regulations were unilateral exercises of States' authority to control the spread of COVID-19.  CEC had no control over the pandemic or the resulting Government Regulations.  Accordingly, and because the force majeure provisions excuse CEC from performing "any term, provision, or covenant" on account of "acts of God" or "restrictions by governmental authority and any other cause not within the reasonable control of

---

[12]  *See* Statewide Public Health Officer Order, July 13, 2020, available at https://www.cdph.ca.gov/Programs/CID/DCDC/CDPH%20Document%20Library/COVID-19/SHO%20Order%20Dimming%20Entire%20State%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.pdf (last visited, Jul. 29, 2020); *see also* Tapp, T., DEADLINE, *California Coronavirus Update: Governor Gavin Newsom Orders Indoor Service At All Restaurants, Bars, Movie Theatres In State To Close Again; No End Date Given*, https://deadline.com/2020/07/california-gavin-newsom-closes-restaurants-indoor-operations-in-state-1202984427/.  As noted in the Stores Tracker, there were previous shutdown orders in California beginning as early as March 19, 2020.

[13]  *See* First Day Declaration, ¶¶ 6-7.

[the Debtors]," the Debtors are excused from paying rent as of the date of the Governmental Regulations.[14]

**C.      The Court's Inherent, Equitable Powers Support Rent Abatement**

15.     In addition to the reasons stated above, this Court has broad authority to take necessary and appropriate actions in light of, among other things, the global pandemic. *See Marrama v. Citizens Bank*, 549 U.S. 365, 375 (2007) (citing 11 U.S.C. § 105). Such actions are within the Court's sound discretion. *See, e.g.*, *In re Greene*, 103 B.R. 83, 89 (Bankr. S.D. NY 1989).

16.     It is undeniable that the Government Regulations, including those in other states, have been catastrophic for the restaurant industry as a whole. *See, e.g.*, *In re Hitz Rest. Grp.*, 2020 Bankr. LEXIS 1470, at *5–7 (Bankr. N.D. Ill. June 2, 2020). Because the Government Regulations prohibit the Debtors from operating their business at the Stores as contemplated in the Leases and because paying the rent obligations at those Stores would not benefit the Debtors' estates or their stakeholders, the Debtors respectfully request that the Court excuse the Debtors' rent payment obligations until such Government Regulations are lifted. Specifically, the Debtors request that the Court exercise its inherent, equitable powers to excuse rent payments at the Stores based on the extent and duration of the closures and limitations imposed by the Government Regulations.

<u>**Notice**</u>

17.     Notice of this Motion will be provided to (i) the Office of the United States Trustee for the Southern District of Texas; (ii) the holders of the thirty (30) largest unsecured claims against the Debtors on a consolidated basis; (iii) any party that has requested notice pursuant

---

[14] *See* Gilroy Lease, § 24.

to Bankruptcy Rule 2002; (iv) the Landlords; and (v) any other party entitled to notice pursuant to Local Rule 9013-1(d) (collectively, the "**Notice Parties**").  In light of the nature of the relief requested herein, the Debtors submit that no other or further notice is necessary.

<u>**No Previous Request**</u>

18.     No previous request for the relief sought in this Motion has been made by the Debtors to this or any other court.


[*The remainder of this page is intentionally left blank.*]

WHEREFORE, the Debtors respectfully request entry of the Proposed Order granting the relief requested in this Motion and such other and further relief as the Court may deem just and appropriate.

Dated: August 3, 2020
      Dallas, Texas

Respectfully submitted,

  */s/ Paul R. Genender*

WEIL, GOTSHAL & MANGES LLP
Alfredo R. Pérez (15776275)
Clifford Carlson (24090024)
700 Louisiana Street, Suite 1700
Houston, Texas  77002
Telephone: (713) 546-5000
Facsimile:  (713) 224-9511
Email:  Alfredo.Perez@weil.com
        Clifford.Carlson@weil.com

-and-

WEIL, GOTSHAL & MANGES LLP
Matthew S. Barr (admitted *pro hac vice*)
Ryan Preston Dahl
Scott Bowling (admitted *pro hac vice*)
767 Fifth Avenue
New York, New York  10153
Telephone:  (212) 310-8000
Facsimile:  (212) 310-8007

-and-

WEIL, GOTSHAL & MANGES LLP
Paul R. Genender (00790758)
Amanda Pennington Prugh (24083646)
Ron Miller (24095424)
200 Crescent Court, Suite 300
Dallas, Texas 75201
Telephone:  (214) 746-7000
Facsimile:  (214) 746-7777
Email:    paul.genender@weil.com
        amanda.prugh@weil.com
        ron.miller@weil.com

*Proposed Attorneys for Debtors*
*and Debtors in Possession*

**<u>Certificate of Service</u>**

I hereby certify that on August 3, 2020, a true and correct copy of the foregoing document was served by the Electronic Case Filing System for the United States Bankruptcy Court for the Southern District of Texas, and will be served as set forth in the Affidavit of Service to be filed by the Debtors' claims, noticing, and solicitation agent.

 /s/  Alfredo R. Pérez

Alfredo R. Pérez
