UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | | |
|---|---|---|
| IN RE: | § § | |
| CEC ENTERTAINMENT, INC. et al | § § § § § | Case No. 20-33163<br>(Chapter 11)<br>Jointly Administered |
| Debtors | § | |

**HOVDE FAMILY INVESTMENTS, LLC'S RESPONSE IN OPPOSITION TO MOTION FOR ORDER AUTHORIZING DEBTORS TO ABATE RENT PAYMENTS AT STORES AFFECTED BY GOVERNMENT REGULATIONS**
**[RELATES TO DOC. NO. 487]**

TO THE HONORABLE MARVIN ISGUR, UNITED STATES BANKRUPTCY JUDGE:

COMES NOW, Hovde Family Investments, LLC ("HFI" or the "Landlord"), and files this Response in Opposition to Motion for Order Authorizing Debtors to Abate Rent Payments at Stores Affected by Government Regulations (the "Motion to Abate"), and would show the Court, as follows:

### I. SUMMARY OF RESPONSE

HFI opposes the relief requested in the Motion to Abate. The Debtors' reliance on the common law doctrine of frustration of purpose does not afford the relief of postponement or abatement of contract performance, and only allows the parties to rescind the contract. Secondly, the Debtors wrongfully assert that the Force Majeure clause in the subject lease excuses performance, when the terms of the subject lease would only extend the time for performance, and such extension would only be invoked upon the occurrence of certain conditions, which have not been met. Finally, the relief being sought by Debtors is in violation of Section 365(d)(3) of the Bankruptcy Code.

## II. BACKGROUND

1.  On or about May 26, 2017, Debtor CEC Entertainment, Inc. executed a Lease Agreement for the Chuck E. Cheese location identified as Store No. 343, located at 10007 N. Nevada Street, Spokane, Washington (the "Lease"). On or about October 8, 2019, Debtor CEC Entertainment, Inc. executed a First Amendment to Lease Agreement that extended the primary term of the Lease through May 31, 2030. A copy of the Lease with the First Amendment to Lease Agreement is attached hereto as Exhibit "A."

2.  On or about December 26, 2019, the Lease was assigned to HFI, as part of an overall purchase and sale between the original landlord, and HFI. A copy of the Assignment and Assumption Agreement is attached hereto as Exhibit "B."

3.  On June 25, 2020, Debtor CEC Entertainment, Inc. and 16 affiliate Debtors filed for relief under Chapter 11 of the Bankruptcy Code. On August 3, 2020, the Debtors filed the Motion to Abate, seeking to abate post-petition rent obligations for an indefinite period of time, as a result of local government related shut down orders.

## III. RESPONSE IN OPPOSITION

*Common law doctrine of "Frustration of Purpose" does not afford Debtors the remedy of rent abatement.*

4.  In the Motion to Abate, the Debtors rely on the Washington State common law doctrine of "Frustration of Purpose" as a basis to seek relief of post-petition rent abatement (*See* Motion to Abate ¶9 – 11). Debtors argue that the post-petition rent obligations should be abated, indefinitely, due to mandated state and local government shutdowns that have frustrated the fundamental purpose of the Debtors' commercial leases.

5.  The Washington common law doctrine of frustration of purpose does not permit a party to simply abate their obligations for a brief time. If proven, the doctrine only releases a

party from their remaining duties under the contract (contract rescission). Washington Courts have adopted the Restatement (Second) of Contracts which provides, as follows:

- Where, after a contract is made, a party's principal purpose is substantially frustrated without his fault by the occurrence of an event the non-occurrence of which was a basic assumption on which the contract was made, his remaining duties to render performance are discharged, unless the language or the circumstances indicate the contrary. See Restatement (Second) of Contracts §265 (1981).

Comment (a) to the section further explains:

- This Section deals with the problem that arises when a change in circumstances makes one party's performance virtually worthless to the other, frustrating his purpose in making the contract ... First, the purpose that is frustrated must have been a principal purpose of that party in making the contract ... The object must be so completely the basis of the contract that, as both parties understand, without it the transaction would make little sense. Second, the frustration must be substantial. It is not enough that the transaction has become less profitable for the affected party or even that he will sustain a loss. The frustration must be so severe that it is not fairly to be regarded as within the risks that he assumed under the contract. Third, the non-occurrence of the frustrating event must have been a basic assumption on which the contract was made ... The foreseeability of the event is ... a factor in that determination, but the mere fact that the event was foreseeable does not compel the conclusion that its non-occurrence was not such a basic assumption.

*Washington State Hop Producers, Inc., Liquidation Tr. v. Goschie Farms, Inc.*, 112 Wash. 2d 694, 700, 773 P.2d 70, 73 (1989) (Rescission of contracts to purchase allotments to market hops was sustained under doctrine of supervening frustration of purpose by determinations that principal purpose of contracts was so that growers would have future market access, that continued need to own or control allotments in order to sell hops was an assumption central to the contracts and that purpose of contracts was substantially frustrated by the United States Department of Agriculture's termination of its marketing order requiring hop producers to obtain allotments in order to market hops).

6. Under the doctrine of frustration of purpose, where, after a contract is made, a party's principal purpose in making that contract is substantially frustrated without his or her fault and by the occurrence of an event, the nonoccurrence of which was a basic assumption on which the contract was made, <u>that party's remaining duties to render performance are discharged, unless the language or circumstances indicate the contrary</u>. *Hornback v. Wentworth*, 132 Wash. App. 504, 132 P.3d 778 (Div. 3 2006) (trial court properly granted rescission where change in

county ordinance made promised segregation of purchased property impossible)(emphasis added).

7. Where the assumed possibility of a desired object or effect to be attained by either party to a contract forms the basis on which both parties enter into it, and this object or effect is or surely will be frustrated, a promisor who is without fault in causing the frustration, and who is harmed thereby, <u>is discharged from the duty of performing his promise</u> unless a contrary intention appears. *Metro. Park Dist. of Tacoma v. Griffith*, 106 Wash. 2d 425, 441, 723 P.2d 1093, 1102 (1986)(emphasis added). The 'frustration of purpose' doctrine (or any other legal theory), <u>which is used to relieve a party from the provisions of a contract</u>, cannot be deliberately caused by the party claiming the benefit of the legal theory. *Bowman v. Moe,* 66 Wash. 2d 629, 639, 404 P.2d 437, 443 (1965)(emphasis added).

8. The case law provided by the Debtors does not support their request for abatement of rent. Instead, both Washington cases involved the tenant arguing that the frustration of purpose doctrine applied to their lease, and in each case the Court rescinded their lease. The Debtors have essentially conceded that rescission of the contract is the result of a properly pleaded frustration of purpose claim. The Debtors do not supply any authority supporting a claim for abatement of rent under frustration of purpose.

9. *Weyerhaeuser Real Estate Co. v. Stoneway Concrete* is case that involved the frustration of a commercial mining lease. 96 Wash. 2d 558, 637 P.2d 647 (1981). In that case, the Court acknowledged that the lessee's inability to procure the necessary permits frustrated the purpose of that lease. *Id* at 565. In its holding, the Court permitted the parties to rescind the contract, releasing the lessee of its obligations of the lease. But the Court also noted that the frustrating event occurred three years into the lease and that the lessee was subject to the lease

obligations for those three years. *Id.* Similarly, the Debtors rely on *The Stratford Inc. v. Seattle Brewing & Malting Co.*. That case held that "Where the performance of an executory contract which was lawful in its inception is made unlawful by subsequent enactment, the agreement is thereby dissolved and the parties discharged from its obligations." 94 Wash. 125, 132, 162 P. 31, 34 (1916).

10. The case law in which frustration of purpose is discussed focuses on whether the elements of a contract defense of frustration of purpose have been met. In each case where a party properly proves frustration of purpose of their contract, rescission is ordered. The Debtors will likely not be able to put forth any case law that supports frustration of purpose resulting in anything other than termination of the lease.

11. Accordingly, <u>the only remedy available to the Debtors under the common law doctrine of Frustration of Purpose is complete rescission of the lease, rather than abatement of lease obligations</u>. <u>HFI has already informed the Debtors that it is willing to allow the Debtors to rescind the Lease, and waive any resulting rejection damages claims</u>.

*<u>The Force Majeure Clause in the Lease does not excuse Debtor performance.</u>*

12. Debtors argue that the government related shutdown orders have invoked the Force Majeure clause in the Lease, thereby excusing the Debtors from their post-petition rent obligations. (*See* Motion to Abate ¶12 – 14). HFI disagrees with this position.

13. Section 24 of the Lease specifically provides that: " . . . if either party shall be prevented or delayed from punctually performing any obligations or satisfying any condition under this Lease by any strike . . . act of God . . . regulation or control . . . then the time to perform such obligation to satisfy such condition <u>shall be extended on a day-for-day basis</u> for the period of the delay cause by such event . . .provided, however, that the party claiming the benefit

of this Section <u>shall</u>, as a condition thereto, <u>give notice to the other party in writing within ten (10) days of the incident</u> . . ." (*See* Exhibit A)(emphasis added). Additionally, Section 24 of the Lease provides that "This [Force Majeure] shall not apply to the inability to pay any sum of money due hereunder or the failure to perform any other obligation due to the lack of money or inability to raise capital or borrow for any purpose." (*See* Id.).

14. Based on the inability to pay exclusion expressly provided in the Lease, the Force Majeure clause is not invoked by the related government shut down orders, and the Debtor is still obligated to make its monthly rental payments. Nevertheless, even in the event the Force Majeure clause was triggered under the Lease, <u>the only available remedy to the Debtors is an extension of the time to perform - not excused performance as the Debtors are seeking in the Motion to Abate</u>. Moreover, Section 24 of the Lease also states that as a condition the extension of time of performance, the Debtors were required to provide written notice to HFI within 10 days of the incident (e.g. 10 days after the government shutdowns were first put into place), specifying with particularity the nature thereof, etc. Here, the Debtors failed to provide HFI any written notice as is required by Section 24 of the Lease. Debtors should have provided written notice to HFI within 10 days after the first government shut down order, which occurred back in March 2020.

*<u>The relief sought by Debtors is in violation of Section 365(d)(3) of the Bankruptcy Code</u>*.

15. The Debtors are looking to the Bankruptcy Court's inherent, equitable powers described in Section 105 of the Bankruptcy Code in order to obtain the rather unorthodox and unique relief being sought in its Motion to Abate. While HFI does not dispute the broad powers of this Court to deliver equitable justice on a daily basis, the rules with respect to post-petition rent obligations for nonresidential leases have always been clear.

16. Section 365(d)(3) of the Bankruptcy Code provides: "The [Debtor-in-Possession] shall timely perform all the obligations of the debtor, except those specified in section 365(b)(2), arising from and after the order for relief under any unexpired lease of nonresidential real property, until such lease is assumed or rejected, notwithstanding section 503(b)(1) of this title. <u>The court may extend, for cause, the time for performance of any such obligation that arises within 60 days after the date of the order for relief, but the time for performance shall not be extended beyond such 60-day period.</u>"(emphasis added).

17. Here, the Debtors are attempting to circumvent the rules and procedures of Section 365(d)(3), and are looking beyond the 60 day extension relief provided by the Code, and are seeking a complete excusal of performance for an indefinite period of time. During the government shut down orders, Debtors were already afforded relief under Section 365(d)(3), and should have utilized that time to determine which leases to assume or reject. An avenue already existed for the Debtors to get their ducks in a row with respect to handling non-residential leases post-petition; to excuse performance for an indefinite period of time would cause extreme hardship on the Landlord, who would have to continue not receiving payments, with no end in sight, while also being prohibited for re-letting the premises.

WHEREFORE, PREMISES CONSIDERED, Hovde Family Investments, LLC prays that upon hearing hereof, that the relief sought by Debtors be denied and that Hovde Family Investments, LLC be granted all relief at law and in equity to which it may show itself justly entitled.

Dated: August 18, 2020

        Hoffman & Saweris, P.C.

    By:  */s/ Matthew Hoffman*
        Matthew Hoffman
        State Bar Number: 09779500
        S.D. Bar Number: 3454
        Alan Brian Saweris
        State Bar Number: 24075022
        S.D. Bar Number: 1850547
        Riviana Building
        2777 Allen Parkway, Suite 1000
        Houston, Texas 77019
        713.654.9990 *Telephone*
        713.654.0038 *Facsimile*
        ATTORNEYS FOR
        HOVDE FAMILY INVESTMENTS, LLC

**CERTIFICATE OF SERVICE**

      I hereby certify that on this 18th day of August, 2020 I sent a true and correct copy of the above and foregoing pleading to the parties registered to receive electronic notice by ECF.

 */s/ Matthew Hoffman*
Matthew Hoffman