**IN THE UNITED STATES BANKRUPTCY COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION**

| | | |
|---|---|---|
| In re: | § | Case No. 20-33163 (MI) |
| | § | |
| CEC ENTERTAINMENT INC., et al., | § | (Chapter 11) |
| | § | |
| Debtors.[1] | § | (Jointly Administered) |

**OPPIDAN INVESTMENT COMPANY'S OBJECTION AND JOINDER IN
OPPOSITION TO MOTION FOR ORDER AUTHORIZING DEBTORS TO ABATE
RENT PAYMENTS AT STORES AFFECTED BY GOVERNMENT REGULATIONS**
[Relates to Doc. No. 487]
_____

Oppidan Investment Company ("***Oppidan***") hereby submits the following objection to the Motion for Order Authorizing Debtors to Abate Rent Payments at Stores Affected by Government Regulations [Doc. No. 487] ("***Rent Abatement Motion***"). Oppidan also joins in the objections filed by similarly-situated landlords, and respectfully states the following:

1.      These jointly administered Chapter 11 cases were filed on June 24, 2020 ("***Petition Date***"). No trustee has been appointed, and the Debtors are operating as debtors-in-possession pursuant to 11 U.S.C. § 1107(a) and 1108.

2.      Oppidan is a landlord and creditor of CEC Entertainment, Inc. ("***Debtor***") pursuant to a real property sublease dated July 29, 2002, as amended ("***Sublease***"), for the lease of real property located at 3108 Alpine Avenue, Walker, Michigan, known as Store # 828 (the

---

[1] The Debtors in these Chapter 11 cases, along with the last four digits of each of Debtor's federal tax identification number, as applicable, are BHC Acquisition Corporation (0947); CEC Entertainment Concepts, L.P. (3011); CEC Entertainment Holdings, LLC (9147) CEC Entertainment, Inc. (5805); CEC Entertainment International, LLC (8177); CEC Entertainment Leasing Company (4517); CEC Leaseholder, LLC (N/A); CEC Leaseholder #2, LLC (N/A); Hospitality Distribution Incorporated (6904); Peter Piper Holdings, Inc. (6453); Peter Piper, Inc. (3407); Peter Piper Texas, LLC (6904); Peter Piper Mexico, LLC (1883); Queso Holdings Inc. (1569); SB Hospitality Corporation (4736); SPT Distribution Company, Inc. (8656); and Texas PP Beverage, Inc. (6895). The Debtors' corporate headquarters and service address is 1707 Market place Boulevard #200, Irving, TX 75063.

"***Property***") on which Debtor operates a Chuck E. Cheese restaurant. A true and correct copy of the Sublease is attached to the Declaration of David Scott ("Scott Decl.") as Exhibit A.

3.  Oppidan has claim for unpaid prepetition rent from April 1, 2020 through the Petition Date in the amount of $36,165.37. Despite the Debtor's nonpayment of rent, its Chuck E. Cheese restaurant on Oppidan's Property remains open for carryout and delivery services.

4.  Debtor has failed to pay Oppidan prepetition rent due under the Sublease for the immediate three (3) months prior to the Petition Date, and has not paid such rent and charges incurred after the Petition Date. Debtor's obligations under the Sublease continue to accrue post-petition.

## OBJECTION AND JOINDER

5.  The Debtors seek to abate rent payments for stores located in areas in which governmental restrictions limit operations as a result of the COVID-19 pandemic until such restriction has been lifted.

6.  The Debtors suggest that they have "attempt[ed] to negotiate in good faith with the Landlords regarding lease modifications, rent abatements, and concessions as part of the Debtors' efforts to comply with governmental orders and ensure the health and safety of the debtors' employees and customers" and that agreements were not reached with respect to the subject Stores. [Doc. No. 487, ¶ 2]. This suggestion is false and misleading, as it suggests that the reason for the Rent Abatement Motion is due to the Landlords' refusal to negotiate with the Debtors. This could not be further from the truth.

7.  On April 17, 2020, Hilco Global, on behalf of CEC Entertainment, Inc., contacted Oppidan to inquire about modifying lease terms as a result of COVID-19. *See* Scott Decl., Ex. B. On April 23, 2020, Oppidan executed a non-binding Lease Amendment Term Sheet

negotiated with Hilco that provided for the deferral of rent due for the months of April through July 2020 and a base rent reduction of 52%, with repayments deferred until January 1, 2020 and then repaid at the rate of ½ a month per month. Scott Decl., Ex. C.  Oppidan followed up with Hilco to obtain the proposed amended Sublease for execution, in accordance with the terms contained in the Term Sheet, but Hilco failed and refused to respond, thereby ceasing negotiations – not by any action of Oppidan, but by the inaction of the Debtors' agent. Scott Decl., Ex. D.

      **I.**       **11 U.S.C. § 365 Dictates the Debtors' Obligations to Landlords.**

      8.      11 U.S.C. § 365(d)(3) provides that a debtor "*shall* timely perform all obligations … arising from and after the order for relief under any unexpired lease of nonresidential real property, until the lease is assumed or rejected." (Emphasis added). While 11 U.S.C. § 365(d)(3) allows the Court to extend the time for performance of obligations under a lease arising within 60 days of the Petition Date, such an extension cannot reach beyond the initial 60-day period, even where cause is shown. *In re Papercraft Corp.*, 126 B.R. 926, 928 (Bankr. W.D. Pa.), amended on reconsideration, 127 B.R. 346 (Bankr. W.D. Pa. 1991). Here, the Debtors do not merely seek to further *delay* lease payments, but rather to *abate* them entirely.

      9.      The language of section 365(d)(3) is unambiguous; its "clear intent is … to assure that landlords not be compelled to furnish current services without being compensated on a current basis." *In re Food City, Inc.*, 95 B.R. 451, 455 (Bankr. W.D. Tex. 1988).[2]

---

[2] Additionally, the full contract rate of rent is owed, regardless of the debtor's claim of lost use or lesser value.  *See In re Simbaki, Ltd.*, No. 13-36878, 2015 WL 1593888, *5 (Bankr. S.D. Tex. 2015)(J. Isgur) ("A debtor's obligations must be performed at the time required in the lease.")(quoting *In re Appletree Markets, Inc.*, 139 B.R. 417, 420 (Bankr. S.D. Tex. 1992)).

10.     The Debtors choice is to pay post-petition rent as required by 11 U.S.C. § 365, or to reject the leases allowing the landlords to find new tenants and to file their administrative expense claims for post-petition rent.

11.     The Debtors' initial budget accompanying the cash collateral order (Doc. No. 114) reveals that the Debtors have the ability to pay rent each month, in full, and will still have $23 million cash on hand after the first 13 weeks of the case.  As admitted by the Debtors' CFO, James Howell, in his testimony at the August 13, 2020 meeting of creditors, the Debtors projection was for $13 million in revenue for the month of July 2020, and actual revenue was between $11.5 million and $12 million, approximately 8%-12% below budget. Given the admitted $23 million in surplus built into the Debtors' 13 week pro forma, the Debtors still have ample liquidity to pay their statutory rent obligations without pushing the financial burden experienced by their businesses further downstream to landlords who are not (yet) in bankruptcy.

12.     Further, despite the Debtors' representations at the August 3, 2020 hearing on the Debtor's Motion to Extend Time to Perform Lease Obligations [Doc No. 132] that the Debtors would engage in discussions with landlords to negotiate a commercial resolution with respect to the subject stores, the Debtors have failed to reach out to Oppidan to discuss amendment of the Sublease. Scott Decl., ¶ 8.  It is clear that the Debtors' representations to the Court and to landlord creditors on August 3, 2020 were merely lip service in the Debtors' ongoing effort to pass on their financial burdens to their landlords, thereby creating a slippery slope that could trigger even more bankruptcies.  This has the effect of placing the landlords in the position of long-term, involuntary lenders with no recourse. This is not an acceptable solution, and is not one supported by the Bankruptcy Code.

**II.     The Michigan Executive Orders Have Not Rendered the Sublease Meaningless as Alleged by the Debtors.**

13.     Oppidan's Chuck E. Cheese store is located in Walker, Michigan and is subject to Executive Order 2020-110, which was adopted on June 1, 2020, and provides that indoor services or facilities for amusement or other recreational or entertainment purposes such as arcades are closed (Exec Order 2020-110, ¶ 12.e.), but that restaurants may be open to the public for delivery service, walk up service, drive up service, and may permit up to five members of the public at one time for the purpose of picking up their food or beverage orders (Exec. Order 2020-110, ¶ 13.a).

14.     Executive Order 2020-114 further provides that, effective June 8, 2020, restaurants located in Kent County (like the Walker, Michigan Oppidan/CEC store) may open for outdoor and indoor seating at 50% capacity.  Notably, CEC Enterprises, Inc. has elected NOT to open the Walker, Michigan store for dine-in business despite authority to do so under the Executive Order, and has instead elected to only provide carry out and deliver service.

15.     The Debtor's contention in paragraph 11 of the Rent Abatement Motion that Michigan Executive Order 2020-115, dated June 5, 2020, has "rendered the purpose of the Debtors' Leases meaningless", is patently false. Unlike California, Michigan has not required the complete and indefinite closure of dine-in restaurants since the Petition Date.  Since at least June 8, 2020, the Walker, Michigan store <u>could</u> have been open for in-person dining, yet Debtors elected not to reopen their dining room, and instead chose to provide only delivery and carry out services. While that choice may have caused a decline in revenue, it does not render the Sublease *worthless*, as suggested by the Debtors, as the Walker, Michigan CEC Store has been open and generating revenue since the Petition Date, without interruption, from the sale of food purchased for delivery or carry-out. Further, it is possible that the Walker, Michigan store revenues would

have been higher had the Debtor chosen to reopen its dining room in early June 2020 as permitted by Executive Order 2020-114.

16.     The Debtors should not be excused from paying its post-petition rent obligations mandated by § 365(d)(3) on yet-to-be-rejected leases where the Debtors' stores are, in fact, open for business and generating revenue for the benefit of the Debtor in Possession. While the Michigan Executive Orders may have caused a decline in revenue because arcades are temporarily closed, these Orders have not frustrated the purpose of the Oppidan Sublease where the Debtor has been open, without interruption, for take-out and delivery food services since the Petition Date.

### III.     The Force Majeure Clause in the Sublease Does Not Support Rent Abatement.

17.     Oppidan's Sublease with CEC Entertainment, Inc. does not contain a force majeure clause.  While the Master Lease between Oppidan and Toys R Us – Delaware, Inc. (attached to the Sublease as Exhibit A, Section 17.01) contains a force majeure clause, that clause does not excuse CEC's obligations under the Sublease.  The force majeure clause at issue provides:

> **ARTICLE XVII, UNAVOIDABLE DELAYS, FORCE MAJEURE**
> Section 17.01.  If either party shall be prevented or delayed from punctually performing any obligation or satisfying any condition under this Lease by any strike, lockout, labor dispute, inability to obtain labor, materials or reasonable substitutes therefor, Act of God, weather, soil conditions, site conditions, **present or future governmental restrictions**, regulation or control, insurrection, sabotage, fire or other casualty, or any other condition beyond the control of the party, **other than unavailability of funds or financing** (individually and collectively "Unavoidable Delays"), then the time to perform such obligation or satisfy such condition **shall be extended by the delay caused by such event**. If either party shall as a result of an Unavoidable Delay be unable to exercise any right or options within any time limit provided therefor in this Lease, such time limit shall be deemed extended for a period equal to the duration of such Unavoidable Delay.

6

Scott Decl., Ex. A (Sublease, Ex. A, Section 17.01) (emphasis added).

18.     This force majeure clause does not provide for the abatement of rent obligations. It only provides for the potential of deferred payment of rent during the period of any Unavoidable Delay.  The Debtors' Rent Abatement Motion does not seek rent deferral, but rather complete abatement.

19.     Further, Unavoidable Delays defined in the Master Lease expressly excludes the "unavailability of funds or financing".  Therefore, CEC Entertainment, Inc. is not excused from timely performance of its rent obligations beyond the 60-day deferment provided by the Court pursuant to 11 U.S.C. § 365(d)(3) and Order dated August 3, 2020, simply because of purported unavailability of funds or reduced revenue resulting from COVID-19.

### IV.     11 U.S.C. § 105 Cannot Be Used to Create New Rights That Are Broader Than Those Expressly Provided By 11 U.S.C. § 365.

20.     Bankruptcy courts cannot graft into the Bankruptcy Code rights and remedies that Congress chose not to create. *Cano v. MGAC Mortgage Corp.* (*In re Cano*), 410 B.R. 506, 540 (Banks. S.D. Tex. 2009) (J. Isgur) ("Bankruptcy Courts may not use § 105 to create new substantive rights or contravene specific Code provisions.") (citing *U.S. Waindel (in re Waindel)*, 65 F. 3d 1307, 1309 (5th Cir. 1995)). The Debtors ask the Court to use § 105 to fashion a remedy (i.e., indefinite abatement of rent obligations until COVID-19 restrictions are lifted) that exceeds that which is available in the Bankruptcy Code.

21.     A debtor shall *timely perform* all obligations arising under unexpired leases of nonresidential real property, until such lease is assumed or rejected.  11 U.S.C. § 365(d)(3) (emphasis added). Section 365 also gives courts discretion to defer – but not to abate – such performance obligations by 60-days.  *Id.*  The court lacks authority under 11 U.S.C. § 105 to enter orders that contravene other provisions of the Bankruptcy Code, including § 365. Because

the Court is limited to extending the Debtors' rent payment obligations to only 60-days under §
365(d)(3), which it has already done, it cannot use § 105 to further defer or abate rent. *Noonan v.
Secretary of Health & Human Services (In re Ludlow Hosp. Soc'y, Inc.*) 124 F.3d 22, 27 (1st Cir.
1997) (Section 105(a) empowers the bankruptcy court to exercise its equitable powers – where
"necessary' or 'appropriate' – to facilitate the implementation of other Bankruptcy Code
provisions.).  While it is true that the court has considerable discretion under § 105, the equitable
powers under § 105 are not unlimited and are not a "roving commission to do equity." *Id.*
(quoting *Chiasson v. J. Louis Matherne & Assoc*., 4 F.3d 1329, 1334 (5th Cir. 1993)).

      22.    By refusing to pay post-petition rent, refusing to reject leases at the subject
Stores[3], and requesting the right to abate rent when force majeure clauses only provide for
deferred rent in limited circumstances, the Debtors, by the Rent Abatement Motion, appear to be
attempting to buy time at the expense of the landlords, thus calling into question whether these
estates will become administratively insolvent. The landlords cannot afford to continue this
waiting game while not receiving post-petition rent from the Debtors[4]. Problematic, of course, is
the admission by the Debtor's CFO, Jim Howell, at the meeting of creditors that the Debtors
have no exit strategy planned as the Debtors are still consulting with advisors to find the correct
path, which was still a work in progress.

---

[3] Under 11 U.S.C. § 365(d)(4)(A), Oppidan's Sublease will be deemed rejected on October 22, 2020.

[4] This case is unlike that of Modell's Sporting Goods, Inc. where a New Jersey bankruptcy judge
approved a request in late March 2020 to effectively pause the debtor's bankruptcy case and its
liquidation sales until the end of April because government ordered store closures made it impossible to
hold liquidation sales. *In re Modell's Sporting Goods, Inc.*, No. 20-14179 (Bankr. N.J. March 27, 2020).
Further, the Pier1 bankruptcy case demonstrates the problem with allowing the Debtors to defer rent
payments. There, the Debtor became administratively insolvent before deferred rent had been paid to
landlords, and confirmed a plan that pays only approximately 40% to administrative expense claimants
(including landlords), thus leaving landlords without the post-petition rent payments they were entitled to
under 11 U.S.C. §365.  *In re Pier 1 Imports, Inc*., No. 20-30805 (Bankr. E.D. Va. 2020) (confirmation
order dated 7/30/2020).

23.     In addition to the foregoing, Oppidan joins the objections raised, and adopts the arguments and authorities advanced by other landlords responding to the Rent Abatement Motion, including those by MGP IX Properties, LLC [Doc. No. 597] and Hovde Family Investments, LLC [Doc. No. 601], and others that are later filed.

## RESERVATION OF RIGHTS

24.     Oppidan reserves its right to amend and/or supplement this Objection and Joinder and to raise any additional objections to the Motion at the hearing to consider the Motion.

## CONCLUSION

WHEREFORE, Oppidan Investment Company respectfully requests that the Court sustain the foregoing objection and enter an order denying the Rent Abatement Motion, and granting such other relief as this Court deems just and proper.

Dated:  August 20, 2020

Respectfully submitted,
**MORRISON SUND PLLC**

By: */s/ Cynthia L. Hegarty*
Cynthia L.  Hegarty (MN # 0294627)
*Admitted pro hac vice*
5125 County Road 101, Suite 200
Minnetonka, MN 55345
Telephone: (952) 277-0132
*chegarty@morrisonsund.com*
        - and -
Susan C. Mathews
(Texas Bar No. 05060650)
**BAKER, DONELSON, BEARMAN,
CALDWELL & BERKOWITZ, PC**
1301 McKinney Street, Suite 3700
Houston, TX 77010
Telephone: 713-650-9700
*smathews@bakerdonelson.com*

***ATTORNEYS FOR OPPIDAN
INVESTMENT COMPANY***

9

**<u>Certificate of Service</u>**

I certify that this Objection was filed via the ECF system on August 20, 2020, and has therefore been served on United States Trustee's Office, the Debtors, Debtors' counsel, and all parties requesting notice.

*/s/ Cynthia L. Hegarty*