IN THE UNITED STATES BANKRUPTCY COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

|  |  |  |
|---|---|---|
| In re: | ) ) | |
| | ) | Chapter 11 |
| CEC ENTERTAINMENT, INC., et al., | ) | Case No. 20-33163 (MI) |
| | ) | Jointly Administered |
| Debtors. | ) ) | |

**BRANDON ASSOCIATES SOUTHGATE, LLC'S RESPONSE IN OPPOSITION TO MOTION FOR ORDER AUTHORIZING DEBTORS TO ABATE RENT PAYMENTS AT STORES AFFECTED BY GOVERNMENT REGULATIONS**

Brandon Associates Southgate, LLC ("BAS" or "Landlord"), the landlord for Debtors the lease in Southgate, Michigan ("Lease") by and through its attorneys, hereby opposes and objects to the Debtors' Motion for Order Authorizing Debtor to Abate Rent Payments at Stores Affected by Government Regulations [Docket No. 487] (the "Motion") and states as follows:

## I.   INTRODUCTION

BAS opposes the relief requested in Debtors' Motion which does not have a basis in law or fact.  The Debtors' Motion should be denied as to the Lease, because Section 365(d)(3) specifically and unambiguously provides that the time period in which a debtor can defer making rental payments is limited to 60 days and may not be extended beyond that. The cases and legislative history make clear that this 60-day period was and is a bright-line boundary established as a compromise between a landlord's right to be timely paid and giving the tenant time to come up with the money needed to pay rent and to evaluate whether to continue with the lease or to reject it. Moreover, the Supreme Court has confirmed that bankruptcy courts may not use their equitable power to contravene a specific statute in the Bankruptcy Code. Therefore,

1

Debtors cannot extend the specific 60-day period under any equitable or common law theory, and they cannot reduce the rent owing, which must be paid at the full contractual rate.

More specifically, the Motion must be denied as to the Lease because it contains a different force majeure clause than the clause in the "typical" lease cited in Debtors' motion, and the clause in the Lease does not excuse payment of rent for force majeure events. Similarly, Debtors' invocation of common law principles fails because the common law in Michigan does not permit tenants simply to cease paying rent when operations are restricted or to unilaterally reduce their rent payments; instead, tenants are required to mitigate their damages and make the best use possible of the premises.

The common law doctrine of frustration of purpose does not support Debtor's request to completely abate rent.  Indeed, under Michigan law a tenant is liable for rent owing under the Lease until the Debtor has abandoned the lease and relinquishes possession.  In addition, the Motion should be denied as to the Lease because it contains a different force majeure clause than what Debtor asserts is the "typical" lease provision attached to the Motion.  The Lease unambiguously states that force majeure events do not excuse or suspend Debtors' obligation to pay rent.  Finally, Debtors have already received the maximum allowed rent deferment afforded under Section 365(d)(3) and any additional deferment, let alone absolute rent abatement with no expiration date as requested in the Motion, is in violation of Section 363(d)(3) of the Bankruptcy Code.

Instead of paying rent or rejecting the Lease, the Debtors are trying to give themselves a free option, for an indefinite period of time, to keep the premises and all the benefits (including storage, food preparation, and food pick-up and delivery) without paying anything. Then, if things look better at a later date, they take all the benefits, but if not, they have no downside and

they put all the cost and risk on the landlords, making them into an involuntary, long-term lender with no recourse. Section 365(d)(3) was enacted for the very purpose of preventing exactly this type of harm to landlords.

## II.     BACKGROUND

1. On or about November 3, 1981, Debtor CEC Entertainment, Inc.'s predecessor, ShowBiz Pizza Place, Inc., executed the Lease for the property located at 15300 Dix Toledo Road, Southgate, Michigan (the "Southgate Store"). Debtors' occupancy and possession of the Southgate Store was continuous thereafter and the Lease was amended by amendment and most recently by Third Amendment to Lease Agreement dated May 23, 2019 executed by BAS and Debtor ("Third Amendment"). A copy of the Lease and Third Amendment to Lease Agreement are collectively attached hereto as Exhibit "A."

2. Pursuant to the terms of the Third Amendment and following a recent remodel of the premises, Debtor was granted and took a complete rent abatement for the months of December, 2019, January, 2020 and February, 2020.

3. On March 23, 2020, in response to the spreading Covid-19 pandemic, Michigan, Governor Gretchen Whitmer issued Executive Order No. 2020-21[1] (the "Stay-Home Order"), which ordered all persons not performing essential or critical infrastructure job functions to stay in their place of residence and required closure of all non-essential businesses, including bars and restaurants. *Id*.

---

[1] EO No. 2020-21, available at https://www.michigan.gov/whitmer/0,9309,7-387-90499_90705-522626--,00.html

4. On June 1, 2020 Governor Whitmer issued Executive Order No. 2020-110[2] ("Reopen Order") rescinding the Stay Home Order and authorized restaurants statewide to reopen for indoor and outdoor in-person dining at 50% capacity beginning June 8, 2020. [3]

5. Even though restaurants are authorized and able to serve dine in customers, the Debtor has voluntarily chosen to only offer carry and delivery from the Landlord's location.

6. On June 25, 2020, Debtor CEC Entertainment, Inc. and 16 affiliate Debtors filed for relief under Chapter 11 of the Bankruptcy Code. On June 30, 2020 the Court entered an interim order which was made final at a hearing on August 3, 2020 extending Debtors obligation to make rent payments for 60 days until August 24, 2020 pursuant to Sections 105(a) and 365(d)(3). [Docket No. 162].

7. Almost immediately following the hearing on the rent deferral, on August 3, 2020, the Debtors filed the Motion, seeking to abate post-petition rent obligations for an indefinite period of time for those locations purportedly affected by local government shut down orders.

8. Landlord has a claim for unpaid rent from April 1, 2020 through the date hereof in the amount of $95,540.08, of which $46,244.92 was due pre-petition. Despite the Debtor's nonpayment of rent, the Southgate Store remains open for carryout and delivery services.

---

[2] EO No. 2020-110, available at https://www.michigan.gov/whitmer/0,9309,7-387-90499_90705-530620--,00.html

[3] https://thehill.com/homenews/state-watch/500517-michigan-gov-whitmer-lifts-stay-at-home-order

## III.    RESPONSE IN OPPOSITION

A. **The Motion Is Procedurally Improper Because Debtors Must First Pay the Full Rent and, to the Extent They Have a Valid Legal Argument, Only Then Seek a Refund.**

9. While the Landlord submits that the Debtors' claimed state law defenses to the payment of rent are preempted by the clear and unambiguous federal law mandate within section 365(d)(3) to timely pay the full amount of rent, in the event that the Debtors' defenses are not preempted, to meet the requirements of the Bankruptcy Code and Bankruptcy Rules the Debtors must first timely pay the full amount of rent and only then commence an adversary proceeding against the Landlord for a refund. *See* Bankruptcy Rule 7001(1) and (9). The Debtors should not be permitted to seek an advance declaration by motion that rent already paid or to be paid in the future should be refunded. The Bankruptcy Rules are clear that when debtors seek to recover money or seek a declaration concerning their right to recover money that the additional procedural safeguards provided by an adversary proceeding are required. *Id.*

B. **Debtors' Frustration of Purpose Claims Fail Under Michigan Law**

10. In their Motion, Debtors reference the common law doctrine of "Frustration of Purpose" to argue that their post-petition rent obligations should be abated, indefinitely, because the fundamental purpose of *all* Debtors leases have been frustrated by local government shutdowns. (Motion ¶ 9, 11). In support of this argument, Debtors cite cases from Washington, California, Massachusetts and Oregon, despite seeking to abate rent for sixty-nine (69) leases in eight (8) other states, including the Lease for the Southgate Store. (Motion ¶ 6; Exhibit A).

11. In Michigan a tenant is liable for the actual rent owing under a lease until the tenant has abandoned the property. *In Re Palace Quality Services Industries, Inc*. 283 B.R. 868 (Bankr. E.D. Mich. 2002). "In other words, if the tenant has not forgone the benefit of exclusive

possession and control of the property afforded to her under the lease by either abandoning or surrendering the leasehold interest, the lessor is entitled to the rent the tenant agreed to pay for the benefit conferred." *Id*. at 885 *citing M&V Barocas v THC, Inc.*, 216 Mich. App. 447, 450; 249 N.W.2d 86 (1996).

12. The frustration of purpose doctrine has yet to be considered by the Michigan Supreme Court, though lower courts have addressed the issue. "[F]rustration of purpose is generally asserted where a change in circumstances makes one party's performance virtually worthless to the other…." *Liggett Restaurant Group, Inc. v City of Pontiac*, 260 Mich. App. 127, 133-34; 675 N.W.2d 633 (2003). "Application of the doctrine of frustration is a question of law and not a question of fact." Restatement (Second) of Contracts, 310 (1979); *see also* Colombian National Title Insurance Company v. Township Title Services, Inc. 659 F. Supp. 796 (D. Kan. 1987).

13. For a party to avail itself of the defense of frustration of purpose under Michigan law it must prove the following conditions:

> (1)The contract must be at least partially executory; (2) the frustrated party's purpose in making the contract must have been known to both parties when the contract was made; (3) this purpose must have been basically frustrated by an event not reasonably foreseeable at the time the contract was made, the occurrence of which has not been due to the fault of the frustrated party and the risk of which was not assumed by him.

*Molnar v. Molnar*, 110 Mich. App. 622, 626; 313 N.W.2d 171 (1981).

14. The *Molnar* case's second prong requires a determination of the contracts "primary purpose" "According to the Restatement (Second) of Contracts, 'It is not enough to that he had in mind some specific object without which he would not have made the contract. The object must be so completely the basis of the contract that, as both parties understand, without it the transaction

would make little sense." *Hemlock Semiconductor Corporation v. Kyocera Corporation*, 2016 WL 67596 at 4 (E.D. Mich. 2016), *citing* Restatement (Second) of Contracts § 265.

15. Pursuant to Section 3.01 of the Lease, the tenant leased the Premises "for the purpose of operating a family-friendly oriented pizza restaurant, serving beer and wine, with electronically controlled theater characters and electronic mechanical token-operated amusement games….". *See*, Exhibit A at 4. Simply put, Debtor's purpose was to operate a family friendly restaurant, serving beer and wine, and coin operated games for children. The Debtor is currently able to conduct its business as contracted for **but has chosen to not open for dine in** even though it has the authority to do so.

16. Under the third prong from *Molnar*, while the frustration of the primary purpose cannot be due to the fault of the frustrated party and the risk was not assumed by them, it is not enough that the transaction has become less profitable for the affected party or even that he will sustain a loss. *Seaboard Lumber Co. v U.S.*, 41 Fed.Cl. 410, 417 (Fed. Cl.1998). Indeed, "[A] lack of profit is generally insufficient to frustrate the purpose of a contract. Id. at 418. In Michigan, "A party's claim that it is unable to conduct business profitably is insufficient to state a claim of frustration of purpose." Hemlock Semiconductor Corporation, 2016 WL 67596 at 5.

17. Other states, including California, are in accord, "The doctrine of frustration has been limited to cases of extreme hardship so that businessmen, who must make their arrangements in advance, can rely with certainty on their contracts" *Lloyd v Murphy*, 25 Cal.2d 48, 54; 153 P2d 47 (1944). "Thus laws or other governmental acts that make performance unprofitable or more difficult or expensive do not excuse the duty to perform a contractual obligation." *Id*. (citations omitted). In *Lloyd*, the plaintiff leased property from Defendant to operate car dealership and showroom. Approximately four months after commencement of the

lease the U.S. government ordered that the sale of all new automobiles be discontinued and tenant immediately vacated the premises. *Id*. at 49-50. In affirming the lower court's judgment in favor of landlord the court rejected tenant's claims of frustration of purpose stating:

> Nor has defendant sustained the burden of proving that the value of the lease has been destroyed. The sale of automobiles was not made impossible or illegal but merely restricted and if governmental regulation does not entirely prohibit the business to be carried on in the leased premises but only limits or restricts it, thereby making it less profitable and more difficult to continue, the lease is not terminated or the lessee excused from further performance.

*Lloyd*, 153 P.2d at 51.

18.     As of June 8, 2020, well before the petition date, the absolute prohibition on public operations of the Southgate Store was dissolved and Debtor was able to resume normal operations. As of the petition date, the primary purpose of Debtors' lease was not frustrated as there was no prohibition on family friendly restaurant with pizza, beer, wine and games for children. Even if the capacity restrictions caused operations of the Southgate Store to be unprofitable and Debtor made the business decision not to reopen for dine in operation, that is not sufficient to allow Debtors to avail themselves of the frustration of purpose doctrine.

19.     The Debtor's contention in paragraph 11 of the Motion that Michigan Executive Order 2020-115, dated June 5, 2020, has "rendered the purpose of the Debtors' Leases meaningless", is patently false. Unlike California, Michigan has not required the complete and indefinite closure of dine-in restaurants since the Petition Date. Since at least June 8, 2020, the Southgate, Michigan store could have been open for in-person dining, yet Debtors elected not to reopen their dining room, and instead chose to provide only delivery and carry out services. While that choice may have caused a decline in revenue, it does not render the Lease worthless, as suggested by the Debtors, as the Southgate, Michigan CEC Store has been open and

generating revenue since the Petition Date, without interruption, from the sale of food purchased for delivery or carry-out. Further, it is possible that the Southgate, Michigan store revenues would have been higher had the Debtor chosen to reopen its dining room in early June 2020 as permitted by Executive Order.

20. Indeed, to the extent Debtors believe that continued operations at a particular location are unsustainable, Debtors can elect to reject those leases. Debtors have not indicated their intention to reject the Lease, instead asking the Court to suspend Debtor's rental obligations under the Leases for an unlimited period of time to allow Debtors the ability to analyze performance at each location and await developments in the pandemic while placing all expense and risk on the landlords.

C. **The Force Majeure Clause in the Lease Requires Payment of Rent**

21. Debtors argue that the actions by certain state governments in response to the COVID-19 pandemic have "triggered the Leases' Force Majeure clauses" thus excusing Debtors' from their obligations to pay rent. (Motion at 7). In support Debtors' attach the force majeure clauses purportedly from "CEC's Standard Lease"[4] that provides:

> The time for performance by Landlord or Tenant of any term, provision or covenant of this Lease shall be deemed extended by any time lost due to delays resulting from acts of God, strikes, unavailability of building materials, civil riots, floods, severe and unusual weather conditions, material or labor restrictions by governmental authority and any other cause not within the reasonable control of Landlord or Tenant, as the case may be.

Motion, ¶ 12.

22. While BAS expressly reserves its right to argue that the COVID-19 pandemic and resulting Executive Orders in Michigan do not constitute a force majeure event, even if the Court

---

[4] The Example Lease excerpts attached by Debtor were for single locations in New York, New Jersey, California and Washington, 25% of the states with leased locations referenced in the Motion.

determines that they do, Debtors lose on the merits because the plan language of the force majeure section of the Lease for the Southgate Store **expressly requires the payment of rent during the period of a force majeure event** enumerated therein:

> 11.08  Force Majeure.  Neither Lessor nor Lessee shall be deemed in violation of this lease if it is prevented from performing any of the obligations hereunder by reason of strikes, boycotts, labor disputes, embargos, shortage of material, acts of God, acts of public enemy, acts of superior governmental authority, weather conditions, floods, riots, rebellion, sabotage, or any other circumstances for which it is not responsible or which it is not in its control, and the time for the performance shall be automatically extended by the period the party is prevented from performing its obligations hereunder, **provided that nothing in this paragraph shall excuse Lessee from paying rent and any other payment of any kind which falls due during the term hereof.**

Exhibit A, § 11.8 at 20 (emphasis added).

23. Debtors' Motion must be denied as to the Lease for the Southgate Store because the terms of the Lease do not waive, but instead expressly require rental payments during force majeure events enumerated in Section 11.8 of the Lease.  "If the language of a contract is unambiguous, we construe and enforce the contract as written." *Quality Products and Concepts Co v Nagle Precision, Inc.*, 469 Mich. 362, 365; 666 N.W.2d 251 (2003).

D. **Debtor's Relief Seeks To Rewrite The Leases**

24. The relief sought by Debtors is effectively to re-write all of the subject leases to allow tenants to remain in possession of the leased property and conduct ordinary business operations generating revenue, while also eliminating tenants' obligations to pay anything to the landlords until a location's government regulations have disappeared.

25. "Under the Bankruptcy Code, executory contracts and unexpired leases automatically become part of the bankruptcy estate at the inception of the bankruptcy proceeding. 11 U.S.C. § 541(a)(1). The trustee has the authority under Section 363(b) or (c) to

use the property subject to the leasehold interest acquired from the debtor, subject, of course, to the corresponding obligation of the trustee to honor the terms of that lease or contract." *In Re Palace Quality Services Industries, Inc.* at 883.

26. 11 U.S.C. § 365(d)(3) states that the Debtor "shall timely perform all the obligations of the debtor, except those specified in section 365(b)(2), arising from and after the order for relief under any unexpired lease of nonresidential real property, until such lease is assumed or rejected, notwithstanding section 503(b)(1) of this title. The court may extend, for cause, the time for performance of any such obligation that arises within 60 days after the date of the order for relief, but the time for performance shall not be extended beyond such 60-day period."

27. 11 U.S.C. § 365 sections are supplemented with 15 separate subsections, "However, none of these subsections permit the [debtor in possession] to ignore the terms of an executory contract or unexpired lease during the post-petition interval when she is deciding whether to assume or reject it." *In Re Palace Quality Services Industries, Inc.* at 383.

28. The Debtors have already received the maximum allowable 60-day extension allowed under Section 365(d)(3). [Docket No. 162]. Nevertheless, Debtors have asked the Court for not just an extension but a waiver of their rental obligations and have failed to provide a scintilla of law to support their extreme request.

E. **The Proposed Relief Is Overbroad.**

29. Even if the Court concludes that the Debtors are entitled to some relief, the Motion goes too far. According to their Motion, Debtors are asking this Court to "enter an order abating rent payments for stores closed or otherwise limited in operations as a result of any governmental order or restriction until such restriction or order has been lifted and to reflect the

extent and duration of such forced governmental closures or limitations." Motion, at 2; see also Proposed Order, ¶ 1. In other words, the existence of "any" COVID-19-related governmental order or restriction (no matter how minor) would abate all rent indefinitely, even if that governmental order or restriction has no negative or only a limited negative effect on the Debtors. Under a literal interpretation of the relief that the Debtors are requesting and the language of their proposed order, the Debtors effectively could be asking this Court never to have to pay rent ever again. There is no basis for granting the Debtors such sweeping relief.

30.     Even if the Court were to entertain any form of relief, it would have to be specific to the affected leases, in the specific states and counties where the affected locations are, based on the operations that the Debtors are or could be conducting at those locations, and based on the specific governmental order or restriction in place for the relevant time period. This would require, at a minimum, proper discovery, motion practice and hearings focused on these specific factual inquiries. There is a proper procedure, but Debtors have not followed it.

F.  **BAS Joins in Other Landlord Oppositions.**

31.     Finally, in addition to the substantive and procedural arguments set forth above, BAS hereby respectfully joins in and incorporates by reference the argument, evidence and citations offered in the oppositions to the Motion filed by the Debtors' other landlords.

WHEREFORE BAS requests that the relief requested in the Motion be denied.

Dated: August 21, 2020

Respectfully submitted,

CLARK HILL, PLC

/s/ David M. Blau
David M. Blau (MI P52542) (Pro hac vice admission pending)
CLARK HILL, PLC
151 S. Old Woodward Ave., Ste. 200
Birmingham, MI  48009
Tel: (248) 988-1817
Fax: (248) 988-2336
dblau@clarkhill.com

*Attorney for Brandon Associates Southgate, LLC*

## CERTIFICATE OF SERVICE

I certify that on August 21, 2020, a true and correct copy of the foregoing document was served via the Court's Electronic Case Filing (ECF) system on all parties registered to receive electronic service in these cases.

/s/ David M. Blau
David M. Blau