IN THE UNITED STATES BANKRUPTCY COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | |
|---|---|
| In re: § <br> § <br> CEC ENTERTAINMENT, INC., *et al.*, § <br> § <br> Debtors. § <br> § <br> § | Chapter 11 <br><br> Case No. 20-33163 (jointly administered) |

**OPPOSITION OF DIACIABERT COMMERCIAL DEVELOPMENT, N.V.
TO DEBTORS' MOTION FOR ORDER AUTHORIZING DEBTORS
TO ABATE RENT PAYMENTS AT STORES AFFECTED BY
GOVERNMENT REGULATIONS
<u>RELATES TO DOCKET NO. 487</u>**

Diaciabert Commercial Development, N.V. ("Diaciabert"), the lessor of the property containing Debtor's business, located at 8425 Reseda Blvd., Northridge, CA 91324 ("Northridge Store"), appearing through undersigned counsel, hereby opposes and objects to Debtor's *Motion for Order Authorizing Debtors to Abate Rent Payments at Stores Affected by Government Regulations* [Docket No. 487] (the "Motion") as follows:

## <u>INTRODUCTION / SUMMARY OF ARGUMENT</u>

1. Debtors filed the instant Motion contending that the "obligation to pay rent for the Stores should be excused, in whole or in part," on the basis of three (3) main arguments: 1) Frustration of Purpose, 2) Force Majeure Provisions; and, 3) Debtors' contention that the Court should use its inherent powers to abate rent. Debtors request that the Court abate rent from the date of enactment of government regulations to an *indefinite* date that those regulations are lifted. Diaciabert opposes the Debtors' Motion on the grounds that frustration of purpose does not excuse Debtors from making rent payments, Debtors fail to point to a force majeure provision in the specific contract governing the lease for the Northridge Store, 11 U.S.C. § 365(d)(3) does

1

not support the remedy requested by the Debtors in this Motion, and the Court should not use its inherent powers to grant the Motion.

## BACKGROUND

2. On or about February 25, 1981, Debtor's predecessor and/or affiliate, Family Entertainment Centers, Inc. executed a Lease Agreement (the "Lease") for the Chuck E. Cheese location identified in Debtors' Motion as Store No. 451, located at 8425 Reseda Blvd., Northridge, CA 91324 ("Northridge Store"). A copy of the Lease is attached hereto as **Exhibit "A."**

3. The Lease was amended on multiple occasions. Specifically, the Lease was amended by that certain Amendment to Lease, dated February 25, 1981; Amendment to Restaurant Lease, dated July 15, 1991; Third Amendment to Lease, dated April 26, 1996; Fourth Amendment to Lease, dated September 6, 2001; Letter Agreement, dated March 22, 2006 and Amendment to Lease, effective as of December 29, 2010. In 2015, Debtor CEC Entertainment, Inc. executed a Seventh Amendment to Lease Agreement ("Seventh Amendment") that extended the term of the Lease through August 31, 2026. A copy of the Seventh Amendment to the Lease Agreement is attached hereto as **Exhibit "B."**

4. Pursuant to the Seventh Amendment, Debtors were to pay monthly minimum rent of $13,743.00 between September 1, 2016 and August 31, 2021, and a monthly minimum rent of $15,117.30 between September 1, 2021 and August 31, 2026. In addition to minimum rent, the original Lease also provided that Debtors are responsible for paying CAM charges, and seven percent (7%) of Debtors' gross sales in any lease year that exceeds the Debtors' rent as adjusted. Debtors are required to deliver to Diaciabert an annual statement showing gross sales each year.

5. Debtors continue to operate the Northridge Store and collect significant revenue

while doing so. This is demonstrated by the income reports provided to Diaciabert.

6. On June 25, 2020, Debtor CEC Entertainment, Inc. and its 16 affiliate Debtors filed the instant bankruptcy under Chapter 11 of the Bankruptcy Code. On August 3, 2020, the Debtors filed the subject Motion to Abate, seeking to abate post-petition rent obligations for an indefinite period of time, as a result of local government related shut down orders. For the reasons set forth below, the Motion should be denied and Debtors should be ordered to maintain their rent payments to Diaciabert.

## DISCUSSION

**A. Debtor's Reliance on the Doctrine of Frustration of Purpose to Justify Rent Abatement is Misplaced and Should be Rejected by the Court**

7. Debtors rely on the doctrine of Frustration of Purpose to support their argument that rent should be suspended. As the California Supreme Court summarized:

> The question in cases involving frustration is whether the equities of the case, considered in the light of sound public policy, require placing the risk of a disruption or complete destruction of the contract equilibrium on defendant or plaintiff under the circumstances of a given case (Fibrosa Spolka Akcyjina v. Fairbairn Lawson Combe Barbour, Ltd. (1942) 167 L.T.R. [H.L.] 101, 112-113; *see* Smith, Some Practical Aspects of the Doctrine of Impossibility, 32 Ill.L.Rev. 672, 675; Patterson, Constructive Conditions in Contracts, 42 Columb.L.Rev. 903, 949; 27 Cal.L.Rev. 461), and the answer depends on whether an unanticipated circumstance, the risk of which should not be fairly thrown on the promisor, has made performance vitally different from what was reasonably to be expected (6 Williston, op. cit. supra, 1963, p. 5511; Restatement, Contracts, 454).

Lloyd v. Murphy (1944) 25 Cal. 2d 48, 54.

8. The California Supreme Court further held that "laws or other governmental acts that make performance unprofitable or more difficult or expensive do not excuse the duty to perform a contractual obligation." Id. (citing Sample v. Fresno Flume etc. Co., 129 Cal. 222, 228 [61 P. 1085]; Klauber v. San Diego St. Car Co., 95 Cal. 353 [30 P. 555]; Texas Co. v. Hogarth Shipping Co., 256 U.S. 619, 630 [41 S.Ct. 612, 65 L.Ed. 1123]; Columbus Ry. Power & Light

Co. v. Columbus, 249 U.S. 399, 414 [39 S.Ct. 349, 63 L.Ed. 669]; Thomson v. Thomson, 315 Ill. 521, 527 [146 N.E. 451]; Commonwealth v. Bader, 271 Pa. 308, 312 [114 A. 266]; Commonwealth v. Neff, 271 Pa. 312, 314 [114 A. 267]; London & Lancashire Ind. Co. v. Columbiana County, 107 Ohio St. 51, 64 [140 N.E. 672]).

9. In this case, although it is undeniable that COVID-19 has affected the profitability and the business of the Debtor (any thousands of other businesses), the Debtor is still able to operate by selling food to its customers and other services. While operations may have been limited in California due to government regulations, there are nonetheless still a significant number of businesses (like the Northridge Store) who adapted to the situation and continued their business operations in order to remain operational and resume making rent payments and other business expenses. Although the State of California might have placed restrictions on allowing customers indoors, California did not restrict food businesses such as Debtors from operating. As such, Debtor can still resume using the subject property for the purpose of which it was leased. *See* Lloyd v. Murphy (1944) 25 Cal. 2d 48, 56. The purpose of the subject Lease here is clearly set forth in the title of the original Lease – "Restaurant Lease." For these reasons, the doctrine of Frustration of Purpose does not excuse the Debtors from making their lease payments.

### B. Debtors' Argument Regarding Any Force Majeure Clauses are Inapplicable to the Subject Lease

10. Debtors argue in their Motion that "CEC's standard lease includes a force majeure clause". Nonetheless, any force majeure clause in "CEC's standard lease" is inapplicable here, since the original lease with Diaciabert was not "CEC's standard lease", and did not contain the force majeure clause referred to in the Motion. Debtors fail to allege in their Motion which provision in the subject Lease for the Northridge Store supports their force majeure argument. Thus, the arguments advanced by the Debtors fail with respect to the subject Lease.

### C. 11 U.S.C. § 365(d)(3) Contradicts the Relief Requested by Debtors in the Motion

11. Section 365(d)(3) of the Bankruptcy Code provides as follows:

> "The [Debtor-in-Possession] shall timely perform all the obligations of the debtor, except those specified in section 365(b)(2), arising from and after the order for relief under any unexpired lease of nonresidential real property, until such lease is assumed or rejected, notwithstanding section 503(b)(1) of this title. The court may extend, for cause, the time for performance of any such obligation that arises within 60 days after the date of the order for relief, but the time for performance shall not be extended beyond such 60-day period" (emphasis added).

12. Although Debtors request that the Court issue an order excusing the Debtors from paying rent to stores including the Northridge Store, 11 U.S.C. § 365(d)(3) does not support such request by the Debtors. The plain language of 11 U.S.C. § 365(d)(3) is clear in that performance must be made within 60 days, and that no extension can be given. 11 U.S.C. § 365(d)(3) affords tenants of commercial leases <u>no more than</u> 60 days of occupancy without timely performance of obligations under the lease, and section 11 U.S.C. § 365(d) sets out the specific limits of that balance, which cannot be expanded. Debtors' failure to make rent payments indefinitely, while at the same time not rejecting the subject lease, is not allowed pursuant to 11 U.S.C. § 365(d). Debtor's request for excuse of its rent obligation as to the Northridge Store is not supported by case law or statute, and thus, should be denied. This "one-size-fits-all" request is clearly overbroad.

### D. The Court Should Not Exercise its Inherent Powers to Grant the Relief Requested by the Debtors and Cannot Exercise its Powers to Contravene 11 U.S.C. § 365(d)(3)

13. Aside from the arguments set forth above, Debtor's request for excusal of any rent payment until an *indefinite* period of time is an attempt by the Debtor to place the entire burden from COVID-19 on Diaciabert and other creditors. In essence, Debtors request that the Court excuse them from paying any of their rent obligations, while at the same time allowing them to

Case 20-33163   Document 656   Filed in TXSB on 08/21/20   Page 6 of 8

continue operations and generate profits (albeit less than before). This will significantly prejudice Diaciabert which will still need to act in accordance with the terms of the Lease, without getting *any* of the bargain that was negotiated when the Lease was entered into and in several subsequent amendments over the years. As if that is insufficient, Debtors made the request in the Motion to be excused from paying the rent for an indefinite amount of time, which may result in Diaciabert losing hundreds of thousands in uncollected rent payments while Debtors continue to operate the Northridge Store and collecting substantial revenue.

14. Debtors seek that the Court "enter an order abating rent payments for stores closed or otherwise limited in operations as a result of **any** governmental order or restriction until such restriction or order has been lifted and to reflect the extent and duration of such forced governmental closures or limitations" (emphasis added). It is quite possible that some form of "governmental order or restriction" will be in effect for years to come, and thus, the request by the Debtors seem to be overbroad, to say the least. Further, it is unknown why Debtor's requirement to pay rent should depend on government regulations as opposed to Debtor's income and ability to operate in some capacity.

15. The Supreme Court has held in Law v. Siegel that a bankruptcy court "may not contravene specific statutory provisions." 571 U.S. 415, 420 (2014). Debtors essentially ask this Court to circumvent 11 U.S.C. § 365(d)(3) and excuse Debtor's performance pursuant to its Lease obligations due to COVID-19. However, as set forth above, 11 U.S.C. § 365(d)(3) goes in the face of Debtors' request. Thus, this Court cannot use any of its inherent powers under 11 U.S.C. § 105 to circumvent around 11 U.S.C. § 365(d)(3). Debtors also did not provide any case law that supports the exercise of the Court's inherent powers in situations involving 11 U.S.C. § 365(d)(3).

6

## **CONCLUSION**

16. Diaciabert hereby respectfully requests that the Court deny the Motion by the Debtors. Although Debtors have likely suffered due to COVID-19, the Debtors nonetheless continue to operate the Northridge Store and generate revenues. The entire burden of the pandemic should not be placed on landlords such as Diaciabert. Debtors have the option to reject their Lease. However, if they choose to stay in the subject property, they should be required to pay their rent obligations. Debtors need to "pay to play."

Date: August 21, 2020            By:    Edward G. Schloss Law Corporation

*/s/ Edward G. Schloss*
EDWARD G. SCHLOSS *(pro hac vice)*
California State Bar No. 102858
3637 Motor Avenue, Suite 220
Los Angeles, California 90034
(310) 733-4488
Email: egs2@ix.netcom.com

## CERTIFICATE OF SERVICE

      I certify that on August 21, 2020 a true and correct copy of the foregoing document was served via the Court's Electronic Case Filing (ECF) system on all parties registered to receive electronic service in these cases.

                        By:    Edward G. Schloss Law Corporation

                              */s/ Edward G. Schloss*
                              EDWARD G. SCHLOSS *(pro hac vice)*

Z:\LAW FILES\OPP\Opposition.MotionforRentAbatement.CEC.B27441.(2).docx