IN THE UNITED STATES BANKRUPTCY COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | |
|---|---|
| In re ) | |
| ) | Chapter 11 |
| CEC Entertainment, Inc., *et al.*, ) | |
| ) | Case No.: 20-33163 (MI) |
| Debtors,[1] ) | |
| ) | (Jointly Administered) |

**MIR HANSON ASSOCIATES, LLC'S OBJECTION AND JOINDER WITH RESPECT TO DEBTORS' MOTION FOR ORDER AUTHORIZING DEBTORS TO ABATE RENT PAYMENTS AT STORES AFFECTED BY GOVERNMENT REGULATIONS**

MIR Hanson Associates, LLC ("**MIR Hanson**"), by and through the undersigned counsel, hereby files this objection and joinder (the "**Objection and Joinder**") with respect to Debtors' *Motion for Order Authorizing Debtors to Abate Rent Payments at Stores Affected by Government Regulations* [Dkt. No. 487] (the "**Abatement Motion**"). In support of the Objection and Joinder, MIR Hanson states as follows:

**BACKGROUND**

1.  MIR Hanson (as successor-in-interest to FC Hanson Associates, LLC) and Debtor CEC Entertainment, Inc. ("**CEC**") are parties to that certain Lease Agreement (as amended from time to time, the "**Lease**"), dated as of November 12, 2001, a copy of which is attached hereto as **Exhibit A**. Pursuant to the Lease, CEC leases from MIR Hanson certain commercial space located in the shopping center known as "Atlantic Terminal Mall," 139 Flatbush Avenue, Brooklyn, NY 11217 (the "**CEC Brooklyn Location**").

---

[1] The Debtors in these chapter 11 cases, along with the last four digits of each Debtor's federal tax identification number, as applicable, are BHC Acquisition Corporation (0947); CEC Entertainment Concepts, L.P. (3011); CEC Entertainment Holdings, LLC (9147); CEC Entertainment, Inc. (5805); CEC Entertainment International, LLC (8177); CEC Entertainment Leasing Company (4517); CEC Leaseholder, LLC (N/A); CEC Leaseholder #2, LLC (N/A); Hospitality Distribution Incorporated (5502); Peter Piper Holdings, Inc. (6453); Peter Piper, Inc. (3407); Peter Piper Texas, LLC (6904); Peter Piper Mexico, LLC (1883); Queso Holdings Inc. (1569); SB Hospitality Corporation (4736); SPT Distribution Company, Inc. (8656); and Texas PP Beverage, Inc. (6895). The Debtors' corporate headquarters and service address is 1707 Market Place Boulevard #200, Irving, TX 75063 (collectively, the "**Debtors**").

1

2. Section 24 of the Lease, titled "Force Majeure" (the "*Force Majeure* **Clause**"), provides:

> Subject to the casualty and condemnation provisions of this Lease, if either party shall be prevented or delayed from punctually performing any obligations or satisfying any condition under this Lease by any strike, lockout, labor dispute, inability to obtain labor or materials or reasonable substitutes therefor, act of God, unusual governmental restriction, regulation or control, enemy or hostile governmental action, civil commotion, insurrection, sabotage, fire or other casualty, any Landlord Delay (as defined in the Ground Lease) or any other condition beyond the reasonable control of such party, or caused by the other party, then the time to perform such obligation to satisfy such condition shall be extended on a day-for-day basis for the period of the delay caused by such event; provided, however, that the party claiming the benefit of this Section shall, as a condition thereto, give notice to the other party in writing within ten (10) days of the incident specifying with particularity the nature thereof, the reason therefor, the date and time incurred and the reasonable length said incident will delay the fulfillment of obligation contained herein. Failure to give such notice within the specified time shall render such delay invalid in extending the time for performing the obligations hereunder. This Section shall not apply to the inability to pay any sum of money due hereunder or the failure to perform any other obligation due to the lack of money or inability to raise capital or borrow for any purpose.

Lease (Ex. A) at 30, § 24.

3. In March 2020, New York State and New York City began issuing emergency orders in response to a national and local public health emergency, COVID-19 (the "**NY COVID-19 Orders**"). These orders expressly (though temporarily) preempt the laws of New York State and New York City, including rules relating to CEC's ability to operate in the CEC Brooklyn Location.

4. On August 3, 2020, Debtors filed the Abatement Motion. According to the motion, Debtors seek an order abating rent payments for 141 of its locations, including the CEC Brooklyn Location. In support thereof with regard to the Lease, Debtors rely on (i) the NY COVID-19 Orders and the *Force Majeure* Clause, (ii) "common law doctrines" and (iii) this Court's equitable powers under section 105(a) of the Bankruptcy Code.

**ARGUMENT**

5. As set forth further below, neither the *Force Majeure* Clause nor any common law doctrines excuse Debtors from their obligations to pay rent under the Lease. Moreover, section 105(a) of the Bankruptcy Code does not grant this Court the authority to set aside Debtor's obligations under section 365(d)(3) of the Bankruptcy Code to comply with its postpetition obligations under the Lease. Accordingly, the Abatement Motion should be denied, and Debtors should be directed to timely pay all postpetition rent and associated charges due under the Lease, including, without limitation, all base rent, percentage rent, common area maintenance charges, real estate taxes and utility charges (collectively, "**Rent**").

I. **THE GOVERNMENT REGULATIONS DO NOT RELIEVE CEC OF ITS CONTRACTUAL OBLIGATION TO PAY RENT**

   A. **The Parties Agreed Pursuant to the *Force Majeure* Clause that CEC Would Continue to be Liable for Rent in the Event of Government Orders Relating to Public Health Emergencies**

6. The *Force Majeure* Clauses specifically contemplates that governmental restrictions, such as those set forth NY COVID-19 Orders, constitute *force majeure* events that *do not excuse* CEC's obligation to pay Rent. Thus, the Abatement Motion—which is premised on the theory that the NY COVID-19 Orders were "unforeseeable"—should be denied.

7. As with all contract provisions, New York courts interpreting a *force majeure* clause seek to effectuate the parties' intent. "[W]hen the parties have themselves defined the contours of force majeure in their agreement, those contours dictate the application, effect, and scope of force majeure." *Route 6 Outparcels, LLC v. Ruby Tuesday, Inc.*, 88 A.D.3d 1224, 1225 (3d Dep't 2011) (internal citations omitted). Here, the Lease's *Force Majeure* Clause specifically contemplates the types of governmental restrictions that CEC now contends were "unforeseeable." In particular, pursuant to the clause, *force majeure* events include "unusual

3

governmental restriction, regulation or control, enemy or hostile governmental action, civil commotion" as well as "any other condition beyond the reasonable control of [a] party." Lease (Ex. A) at 30 § 24. The NY COVID-19 Orders and their restrictions fall squarely within the parameters of these events and, therefore, were specifically anticipated and accounted for by the parties (including CEC).

8.  Importantly, the parties agreed that these types of events would not excuse CEC's obligation to pay Rent. *See* Lease (Ex. A) at 30, § 24 (stating *Force Majeure* Clause "shall not apply to the inability to pay any sum of money due hereunder or the failure to perform any other obligation due to the lack of money or inability to raise capital or borrow for any purpose"). Indeed, the parties did not include any defined *force majeure* event that would excuse CEC from a default for failure to pay Rent. *Id*. Thus, even faced with a *force majeure* event, CEC must continue paying Rent.

**B.   The *Force Majeure* Clause Bars CEC's Reliance on the Common Law Doctrine of Frustration of Purpose**

9.  Because the parties considered and agreed in the Lease that governmental orders and restrictions—including those stemming from the COVID-19 pandemic—would not excuse CEC's obligation to continue paying Rent, CEC cannot rely on frustration of purpose to circumvent the Lease and its terms. Accordingly, CEC's reliance on this doctrine fails as a matter of law.

10.  The doctrine of frustration of purpose applies only to unforeseeable events and, therefore, *cannot* apply to an event that was contemplated by the parties and specifically addressed in a governing agreement. *See Sage Realty Corp. v. Jugobanka*, *D.D. New York Agency*, No. 95 CIV. 0323 RJW, 1998 U.S. Dist. LEXIS 15756, at *6-7 (S.D.N.Y. Oct. 8, 1998) (stating doctrine of frustration excuses performance only when a "'virtually cataclysmic, wholly *unforeseeable*

4

*event* renders the contract valueless to one party"') (emphasis added) (quoting *United States v. Gen. Douglas MacArthur Senior Vill.*, 508 F.2d 377, 381 (2d Cir. 1974)).

11. As discussed, and as evidenced by the *Force Majeure* Clause, MIR Hanson and CEC contemplated that governmental action, such as the restrictions set forth in the NY COVID-19 Orders, might impact the parties' rights and obligations under the Lease. *See* Lease (Ex. A) at 30, § 24. Consequently, CEC cannot now allege that the NY COVID-19 Orders were suddenly *unforeseeable* and attempt to shift the risk to MIR Hanson. *See, e.g., Bank of Am. Nat'l Tr. & Sav. Ass'n v. Envases Venezolanos, S.A.*, 740 F. Supp. 260, 263, 265-67 (S.D.N.Y. 1990) (rejecting frustration of purpose argument based on change of exchange rates where operative restructuring agreement foresaw possibility and confirmed event would not relieve defendants' repayment obligations). Accordingly, because the restrictions imposed by the NY COVID-19 Orders were contractually foreseeable and accounted for, CEC cannot rely on the frustration of purpose doctrine to excuse its non-payment of Rent.

## II. Section 105(a) of the Bankruptcy Code Does Not Authorize the Court to Set Aside the Requirements of Section 365(d)(3) of the Bankruptcy Code

12. As recognized by the Supreme Court in *Law v. Siegel*, section 105(a) of the Bankruptcy Codes does not authorize a court to override the specific mandates of other Bankruptcy Code provisions:

> It is hornbook law that § 105(a) does not allow the bankruptcy court to override explicit mandates of other sections of the Bankruptcy Code. Section 105(a) confers authority to "carry out" the provisions of the Code, but it is quite impossible to do that by taking action that the Code prohibits. That is simply an application of the axiom that a statute's general permission to take actions of a certain type must yield to a specific prohibition found elsewhere . . . . We have long held that whatever equitable powers remain in the bankruptcy courts must and can only be exercised within the confines of the Bankruptcy Code.

5

571 U.S. 415, 421 (2014) (internal quotation marks and citations omitted); *see also Brown v. Viegelahn (In re Brown)*, 960 F.3d 711, 720 (5th Cir. 2020) (holding section 105(a) "'does not authorize the bankruptcy courts to create substantive rights that are otherwise unavailable under applicable law or constitute a roving commission to do equity'") (quoting *United States v. Sutton*, 786 F.2d 1305, 1308 (5th Cir. 1986)).

13. Section 365(d)(3) of the Bankruptcy Code unambiguously requires a debtor to timely perform all postpetition obligations arising under an unexpired lease of nonresidential property, including the obligation to timely pay postpetition rent. *See* 11 U.S.C. § 365(d)(3) (stating a debtor "*shall* timely perform all obligations of the debtor . . . arising . . . under any unexpired lease of nonresidential real property, until such lease is assumed or rejected") (emphasis added). This requirement is without exception under the Bankruptcy Code, and nothing in the Bankruptcy Code authorizes a court to relieve a debtor of its obligation under section 365(d)(3).

14. Given the clear mandate of section 365(d)(3) of the Bankruptcy Code, and the limitations on a court's equitable authority under section 105(a) of the Bankruptcy Code, Debtors' request that the Court "exercise its inherent, equitable powers to excuse rent payments," Abatement Motion at 9, must be denied.

## JOINDER AND RESERVATION OF RIGHTS

15. MIR Hanson joins in, incorporates by reference, and adopts as its own the objections by any other landlords and parties-in-interest to the Abatement Motion to the extent they are not inconsistent with this Objection and Joinder.

16. MIR Hanson expressly reserves all rights under the Lease, the Bankruptcy Code and applicable law, including, without limitation, the right to supplement and/or amend this

Objection and Joinder, and to object to any proposed assumption, assumption and assignment or rejection of the Lease.

**WHEREFORE**, MIR Hanson respectfully requests that this Court deny the relief sought by Debtors in the Abatement Motion.

Respectfully submitted this 21st day of August 2020.

DIAMOND MCCARTHY LLP

By: */s/ Stephen T. Loden*
Allan B. Diamond (05801800)
Stephen T. Loden (24002489)
909 Fannin, Suite 3700
Houston, Texas 77010
(713) 333-5100
adiamond@diamondmccarthy.com
sloden@diamondmccarthy.com

-and-

DAVIS & GILBERT LLP

Jesse Schneider, Esq.
Massimo Giugliano, Esq.
1740 Broadway
New York, New York 10019
(212) 468-4800
jschneider@dglaw.com
mgiugliano@dglaw.com

*Counsel for MIR Hanson Associates, LLC*

**CERTIFICATE OF SERVICE**

The undersigned, an attorney, hereby certifies that a true and correct copy of the above was served upon the counsel and parties of record, electronically via the Clerk of the Court through the ECF system to the parties who have registered to receive such service, on the 21st day of August, 2020.

*/s/ Stephen T. Loden*
Stephen T. Loden