UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | | |
|---|---|---|
| IN RE: | § | |
| | § | |
| CEC ENTERTAINMENT, INC. et al | § | Case No. 20-33163 |
| | § | (Chapter 11) |
| | § | Jointly Administered |
| | § | |
| Debtors | § | |

### OBJECTION OF HOVDE FAMILY INVESTMENTS, LLC'S TO DEBTORS' MOTION FOR AUTHORITY TO EXTEND TIME TO ASSUME OR REJECT UNEXPIRED LEASES OF NONRESIDENTIAL REAL PROPERTY
**[RELATES TO DKT. #1192]**

TO THE HONORABLE MARVIN ISGUR, UNITED STATES BANKRUPTCY JUDGE:

COMES NOW, Hovde Family Investments, LLC ("HFI" or the "Landlord"), and files this Objection to Debtors' Motion for Authority to Extend Time to Assume or Reject Unexpired Leases of Nonresidential Real Property (the "Objection"), and would show the Court, as follows:

### I. FACTUAL AND PROCEDURAL BACKGROUND

1. On or about May 26, 2017, Debtor CEC Entertainment, Inc. executed a Lease Agreement for the Chuck E. Cheese location identified as Store No. 343, located at 10007 N. Nevada Street, Spokane, Washington (the "Lease"). On or about October 8, 2019, Debtor CEC Entertainment, Inc. executed a First Amendment to Lease Agreement that extended the primary term of the Lease through May 31, 2030.

2. On or about December 26, 2019, the Lease was assigned to HFI, as part of an overall purchase and sale between the original landlord, and HFI.

3. On June 25, 2020 (the "Petition Date"), Debtor CEC Entertainment, Inc. and 16 affiliate Debtors filed for relief under Chapter 11 of the Bankruptcy Code. On August 3, 2020, the Debtors filed a Motion to Abate Rent, seeking to abate post-petition rent obligations in

connection with the Lease for an indefinite period of time, as a result of local government related shut down orders. The Motion to Abate Rent is currently pending.

4.     On October 22, 2020, Debtors filed their Motion for Authority to Extend Time to Assume or Reject Unexpired Leases of Nonresidential Real Property (the "Motion"), seeking to extend the deadline within which Debtors must assume or reject unexpired leases from October 22, 2020, to January 20, 2021.

## II. OBJECTION TO MOTION TO EXTEND

**A. Delay in Assuming or Rejecting Unexpired Leases Will Cause Financial Hardship to Landlord.**

5.     The Debtors lease retail space from Landlord in Spokane, Washington under the terms of the above-described unexpired lease of non-residential real property, as such term is defined within Section 365(d)(3) of the Bankruptcy Code. Government shut down orders in Washington State have limited (but not wholly abolished) dine-in food services, and have placed restrictions on indoor entertainment services. Although the Debtors have continued to hold on to the Leased premises since the Petition Date, Debtors have made no lease payments of any kind to Landlord for approximately four months. As of November 1, 2020, Debtors will owe to Landlord $45,200 in unpaid, post-petition rent.

6.     While ongoing rent payments from the Debtors have ceased, Landlords have continued to have to pay mortgage, taxes, maintenance, and management obligations and fees. Landlord has had to come out of pocket each month without the benefit of receiving any contribution from the Debtors, despite the fact the Debtors continue to utilize the premises and generate income for its operations. Additionally, Landlord has carried the load in ensuring the premises is properly maintained, with respect to both the exterior (lawn growth, weeds, and litter) and utility upkeep (pipes and sprinkler protection as we enter the winter months). To date,

Landlord has expended approximately $30,000 since the Petition Date to keep up with the ongoing costs and expenses associated with the leased premises. The Landlord having to keep going out of pocket for an additional three months to preserve and protect this valuable retail space asset would be cause an undue (and inequitable) hardship to the Landlord, who has already been asked to go without rent for a considerable amount of time.

**B. Debtors' Have Not Established Cause to Extend the Deadline to Assume or Reject the Unexpired Leases**

7. Debtors filed the above-styled Chapter 11 bankruptcy proceeding on June 25, 2020. Pursuant to section 365(d)(4) of the Bankruptcy Code, all nonresidential real property under which Debtors are lessees, including but not limited to the Lease with Landlord, shall be deemed rejected and such leasehold property must be immediately surrendered to the lessors if the Debtors do not assume or reject the leases by the earlier of – (i) the date that is 120 days after the date of the order for relief; or (ii) the date of the entry of an order confirming a plan. In the current Chapter 11 proceeding, the deadline for Debtors to assume or reject the Lease was October 22, 2020.

8. It is well established that the primary purpose of Section 365(d)(4) is "to protect lessors . . . from delay and uncertainty by forcing a trustee or a debtor in possession to decide quickly whether to assume unexpired leases." *Matter of American Healthcare Management, Inc.*, 900 F.2d 827, 830 (5th Cir. 1990) (quoting *Sea Harvest Corp. v. Riviera Land Co.*, 868 F.2d 1077, 1079 (9th Cir. 1989)(emphasis added). This policy was formed with the intent to protect retail owners from delay and uncertainty. *Sea Harvest Corp.*, 868 F.2d at 1079 (citing *In re Moreggia & Sons, Inc.*, 852 F.2d 1179, 1185 (9th Cir. 1988)). Legislative commentary has noted the potential harm to landlords when a debtor lessee leaves a retail space wholly or partially

vacant for months while holding on to valuable leases without fully operating their business, or making a commitment to assume the lease obligations. 1984 U.S. Code Cong. & Ad. News 576, 598.

9. Although Debtors provide in their Motion that they have been in the process of negotiating "certain terms of the remaining leases with the Landlords," and are using that basis to seek additional time to make a decision whether to assume or reject, Debtors have done very little with respect to this particular Lease: no post-petition negotiations with Landlord or its counsel are in process, and the Debtors appear to be satisfied with not paying any rent post-petition while they stand on a Motion to Abate Rent that has been pending since August 2020. It is clear that the Debtors only intention with respect to the Lease is to hold out from paying rent, as long as possible, much to the detriment of Landlord. Extending the time for the Debtors to decide whether to assume or reject does nothing to move the ball with respect to the Lease, except delay the inevitable decision, and harm Landlord in the interim.

10. A court may extend the period to assume or reject for 90 days on the motion of the debtor or lessor upon a showing of "cause." 11 U.S.C. § 365(d)(4)(B)(i). Courts have analyzed whether "cause" exists to extend the deadline to assume or reject unexpired leases by employing a factor test that includes the following factors:

- Whether the lease is the debtor's primary asset;
- Whether the debtor has had sufficient time to intelligently appraise its financial situation and the potential value of its assets in terms of formulation of a plan of reorganization;
- Whether the lessor continues to receive rent for the use of the property;

- Whether the debtor's continued occupation could damage the lessor beyond the compensation available under the Bankruptcy Code;

- Whether the case is exceptionally complex and involves a large number of leases;

- Whether the debtor has failed or is unable to formulate a plan when it has had sufficient time to do so; and

- Any other factors bearing on whether the debtor has had a reasonable amount of time in which to decide whether to assume or reject the lease.

*In re Panaco, Inc.*, 2002 WL 31990368, at *5 (Bankr. S.D. Tex. 2002).

11. With respect to the first factor, the Lease is not the Debtors' primary asset and only serves as a minuscule fraction of Debtors' total leasehold assets, and is not vital to the Debtors continuing their nationwide business operations.

12. With respect to the second factor, the decision on whether to assume or reject the Lease is relatively straightforward and will not have a substantial impact on Debtors' operations as a whole. Debtors have already had sufficient time to determine whether to reject approximately 74 other unexpired leases and/or executory contracts. The performance and returns related to the Debtors' operations on the leased premises and in Washington State, generally, have been clear for several months, and there is no need for Debtors or Debtors' counsel to further familiarize themselves with the particulars of the Lease or the performance of this singular Chuck E. Cheese location that is the subject of the Lease.

13. With respect to the third factor, Debtors are now four months behind on rent payments to the Landlord. There is no genuine dispute that the rental payments are due and owing.

14. With respect to the fourth factor, Landlord is in a vulnerable position in which the Landlord is hemorrhaging money every month due to Debtors' failure to promptly assume or reject the Lease. As previously discussed, Landlord has had to spend approximately $30,000 since the Petition Date to keep up with the ongoing mortgage, maintenance, and management expenses associated with the leased premises. Landlord has been precluded from marketing and/or redeveloping the leased premises to be suitable for a more financially viable tenant pool. Landlord cannot move forward with possible re-leasing or re-purposing the premises until such time as the Debtors assume or reject the Lease. Any further delay in Debtors' decision to assume or reject the Lease could cause financial insolvency of the Landlord, or foreclosure of the leased premises if Landlord is not able to collect rent, either from the Debtors or from another tenant.

15. With respect to the remaining factors, although the overall Chapter 11 case may involve numerous leases, creditors, and leased premises, Debtors and Landlord have a unique history with respect to the operation of Debtors' location in Spokane, and Landlord has made it clear since July 2020 that it will allow for rescission of the Lease, without consequence. The Washington State shut down orders have been in place for several months, and continue to be in place, with no timetable when they would be lifted. Debtors have now had ample time to decide whether it is economically viable to continue operations at the leased premises, and the decision on whether to assume or reject the Lease should be simple and straightforward.

WHEREFORE, PREMISES CONSIDERED, Hovde Family Investments, LLC prays that upon consideration hereof, that the relief sought by Debtors be denied and that Hovde Family Investments, LLC be granted all relief at law and in equity to which it may show itself justly entitled.

Dated: November 3, 2020

Hoffman & Saweris, P.C.

By: */s/ Matthew Hoffman*
Matthew Hoffman
State Bar Number: 09779500
S.D. Bar Number: 3454
Alan Brian Saweris
State Bar Number: 24075022
S.D. Bar Number: 1850547
Riviana Building
2777 Allen Parkway, Suite 1000
Houston, Texas 77019
713.654.9990 *Telephone*
713.654.0038 *Facsimile*
ATTORNEYS FOR
HOVDE FAMILY INVESTMENTS, LLC

## CERTIFICATE OF SERVICE

I hereby certify that on this 3rd day of November 2020 I sent a true and correct copy of the above and foregoing pleading to the parties registered to receive electronic notice by ECF.

*/s/ Matthew Hoffman*
Matthew Hoffman