IN THE UNITED STATES BANKRUPTCY COURT

FOR THE SOUTHERN DISTRICT OF TEXAS

HOUSTON DIVISION

| | | |
|---|---|---|
| IN RE: | § | CASE NO. 20-33163-11 |
| | § | JOINTLY ADMINISTERED |
| CEC ENTERTAINMENT, INC., | § | HOUSTON, TEXAS |
| ET AL, | § | TUESDAY, |
| | § | DECEMBER 15, 2020 |
| DEBTORS. | § | 11:14 A.M. TO 12:21 P.M. |

CONFIRMATION HEARING (VIA ZOOM)

BEFORE THE HONORABLE MARVIN ISGUR
UNITED STATES BANKRUPTCY JUDGE

APPEARANCES:                          SEE NEXT PAGE

COURTROOM DEPUTY/ERO:                 RECORDED VIA COURTSPEAK
                                      NO LOG NOTES
                                      POOR AUDIO QUALITY

TRANSCRIPTION SERVICE BY:

JUDICIAL TRANSCRIBERS OF TEXAS, LLC
935 ELDRIDGE ROAD, #144
SUGAR LAND, TEXAS 77478
(281) 277-5325 (office)
www.judicialtranscribers.com

Proceedings recorded by electronic sound recording,
transcript produced by transcription service.

APPEARANCES (VIA ZOOM):


FOR THE DEBTOR, CEC                WEIL GOTSHAL & MANGES, LLP
ENTERTAINMENT, INC.:              Alfredo Perez, Esq.
                                 700 Louisiana Street
                                 Suite 1700
                                 Houston, TX 77002
                                 713-546-5040

                                 WEIL GOTSHAL & MANGES, LLP
                                 Scott Bowling, Esq.
                                 767 Fifth Avenue
                                 New York, NY 10153
                                 212-310-8000


FOR CENTERPOINT OWNER, LLC:       BALLARD SPAHR, LLC
                                 Laurel Roglen, Esq.
                                 919 N. Market Street
                                 11th Floor
                                 Wilmington, DE 19801
                                 302-252-4462


FOR GRANADA HILLS PARTNERS,        GOODKIN LAW GROUP, APC
LLC:                             Michael Shakouri, Esq.
                                 1800 Century Park East
                                 10th Floor
                                 Los Angeles, CA 90067
                                 310-552-3322


FOR LAKEWOOD ASSOCIATES, LLC:      FRIEDMAN LAW GROUP, PC
                                 J. Bennett Friedman, Esq.
                                 1901 Avenue of the Stars
                                 Suite 1000
                                 Los Angeles, CA 90067
                                 310-552-8210


FOR 5415-5503 WEST SAGINAW         FROST BROWN TODD, LLC
HIGHWAY HOLDINGS, LLC,           Ronald Gold, Esq.
ET AL.:                          3300 Great American Tower
                                 301 East Fourth Street
                                 Cincinnati, OH 45202
                                 513-651-6156


FOR THE AD HOC GROUP OF            AKIN GUMP STRAUSS HAUER & FELD
FIRST LIEN LENDERS:              Jason Rubin, Esq.
                                 One Bryant Park
                                 Bank of America Tower
                                 New York, NY 10036
                                 212-872-7489

<u>APPEARANCES (CONT'D) (VIA ZOOM)</u>:


FOR THE OFFICIAL COMMITTEE          KELLEY DRYE & WARREN, LLP
OF UNSECURED CREDITORS:             Jason Adams, Esq.
                                    101 Park Avenue
                                    New York, NY 10178
                                    212-808-5056


(Please also see Electronic Appearances.)

1       HOUSTON, TEXAS; TUESDAY, DECEMBER 15, 2020; 11:14 A.M.

2              THE COURT:  All right.  Good morning.  We're here on

3       the CEC Entertainment case, it is 20-33163.  We have

4       electronic appearances that are already on the Record.  I'm

5       going to let Mr. Perez tell us how he wants to start, and then

6       if anybody wants to object to that or make their own opening

7       statement, that'd be fine.

8              Mr. Perez?

9              MR. PEREZ:  Yes, Your Honor.  Let me turn my camera

10      on.  Good morning, Your Honor.  Alfredo Perez here on behalf

11      of the Debtors.

12             Your Honor, we have a very short presentation and

13      then we're prepared to go forward.  Your Honor, while there

14      were many objections filed, most of them relate to cure

15      amounts.  I think -- and we've been talking extensively with

16      the various parties about the confirmation, the form of the

17      confirmation order, we're about to file an amended form with

18      the tweaks from this morning.  We filed one -- this will be

19      the third one that we filed.

20             I think we are -- I'm hoping that this is one that's

21      consensual and should only last, you know, 20 or 30 minutes,

22      and I do have a presentation that Mr. Carlson, if he's up to

23      it, will show on the screen at the appropriate time to begin

24      our presentation.

25             THE COURT:  All right.  Is there anyone that objects

1    to proceeding that way, or does anyone wish to make any

2    objection at this point to proceeding in that manner?

3         (No audible response.)

4              THE COURT:  All right.  I'm seeing no objections.

5    Mr. Carlson, I have passed the presenter role to you.  Why

6    don't you go ahead?

7         (Pause in the proceedings.)

8              MR. PEREZ:  Your Honor, may I begin?

9              THE COURT:  Sure.  Please do.

10             MR. PEREZ:  So, Your Honor, first of all I wanted to

11   thank the Court, you know, for seeing us here.  We're pleased

12   to be here to attempt to confirm the Debtor's Chapter 11 plan.

13   And I do think that this plan which has been -- has taken

14   tremendous effort will save the company and all of the jobs at

15   approximately 500 locations that will remain part of this

16   going forward footprint.

17             But really before I get started I really want to

18   thank management.  I mean, we've had a management team, and

19   you've only met Mr. Howell, but there are many other people

20   behind Mr. Howell who have been working, they've been

21   committed, they have been working tirelessly, they have been

22   totally invested in getting to where we are today and making

23   this a success, literally changing their strategy on an hourly

24   basis depending on, you know, the situation at hand.

25             So I really think that, you know, in large part

1    we're here today because management has really done an

2    incredible job of making the best of what is clearly a

3    horrible situation.  So I didn't want to, you know, continue

4    without really calling them out because they've done a

5    tremendous job.

6           THE COURT:  Thank you, Mr. Perez.  I certainly have

7    only met Mr. Howell, but he's been a completely forthright and

8    credible person in front of me, and I understand why you would

9    say such nice things about management.

10          MR. PEREZ:  Thank you, Your Honor.

11          I also wanted to thank the other professionals who

12   have been helping us, you know, counsel for the Ad Hoc Group,

13   Akin Gump and Houlihan Lokey; the unsecured noteholders, King

14   and Spaulding and Lucera (phonetic); as well as the UCC,

15   Kelley Drye and Alix; as well as the other professionals that

16   we've worked with on behalf of the Debtors, FTI, PJT, and

17   Hilco, who's been our real estate consultant.  It wouldn't

18   have been -- we wouldn't have been able to be where we are

19   without all of their cooperation and help, and really be here

20   in what is largely a consensual Chapter 11 plan confirmation.

21          So just to kind of move quickly through the slides,

22   Your Honor, we're doing a significant balance sheet

23   restructuring with a capital infusion, we're eliminating

24   approximately $489 million of funded debt and we're getting a

25   new term loan facility that is the $200 million to provide

1     liquidity for the company on a go-forward basis.

2          Additionally, Your Honor, as the Court is aware, we

3     set -- built with the Creditors Committee and the Ad Hoc Group

4     of Bondholders and everyone supported it.

5          Turning to the next page.

6          Your Honor, the plan has been, you know,

7     overwhelmingly approved by the various classes.  The first

8     lienholders are 100 percent, the senior unsecured notes

9     99 percent in amount, and almost all the members voted in

10    favor.  And the unsecured, the general unsecureds we had, you

11    know, approximately 75 percent voting in favor of that amount.

12         The next page.

13         Your Honor, this provides a timeline.  You know, we

14    filed at the end of June, we entered into the PSA in

15    September, if we -- and during that month -- during the

16    time -- during September we continued to work on the PSA.  We

17    had the DIP approved in October and then on November 4 we had

18    the solicitation period.  In October, late October we reached

19    agreement with all of the rest of the constituency, and

20    we've -- we're here today after soliciting from -- since

21    November.

22         And, Your Honor, the goal of the company is to

23    emerge from bankruptcy by the end of the year.  We've

24    tentatively -- if the Court is -- agrees to confirm the plan,

25    we've tentatively set a confirmation hearing for -- I'm sorry,

1    an anticipated plan effective date of December 28.  That's

2    driven by corporate and tax factors that both make it more

3    efficient.

4            Your Honor, when we go to the Chapter 11 cases, what

5    have we accomplished?  We obviously negotiated a plan that has

6    support of the various constituencies, we've got a -- the $200

7    million DIP facility that will convert into an exit facility

8    and a committee exit facility take out.

9            And then let me pause here because we had in excess

10   of 500 venues coming into the bankruptcy.  We've negotiated

11   consensual lease amendments with approximately 330 of them,

12   and we've -- we are -- we've only rejected about 60 leases so

13   far and which leaves us with a footprint of just under 500

14   venues going forward.

15           I did -- we did tell Mr. Penn, John Penn, that I

16   wanted to put on the Record that we had filed a cure schedule,

17   Your Honor, and that was filed about -- we've filed an initial

18   cure schedule, then we filed an amended cure schedule but to

19   the extent that there has been any resolutions made since that

20   time, Your Honor, where we've had consensual cure amounts,

21   that those would govern instead of the ones that were in the

22   cure schedules.  So to the extent that we had -- that we have

23   any resolutions since the last cure schedule, the cure amounts

24   in those resolutions (indiscernible).

25           So, Your Honor, turning to the objections.

1          THE COURT:  Mr. Perez --

2          MR. PEREZ:  Yes.

3          THE COURT:   -- in that regard is there anything

4     about confirmation that will preclude you from appealing the

5     order that we issued yesterday so that the cure amounts will

6     need to stay open until you complete that appeal?  I think you

7     can -- I hope you could read in the order that I didn't issue

8     that because I wanted to, I issued that because that's what I

9     thought the law required me to issue.

10          And certainly if I am wrong about that, I would

11    anticipate you exercising all of your appellate rights to get

12    me reversed.  I don't think you can, I mean I think I ruled

13    the right way, but I don't want to stand in the way of that by

14    anything I might do today.  And I just want to be clear about

15    that.  I know that it was an adverse ruling to your client.

16          MR. PEREZ:  Your Honor, we certainly understand, you

17    know, the Court's ruling, and I'll address it a little bit.

18    Your Honor, there is one, just one kind of a footnote, Your

19    Honor, and that is that we had actually settled with CBL and

20    that had been docketed in -- on December 7.

21          THE COURT:  Okay.

22          MR. PEREZ:  We had a consensual lease amendment so

23    perhaps it wasn't right to rule on their -- on their motion,

24    but with respect to the other five, those were still live

25    controversies.  So I appreciate the Court's comment, and I'll

1     address what we're planning on doing and just going forward.

2             THE COURT:  I'm mainly asking that -- do you think

3     there's anything that we're doing today that would stand in

4     the way of your ability to appeal it if you want to, their

5     ability to defend and appeal?  I think it was a difficult

6     decision and I don't want to do something that stands in the

7     way of that, nor do I want to have extra appeals filed that

8     don't need to be filed.  I just want this to be neutral to

9     that question.

10            MR. PEREZ:  Yes, Your Honor.  We don't believe that

11    there's anything -- we don't believe there's anything that

12    would prevent us from appealing if we felt likely to do so --

13            THE COURT:  Okay.

14            MR. PEREZ:   -- Your Honor.

15            All right.  So, Your Honor, just with respect to --

16    we received about 140 plan objections, about 110 of those

17    objections really address the cure amounts.

18            THE COURT:  Right.

19            MR. PEREZ:  And they assert approximately 10 million

20    more in cure amounts than the company had proposed.  And, Your

21    Honor, what we are going to suggest is that we set a status

22    conference, you know, in January, we're suggesting perhaps the

23    week of January 18, to start resolving the cure disputes.  We

24    will engage with the various landlord counsel to see if we can

25    come up with some streamlined procedures in order to fulfill

1    the resolution of those as quickly as possible.  And we -- and

2    haven't had those discussions yet, but I think coming out of

3    today one of our main objectives is to see how quickly we can

4    streamline it.

5          And obviously there will be disputes that the Court

6    will have to determine, but I suspect that a large number of

7    these can be resolved, you know, with some work on the part of

8    the parties and maybe even with some outside help.  But we're

9    not -- we're going to talk to counsel for the various

10   landlords to see if we can come up with some procedures to

11   expedite the treatment of the -- the resolution of the cure

12   amounts.

13         THE COURT:  So if -- assuming that we need to do

14   that, I could do this at January 20 at 1:30.

15         MR. PEREZ:  Thank you, Your Honor.

16         THE COURT:  People will need to check their

17   calendars and make sure that works for them, but I'm

18   available.

19         MR. PEREZ:  Thank you.  And so, Your Honor, putting

20   aside the strictly mature objections, there are -- there were

21   approximately 19 other objections remaining, and for the most

22   part they go to the financial wherewithal of the company to be

23   able to pay the cure amounts and to be able to provide

24   adequate assurance, and we'll address those when I get to the

25   evidentiary portion, Your Honor, but I believe that we have

1     satisfied that requirement.

2          So, Your Honor, so turning to the next page, so in

3     connection with the Court's abatement ruling yesterday, there

4     are 39 leases that are still unresolved.  With respect to the

5     six weeks that was the subject of the decision obviously we

6     will treat them as if, you know, the Court hadn't ruled, and

7     we will address those.  And, in fact, there's really only five

8     because we have already settled with CBL so there's really

9     only five.  So we will treat them as if there was undisputed

10    amounts pursuant to the Court's ruling.

11         With respect to the 39 remaining leases, Your Honor,

12    we will review the provisions, and to the extent that there

13    are provisions that are similar to the provisions in what the

14    Court has ruled, we will treat them as if the Court had ruled

15    at least for purposes of making the payment and then on the

16    leases that we believe are -- have distinguishable

17    (indiscernible) provisions, we will reach out to the party and

18    talk about what the next steps are.

19         But to the extent that the -- of the 39 remaining

20    leases, they have similar provisions to the five leases that

21    the Court has ruled on, for purposes of making the payments we

22    will treat -- we will pay -- we will assume that they are

23    undisputed cure amounts and we will pay accordingly.  I think

24    that's possible.  You know, this is (indiscernible) deal

25    without prejudice to whatever rights we may have, but that's

1    the way we intend to do it, Your Honor.

2              THE COURT:  All right.

3              MR. PEREZ:  So as it relates to the witnesses, Your

4    Honor, you know, we believe that we established the 1129

5    factors, that the plan is feasible, that we have the ability

6    to pay the cure amounts.  And, Your Honor, we have four

7    witnesses, Mr. Howell, who is the Debtor's Chief Financial

8    Officer, who will testify about many of the 1129 factors.

9    And, Your Honor, we did file a supplemental declaration for

10   Mr. Howell at Docket Number 1490, which is not on the witness

11   and exhibit list.

12             THE COURT:  On the retiree benefit issue?

13             MR. PEREZ:  On the retiree -- it just kind of popped

14   out while we were getting ready for this, so I apologize.

15   It's our mistake for not tracking that down beforehand, but we

16   found that there are these two individuals that we continue to

17   pay medical benefits for.  So --

18             THE COURT:  I saw that.

19             MR. PEREZ:   -- we believe we need that provision.

20             THE COURT:  I saw that, and I don't think that's an

21   issue.

22             MR. PEREZ:  All right.  And then, Your Honor, this

23   will be -- we also have the declaration from Mr. Chad Covin

24   (phonetic), who also had testified in this case with respect

25   to the liquidation analysis and feasibility; Mr. Jon Walters

1    from PJT, who is the -- who had done the valuation of the

2    Debtor's; and then the (indiscernible) the declaration from

3    Mr. James Daloia from Prime Clerk.

4            So with that, Your Honor, that is our opening

5    statement.  Next we would turn to the evidence.  I don't know

6    if the Court wants to pause at this time to listen to other

7    people.  But we would turn to the evidentiary portion of the

8    hearing at this point.

9            THE COURT:  So what I'm going to ask is whether

10   anyone else wishes to make an opening statement.  If so,

11   please press five star on your phone.  And second, I want to

12   ask if there's anyone here with an objection that intends to

13   introduce any evidence in support of their objection and ask

14   you to press five star on your phone so that we can get the

15   hearing properly organized.

16           (Pause in the proceedings.)

17           THE COURT:  No one has asked to speak, Mr. Perez, so

18   I'm going to assume that if there are outstanding objections,

19   that they don't intend to introduce evidence in support of

20   them, and then no one gets to make a statement against you.

21           If there's anybody in the video that thinks they

22   pressed five star, wave at me and I'll try and get you, but I

23   don't see anyone.

24           All right.  Who's going to be your first witness,

25   Mr. Perez?

1        MR. PEREZ:  So, Your Honor, first we would have --

2   we would like to move for admission of our exhibits, and the

3   exhibits would be 1481-1, -2, -3, -4, -5, -6, -7, -8, -9, -10,

4   -11, -12, -13, -14, -15, -17, so we skipped 16, -18, -19.  We

5   would move for admission of those exhibits as well as the

6   declaration from Mr. Howell that was filed at 1490.

7        THE COURT:  All right.

8        MR. PEREZ:  And, Your Honor --

9        THE COURT:  I'm sorry, go ahead.

10       MR. PEREZ:  -- one more, Your Honor, the -- our

11  supplemental -- the second supplemental plan supplement which

12  was filed at 1486.

13       THE COURT:  All right.  Let me hear objections to

14  the admission of 1481-1 through -15, 1481-17 through -19, 1490

15  or 1486.  Is there are any objections, please press five star

16  on your phone.

17       (No audible response.)

18       THE COURT:  There are no objections, all of those

19  offers are admitted.

20       (Debtor's Exhibit Nos. 1481-1 through -15, -17 through -

21  19, 1486 and 1490 identified and received into evidence.)

22       MR. PEREZ:  So, Your Honor, our first witness is

23  Mr. Howell.  We've introduced his declaration and we would

24  request that that be his direct testimony for purposes of this

25  hearing.

1          THE COURT:  All right.  Does any party wish to

2    cross-examine Mr. Howell in any manner?

3          (No audible response.)

4          THE COURT:  All right.  There is no cross-

5    examination of Mr. Howell.  I'm not going to swear him in,

6    he's already made his statement, his declaration, which is

7    admitted.

8          MR. PEREZ:  Thank you, Your Honor.  Our next witness

9    would be Mr. Covin.  Again, his declaration has been admitted

10   and that would be his direct testimony.

11         THE COURT:  Mr. Covin is online.  Does anyone have

12   any questions for Mr. Covin?

13         (No audible response.)

14         THE COURT:  There are no questions for Mr. Covin.  I

15   see no reason to swear him in, his declaration had been

16   admitted.

17         MR. PEREZ:  Your Honor, our third witness would be

18   Jon Walters from PJT.  Again, his declaration has been

19   admitted and we would move that as his direct testimony.

20         THE COURT:  I don't see Mr. Walters on the camera.

21   Let's see if we have anyone that wants to ask him any

22   questions.

23         If anyone wishes to ask any questions of

24   Mr. Walters, please press five star.

25         (No audible response.)

1          THE COURT:  There are no questions and his

2     declaration has already been admitted.

3          There's Mr. Walters.  I see you now.  Good morning.

4          MR. PEREZ:  He has (indiscernible) that he doesn't

5     know -- or shift, that he doesn't know what it is behind him.

6          (Laughter.)

7          MR. PEREZ:  And he still doesn't know, Your Honor.

8     You would think he would have found out by the last time he

9     testified.

10          THE COURT:  You know, it's an important question and

11     he should know the answer, he's going to be here as an expert,

12     but that's okay.

13          MR. PEREZ:  So, Your Honor, finally we have the

14     (indiscernible) declaration from Mr. Daloia.  I think that's

15     already been admitted into evidence, and I'm not sure that we

16     actually need to have him, there is no challenge to the

17     (indiscernible) that was filed, you know, earlier, just --

18          THE COURT:  I do have one --

19          MR. PEREZ:  -- (indiscernible) vote.

20          THE COURT:  -- I do have one person that does have

21     some questions for someone.  Let me see who I've got.

22          From the 475 area code, let me see who we have on

23     the phone.  Go ahead, 475-558-9085.

24          MR. WALTERS:  Your Honor, this is Jon Walters

25     speaking to you, and I apologize for the wait time, but I just

1    had to respond to Mr. (indiscernible).  And, Your Honor, it

2    may be 30 seconds.

3           THE COURT:  Go ahead, Mr. Walters.

4           MR. WALTERS:  The ship is the HMY Britannia and it's

5    won a number of races and fairly (indiscernible), you know,

6    (indiscernible) through the 20-year history.  But I apologize

7    for interrupting the case for that.

8           THE COURT:  So have you been on a replica of the

9    Britannia?

10          MR. WALTERS:  I have not.  (Indiscernible) when he

11    passed away put forward (indiscernible) because it was a

12    different ship and it's not the -- I've not seen a replica.

13          THE COURT:  All right, Mr. Walters.  Perhaps all the

14    money you're going to earn in this case you should find one,

15    take a trip.

16        (Laughter.)

17          THE COURT:  Does anyone have any questions for

18    Mr. Daloia?

19        (No audible response.)

20          THE COURT:  All right.  Okay.  Where do you want to

21    go next, Mr. Perez?

22          MR. PEREZ:  Your Honor, again, at this point we

23    would rest.  Mr. Bowling is going to -- obviously at the

24    appropriate time Mr. Bowling will go through the final changes

25    to the confirmation order and obviously to the extent anyone

1      has any questions or comfort comments, I'm prepared to

2      respond, Your Honor.  We were going to file a revised order.

3      I'm not quite -- I'm not sure that has been filed yet, but

4      Mr. Bowling would know.

5              THE COURT:  All right.  Let me see if there other

6      party that has any evidence they wish to introduce with

7      respect to confirmation, if anyone else has any evidence at

8      all.

9          (No audible response.)

10             THE COURT:  All right.  The outstanding objections

11     that have been filed are all factually based.  They are not

12     law-based objections in the sense of no one disputes that the

13     Debtor has the burdens that are asserted in the objections,

14     rather people object as to whether the Debtor can prove that

15     burden.  I find the Debtor has proved its burden on a *prima*

16     *facie* basis and there is no evidence to contradict that

17     burden.

18             I am therefore overruling all of the outstanding

19     objections for lack of evidence in support of them/lack of

20     evidence to contradict the evidence already introduced into

21     the Record, and I'm going to confirm the plan.

22             Mr. Bowling, where did you want to go?

23         (No audible response.)

24             THE COURT:  Your line is unmuted, Mr. Bowling, and

25     you have the presenter role at this point.

1          MR. BOWLING:  Thank you, Your Honor.  Can you hear
2     me?

3          THE COURT:  I can.  Thank you.

4          MR. BOWLING:  Okay.  So the revised -- the latest
5     revised form of the confirmation order is on file at Docket
6     Number 1492.

7          THE COURT:  That's the one that had mainly the state
8     agencies where you'd made exceptions for them.  Is that
9     correct?

10         MR. BOWLING:  That was the -- that's the previous
11    version.  We just filed it a few moments ago.

12         THE COURT:  Oh.  Okay.  So I haven't seen that then.
13    I'm glad I asked.  I'll put it up on my screen if you want.

14         MR. BOWLING:  Sure thing, Your Honor.

15         MR. PEREZ:  And there is a redline, Your Honor.

16         THE COURT:  All right.

17         MR. PEREZ:  Exhibit 2, 1492-2.

18         THE COURT:  That's what I have open here.

19         MR. BOWLING:  Okay.  And the redline begins at -- in
20    the PDF file I believe it's Page 128.

21         THE COURT:  Hold on, I've got a little problem
22    seeing it.  Let me just start over on that.

23       (Pause in the proceedings.)

24         THE COURT:  All right.  You want me to go to Page 8.
25    Is that right?

1          MR. BOWLING:  I'm sorry, it's Page 128 of the

2     document.  That's actually a good place to start with it.  So

3     I'm happy to just walk through the handful of pages on the

4     form of the order.

5          THE COURT:  Okay.

6          MR. BOWLING:  So the -- that change, Judge, as you

7     see at Mr. Howell's supplemental declaration to the Record --

8          THE COURT:  Let me interrupt you for a minute,

9     Mr. Bowling.  I do have Ms. Roglen, who wants to make a

10    statement.  Let me see what's going on there.

11         Ms. Roglen, good morning.

12         MS. ROGLEN:  Good morning, Your Honor.  Laurel

13    Roglen of Ballard Spahr on behalf of certain of the Debtor's

14    landlords.  I raised my hand because I would like to raise an

15    objection in connection with confirmation of the plan, an

16    issue that has not yet been addressed.  But I'm happy to wait

17    until after Mr. Bowling goes through the revised order.

18         THE COURT:  No, because I don't want to see the

19    order if we're not going to confirm the plan.  So what's the

20    objection?

21         MS. ROGLEN:  Thank you, Your Honor.  My clients are

22    supportive of the reorganization of the Debtor's business

23    (indiscernible) the plan and the revised confirmation order,

24    including the additional revisions which Mr. Bowling will read

25    through in a moment.  However, the Debtor's recent reply in

1   support of confirmation, as well as the statements this

2   morning seems to reflect a troubling change in the Debtor's

3   (indiscernible) on the interplay of the abatement motion and

4   the plan from that which they previously presented to the

5   Court.

6           In the (indiscernible) attached to the Debtor's

7   reply found at Docket Number 1476, the Debtor's response to

8   our client's objections are at Item Number 21 in the chart.

9   I'm not sure if the Debtor -- or the Court can turn to that

10  now.

11          THE COURT:  I'm going to wait --

12          MS. ROGLEN:  But I'll be reading the relevant

13  portion.

14          THE COURT:  Yeah, what's the -- tell me -- why don't

15  you just skip ahead for a minute and give me the bottom line

16  of what you think they're doing.

17          MS. ROGLEN:  The bottom line is at the Disclosure

18  Statement hearing on November 4 the Court had a colloquy with

19  the Debtors on precisely the point of what the affect of the

20  abatement motion is going to be on (indiscernible) the plan.

21  The Court was seeking clarification for the benefit of

22  landlords at that time who were considering whether they could

23  close the time and expense of a (indiscernible) hearing

24  (indiscernible) the abatement motion, and the Court didn't

25  want to put landlords in the position of wasting money moving

1    forward with an evidentiary hearing on the abatement when it

2    could ultimately be unnecessary because the Debtors were

3    assuming their leases (indiscernible) the plan.

4          The Court specifically asked the Debtors when

5    abatement rights would be paid for those leases, and the

6    Debtors responded that half would be paid on assumption.  And

7    this made perfect sense because what we're all referring to as

8    abated rights here is actually the unpaid pre-assumption rent.

9    So that will be paid as part of (indiscernible) here

10   consistent with the requirement of the Bankruptcy Code.

11         But now in the Debtor's -- in the chart in the

12   Debtor's reply are, in fact, saying (indiscernible) statements

13   here today, the Debtors seem to be exactly -- that they're

14   going to continue to (indiscernible) the abatement motion

15   for -- and assume leases beyond confirmation of the plan.

16         And the (indiscernible) provision is that if the

17   Debtors assume the lease, the abatement motion is really moot

18   with respect to that lease.  The Debtor can't assume a lease

19   (indiscernible) continuing to pursue a non-consensual deferral

20   of rent in the Bankruptcy Code.  And I don't even know what

21   further delay of rent payments beyond the function the Debtor

22   would hope to obtain --

23         THE COURT:  Show me the provision --

24         MS. ROGLEN:   -- with such litigation.

25         THE COURT:   -- show the provision in the plan or

1    the confirmation order that is of concern to you that if there

2    is -- I don't believe I said that if there's an outstanding

3    abatement motion, that they had to pay before they got a

4    ruling.  And so want I want to see is something that says on

5    a -- in the plan or in the confirmation order that says on a

6    decided abatement matter that they don't have to cure

7    promptly, because I was not aware of that, and that's an

8    important issue.  Or am I --

9         MS. ROGLEN:  Your Honor, there is -- let me clarify.

10   There's nothing that -- both the plan and the confirmation

11   order are currently silent to the abatement motion, whether

12   for decided -- decided leases or undecided leases.  But

13   previously when (indiscernible) were considering whether to

14   come to the Court to seek a hearing on the motion in order to

15   get clarity to the landlords.  But now we have the treatment

16   of their leases and whether they would need to pursue an

17   evidentiary hearing on that basis.

18        The Debtor said that the abated rent would be paid

19   for a few weeks upon assumption and now they're saying

20   something different.  So we would like clarification on that

21   provision, because we believe it's contrary to what the

22   Debtors have represented to the Court and to counterparties to

23   the leases.  And we're fine with adjourning (indiscernible)

24   for consensual resolution beyond confirmation which is a

25   process that you'd like in almost all bankruptcy cases these

1    days.

2         But that should be a reconciliation process and not

3    an ability for the Debtor to get another post-assumption bite

4    of the apple on the abatement argument to try to challenge the

5    landlord's legal entitlement to amounts that are

6    unquestionably owed and outstanding under the leases.  And

7    that's our concern here.

8         THE COURT:  Well, their argument in the abatement

9    motion, and of course I -- for some perspective there was I

10   believe only six on which I've had to rule in total, and maybe

11   seven.  In one of those I found that, in fact, the lease did

12   allow abatement under a force majeure clause.  And in the

13   other five or six I found that they could not have any rent

14   abatement.

15        But I never intended to say, nor do I think they

16   ever said, that these abatements aren't delays.  The delayed

17   payment they agree they have to make.  They seek abatement in

18   the form of saying they don't have to pay it at all under the

19   applicable law of the state because it is -- it just goes away

20   is their position.  And on ones where I haven't ruled are you

21   telling me that they can't pursue that argument somehow post-

22   confirmation?

23        MS. ROGLEN:  Your Honor, what we're saying is that

24   they had previously told the Court and the counterparties that

25   they would not do that post-confirmation, and that's our

1      concern.

2              THE COURT:  So let me just take this one step at a

3      time.  Show me anything in the plan or the confirmation order

4      that impairs your client's rights, let's start with that and

5      then I'll have them answer your question.

6              MS. ROGLEN:  Your Honor, there is nothing in the

7      plan or confirmation order that impairs our rights.  They are

8      seeking to approve assumption of the leases today and adjourn

9      cure disputes until later, and they're wanting in their

10     abatement motion as part of the adjudication and

11     reconciliation of cure disputes later on.  And that's our

12     concern.  There is nothing --

13             THE COURT:  Yeah.

14             MS. ROGLEN:   -- right now in the plan or

15     confirmation order that impairs our rights (indiscernible).

16             THE COURT:  So let me assume hypothetically --

17             UNIDENTIFIED SPEAKER:  (Indiscernible).

18             THE COURT:  Let me assume hypothetically that one of

19     your client's leases on the applicable --

20             UNIDENTIFIED SPEAKER:  (Indiscernible).

21             THE COURT:   -- state law that they don't owe rent

22     for the month of October, just because there's a force majeure

23     clause, and assume they simply don't owe it because of state

24     law.  Are you telling me that to confirm they need to abandon

25     that position?

1        MS. ROGLEN:  Your Honor, they don't necessarily have

2    to abandon that position in order to confirm a plan, but they

3    represented to counterparties I believe and to the Court that

4    they were going to abandon that position.  And

5    (indiscernible) --

6        THE COURT:  Okay.  So I don't think so.  I think

7    what they said was any rents that they've delayed in paying

8    will be paid on the effective date, not that they were

9    agreeing not to seek a forgiveness of rent.  And maybe I

10   should get clarification from them, and then I'll deal with

11   your objection.

12       But if there is an undisputed amount that is owed --

13   I'm going to ask whoever is going to respond for the Debtor,

14   so let's assume that Ms. Roglen's client is owed $100,000 and

15   it's not disputed that they're owed that, when will that get

16   paid?

17       MR. BOWLING:  Your Honor, it will get paid at the

18   same time that all the other cure amounts will get paid,

19   there's no delay on -- with respect to that.

20       THE COURT:  And let's assume that you dispute

21   whether you have to pay 20,000 of that 80,000, are you going

22   to pay 80 and then the other 20 if, as and when you're ordered

23   to pay it?

24       MR. BOWLING:  Correct, Your Honor.

25       THE COURT:  Ms. Roglen, I'm going to let you finish

1       making your argument because I want you to have a Record, but

2       I don't see a problem with that and I don't feel anything

3       misled me.  And I remember the hearing and we were speaking of

4       delayed and not forgiven rents, so there may have been some

5       ambiguity in that, and I don't want to in any way criticize

6       your client from not making that distinction.

7             But I think that the way that I heard it and the way

8       that I would intend to enforce it is that delayed rentals have

9       to be paid when the lease is assumed, but that forgiven

10      rentals don't have to be paid at all, and if there is a

11      dispute about what is delayed and what is forgiven, we need to

12      rule on that.

13           MS. ROGLEN:  That's a helpful clarification, Your

14      Honor.  And I'm concerned that under 365(b)(4) if the Debtors

15      (indiscernible) today, that needs to be a final decision, and

16      that's not subject to any (indiscernible) if the Debtors

17      change their mind after today if the (indiscernible) have

18      ruled on what (indiscernible) forgiven rents or delayed and

19      what they ultimately have to pay on (indiscernible) --

20           THE COURT:  Let me -- I'm going to --

21           MS. ROGLEN:   -- (indiscernible) --

22           THE COURT:   -- interrupt you just for a minute

23      because we're dropping about every third word of your speech.

24      So let me get you to do something with your phone to where you

25      get that better.

1          MS. ROGLEN:  Is that better, Your Honor?

2          THE COURT:  It is.  Thank you for doing that.

3          MS. ROGLEN:  Of course.  Our concern is that under

4    365(b)(4) we want to ensure that the Debtor is not intending

5    to change their mind based on any determination of the outcome

6    of the abatement motion or the reconciliation between what

7    rents is delayed, what rents may be abated or forgiven through

8    the abatement motion.  We want to ensure that 365(b)(4) is

9    still followed.

10         And we also have concerns (indiscernible)

11   Mr. Perez's clarification on the (indiscernible) cure, it's

12   helpful but there is a prompt cure requirement.  And typically

13   we're fine with cure reconciliation going beyond the

14   confirmation of a plan and the assumption of a lease because

15   it's solely a reconciliation.  But here it seems like it might

16   be something more.  And so we want to ensure that the cures

17   are reconciled promptly.

18         THE COURT:  Thank you.

19         Mr. Perez.

20         MR. PEREZ:  Your Honor, I think we, you know, we

21   said what we intended to do during my presentation with

22   respect to the 39 remaining leases.  Obviously we'll maintain

23   this subject to -- you know, without waiver of our rights and

24   we have a hearing set for January 20 to start the cure

25   process.  So I'm not -- I don't -- I'm not sure if there's

1    anything else for me to say on this issue.

2         THE COURT:  All right.  Mr. Howell, I do want to be

3    sure that in administering this provision -- I don't want you

4    holding up money that you don't dispute.  I don't think that's

5    a good way to approach this.  So if you agree -- let's say

6    they say you owe them 100,000, you agree you owe them 40 and

7    you contest 60, I want you to go ahead and pay them the 40 and

8    then on the 60 we'll make a ruling one way or the other before

9    you have to pay them.  Can you administer it that way and keep

10   track of what you're doing?

11        (No audible response.)

12        THE COURT:  I think you were shaking your head yes,

13   but I think I've got your line active, you ought to be able to

14   talk.

15        (No audible response.)

16        THE COURT:  Maybe I don't.  Let me try again.

17        (Pause in the proceedings.)

18        THE COURT:  Mr. Howell, I do have your line open.

19   Do you want to just check to see if you're muted on your end?

20        (No audible response.)

21        THE COURT:  I can't hear you.  Let me try and redo

22   that.

23        (Pause in the proceedings.)

24        THE COURT:  Mr. Howell, can you try now?

25        MR. HOWELL:  Hello, Your Honor?  Can you hear me?

1          THE COURT:  There we go, Mr. Howell.  I know have

2     Mr.  Howell active.  And then I'm going to come back

3     (indiscernible) if somebody else that wanted to speak as well.

4          Mr. Howell, go ahead.

5          MR. HOWELL:  I was nodding my head yes, I can

6     administer the payments as you described.

7          THE COURT:  Thank you.

8          Ms. Roglen, with that I understand your objection,

9     I'm overruling your objection.

10         And I now have someone else that wanted to speak I

11    think from the 310 area code.  If you will go ahead and tell

12    me who we got.

13         MR. SHAKOURI:  Yes, Your Honor.  Good morning.  This

14    is Michael Shakouri on behalf of Granada Hills Partners, LLC.

15    We're actually one of the leases that you have denied the

16    motion to abate and we thank you for your ruling and it was

17    very extensive and we thank you for the time.  My question is

18    (indiscernible) I would say is if the Debtors will be filing a

19    revised cure amount based on the fact that this post-petition

20    rent is now owed?  Because I know the Court is inclined for

21    the Debtors to pay undisputed amounts, but that may change

22    things related to the motion and the five other leases I would

23    say.

24         THE COURT:  So and I'll get the to clarify that,

25    what I heard them tell me was that they're going to pay you in

1    accordance with my ruling, but if they get me reversed, you're

2    going to have to give that money back.  Do you have any

3    problem with that?

4            MR. SHAKOURI:  Well, I was speaking specifically to

5    the part where the amount stated right now was stated in

6    Docket I believe 1458 is a different amount that was pre-

7    ruling of the motion to abate, if that's going to be revised

8    now --

9            THE COURT:  Yeah, so --

10           MR. SHAKOURI:   -- based on the Debtor's

11   calculation.

12           THE COURT:  Right.  So let's assume it's either

13   revised or I include something in the order that says they're

14   going to pay what I ruled on, either way, do you agree if you

15   get the money and then they get me reversed, that your client

16   has to pay it back?

17           MR. SHAKOURI:  I would agree with that, Your Honor.

18   It is -- yes.

19           THE COURT:  All right.  So you're going to defend me

20   on appeal?

21           MR. SHAKOURI:  We will, Your Honor, yes.  I'm just

22   thinking of the time line, Your Honor, of the rent payment

23   (indiscernible) clarification we get from Mr. Howell of when

24   the undisputed amounts will be paid.  I understand

25   (indiscernible) hearing is for the undisputed amounts, but any

1    time frame will be, you know, for the creditors.

2        THE COURT:  Right.  Let me hear from Mr. Perez

3    whether you're going to file an amended cure or whether we're

4    going to include something in the order that says you're going

5    to pay in accordance with the ruling.

6        MR. PEREZ:  Your Honor, administratively I think

7    we'll go ahead and file the amended cure with respect to the

8    five that the Court has ruled, and then we'll look at the

9    other ones.  I don't know that we're going to be able to do

10   that like with respect to the other 39, but that's going to be

11   the bulk of the work.  But with respect to the five we can

12   easily do that quickly.

13       THE COURT:  All right.  And were there other

14   questions you had about that then?

15       MR. SHAKOURI:  Yes, the time frame, Your Honor,

16   regarding for the five, for the undisputed amounts there's a

17   time frame for payment, unrelated to the January 20 hearing I

18   believe.

19       THE COURT:  Right.  Mr. Perez?

20       MR. PEREZ:  Your Honor, I think that we're going to

21   try to do it as soon as possible, you know, after we go

22   effective, so I mean we're talking hopefully in the next

23   couple or three weeks.

24       THE COURT:  Is it fair to say that if you go

25   effective on December 28, that they'll have their money by

1    January 15?

2              MR. PEREZ:  Absolutely, Your Honor.

3              THE COURT:  Is that a fair time range for you, sir?

4              MR. SHAKOURI:  Well, of course we want it sooner,

5    Your Honor, but we defer to the Court.  I mean if that is the

6    time frame it takes to (indiscernible) undisputed amounts, we

7    defer to the Court's discretion on that.

8              THE COURT:  Yeah, look, they may very well get that

9    sooner, but I would think anything longer than that they're

10   going to have to come in and explain why they delayed longer -

11   - why it took them longer than that to administer it.  They've

12   got an awful lot of leases to do here, and what I don't want

13   to do is to say, Okay, they go effective on the 28th, all the

14   checks have to be cut by the  29th.  I would expect them to

15   promptly in good faith get all those payments out following

16   the 28th.  And if they need longer than the 15th to do that,

17   you know, most people don't like coming to see me on that kind

18   of an issue and Mr. Howell may or may not be in that category,

19   I don't know, but why don't we just treat it that way.  Is

20   that a fair comment?

21             MR. SHAKOURI:  That is a fair comment, Your Honor.

22   And I think -- I rest now and I thank you for taking that up

23   and your opinions yesterday regarding the motions update.

24             THE COURT:  Thank you, sir.

25             All right.  Then I've got another person that has a

1      comment they want to make.  Let me see what I've got.

2      Mr. Friedman.

3                MR. FRIEDMAN:  Good morning, Your Honor.  Jay

4      Friedman.  Was that me you just unmuted?

5                THE COURT:  Yes, it was, Mr. Friedman.  Good

6      afternoon.

7                MR. FRIEDMAN:  Good afternoon to you as well, Your

8      Honor.  Thank you.  Your Honor, I wasn't planning on speaking.

9      I've heard Your Honor's comments, but a couple of matters that

10     have been addressed today have raised some concern and perhaps

11     the Debtor can resolve my concern, which perhaps several other

12     (indiscernible) are thinking about and have not yet voiced.

13               Your Honor started the hearing today with a question

14     as to whether or not anything in the confirmation order would

15     prohibit any of the parties from litigating and defending the

16     appeals, and I heard Mr. Perez indicated that nothing in the

17     confirmation order was going to prevent the Debtor from

18     litigating that appeal.  But I wanted to make sure that

19     there -- the Debtor did not intend that any of the release

20     provisions that are provided for in the plan would then

21     translate to any landlords' property and effectively defending

22     Your Honor's ruling yesterday with respect to the abatement

23     motion.

24               THE COURT:  He better say yes to that, but I'll ask

25     him.

1          Mr. Perez?

2          MR. PEREZ:  Your Honor, actually Mr. Bowling will

3    get to some language where with respect to any cure amount

4    specifically carved out of the releases.  Mr. Gold -- we

5    worked with Mr. Gold this morning to put in language in the

6    confirmation order.  So the answer to your question is, yes,

7    nothing in here will prevent them from defending, and secondly

8    there's language in the order currently as Mr. Bowling will

9    show that addresses this very issue.

10          THE COURT:  Thank you.

11          Mr. Friedman, does that work for you?

12          MR. FRIEDMAN:  It does, Your Honor.  Thank you.  My

13   second question, Your Honor, has to do with something that I

14   have not yet contemplated or discussed with my client, but

15   Your Honor's bringing up this point with respect to that the

16   amounts are -- the undisputed amounts for the six landlords,

17   now the five landlords from what I'm hearing, will be paid,

18   and that if the matter is successfully appealed and you are

19   reversed, Your Honor, that they have to give the money back.

20          And I would go to -- I'm not exactly sure how to

21   present this, but given the fact that there's going to be an

22   ongoing lease arrangement, perhaps a suggestion, and I'm not

23   sure when and how to raise it except for now, that instead of

24   giving the money back that the Debtor instead just be given a

25   credit for that amount for future lease obligations.

1          THE COURT:  Yeah, I'm --

2          MR. FRIEDMAN:   -- rather than (indiscernible).

3          THE COURT:  I wish you had more confidence in

4     defending the appeal.  But having said that, I do think that's

5     a form -- that's --

6          MR. FRIEDMAN:  Your Honor, I --

7          THE COURT:  -- that is a form of giving --

8          MR. FRIEDMAN:  Your Honor --

9          THE COURT:  -- and if it turns out that it gets

10    reversed, I think it's up to me to deal with it.  Giving it

11    back could take place immediately, giving it back could take

12    place over time.  I'm just saying I want to be sure that if

13    there is an appellate reversal I can put people back in the

14    position that they should have been if I hadn't made an error.

15    And I hope that you don't lose too much sleep over defending

16    it, Mr. Friedman.

17         MR. FRIEDMAN:  Your Honor, if there was anything in

18    my comment that led you to be concerned about my utmost belief

19    in the strength and accurateness of Your Honor's order, then I

20    apologize for that because I think in the proverbial black

21    letter of law words to use, Your Honor, I think you've got it

22    right.  So --

23         THE COURT:  All right.

24         MR. FRIEDMAN:   -- and I think of the Courts of

25    Appeal will find that as well.

1           THE COURT:  I appreciate that, Mr. Friedman.

2           All right.  Let's go back to Mr. Bowling then.

3           Mr. Bowling.

4           MR. BOWLING:  Thank you, Your Honor.  Turning back

5    to the confirmation order, the addition of Mr. Howell's

6    (indiscernible) declaration was all I wanted to mention on

7    that page.  I think from there we go down to -- if you're

8    looking at the bottom, it's Page 15; if you're looking at the

9    top, it's 16 of 51.

10          (Pause in the proceedings.)

11          MR. BOWLING:  Your Honor, this provision, you know,

12   just clarifies that the collateral package of the post-reorg

13   credit documents doesn't require lender to consent to

14   (indiscernible) or their fee interests (indiscernible), it

15   doesn't deem anyone to consent to such security interests, and

16   it governs to the extent there's any conflict elsewhere.

17          THE COURT:  All right.  Let me see if anyone has any

18   objection to this new Paragraph 11, or excuse me, E.

19          (No audible response.)

20          THE COURT:  Mr. Gold.

21          MR. GOLD:  Your Honor, if I may be heard on 11E?

22          THE COURT:  Of course, Mr. Gold.

23          MR. GOLD:  Thank you.  I worked with the Weil and

24   Akin team and I thank them for their time.  This was to

25   resolve objections that we had made on behalf of our client,

1    and there were other landlords who objected to the possibility

2    that the exit financing might encumber the leases.  The

3    continuing issue of course, which was presented to you by --

4    in the context of the DIP, and what the plan and plan

5    supplement documents referring to the exit facility were

6    rather vague.

7              So the point here is that there are certain leases

8    in the Debtor's system that clearly permit lease

9    (indiscernible) and this would bar that and it's not intended

10   to.  There are others, however, that require landlord consent

11   right, and we didn't want the other language in Paragraph 11

12   to be construed as to override that consent right for the

13   landlords.

14             And also the clarification, and it's, again, similar

15   to what we do in DIP orders, if there's no direct lien on the

16   fee, any permitted lien, either by state law or consent, is on

17   the Debtor's leasehold interest, functionally the leasehold

18   mortgage.  And this is the language that reflects that

19   discussion and agreement.

20             THE COURT:  Mr. Gold, I remember the earlier

21   discussion and that's -- it looks like this accomplishes that

22   goal to me as well.  And I need to hear if any lender has any

23   objection to this primarily.

24             (No audible response.)

25             THE COURT:  All right.  I'm not seeing anyone else

1    with an objection.  Let me ask Mr. Bowling if he'll take us --

2    oh, wait, we do have someone.  I apologize.

3          Mr. Rubin, are you all okay with this provision?

4          MR. RUBIN:  Good afternoon, Your Honor.  Jason Rubin

5    from Akin Gump Strauss Hauer & Feld on behalf of the Ad Hoc

6    Lender Group.  I just wanted to try and confirm that we worked

7    with the company and Mr. Gold and we are comfortable with the

8    language of the order.

9          THE COURT:  Thank you, Mr. Rubin.

10          All right.  Mr. Bowling.

11          MR. BOWLING:  Thank you, Your Honor.  From there we

12    would go down to Paragraph 16B.

13          (Pause in the proceedings.)

14          MR. BOWLING:  At the top of Page 20, there it is.

15    Right, Your Honor.  No change to the paragraph except I would

16    just note that I think at this point the schedule is --

17          THE COURT:  January 20 --

18          MR. BOWLING:   -- the status --

19          THE COURT:   -- at 1:30 -- January 20 at 1:30.

20    Right?

21          MR. BOWLING:  That's right, Your Honor.

22          THE COURT:  Okay.  When we get to the one we need to

23    sign let's come back to this.

24          MR. BOWLING:  Okay.  Sounds good.  The last change,

25    Your Honor, is in Paragraph 39A, all the way down at the end.

1    (Pause in the proceedings.)

2    MR. BOWLING:  This is the paragraph that Mr. Perez

3    was referring to earlier.  It clarifies that it was our

4    intention in the plan, clarifies that to the extent there is a

5    cure dispute a cure amount (indiscernible) following the

6    resolution of an assumption dispute, that is not the release

7    that these provisions are referring.  And to the extent there

8    are amounts or performance that are due, they typically are

9    accrued but unbilled.  At this time those are also not

10   released by the plan under (indiscernible).

11   THE COURT:  Mr. Friedman, this looks like it

12   specifically addresses the question you had.  Do you want to

13   confirm that it does?

14   MR. FRIEDMAN:  I'm reading it, Your Honor.  It

15   certainly talks about the payment obligations.

16   THE COURT:  And the cure amounts.

17   MR. FRIEDMAN:  And the cures.  And so I guess for

18   the avoidance of doubt to the extent that appealing arguments

19   relating to the abatement motion in Your Honor's order relates

20   to the cure amount, then, yes, I think that it's actually

21   going to be fine.

22   THE COURT:  Given the discussions we've had no one's

23   going to get in the way of your ability to defend an appeal.

24   I think they're totally estopped from that at this point I

25   think too.

1          MR. FRIEDMAN:  I think that is right, Your Honor.

2     Thank you.

3          THE COURT:  All right.  So does anyone have any

4     objections to the form of the order, the clean order at 1492-

5     1?

6          (No audible response.)

7          THE COURT:  Okay.  Does it have all the attachments

8     with it, Mr. Bowling?

9          MR. BOWLING:  It does, the plan is attached to that

10    version, Your Honor.

11         THE COURT:  Okay.

12         MR. BOWLING:  I'm not sure anything else is

13    necessary to be attached to it.

14         THE COURT:  Okay.

15         (Pause in the proceedings.)

16         MR. BOWLING:  It also has the proposed form of

17    notice of entry of the order.

18         THE COURT:  Right.  I'm looking for that date.  I

19    think it's in Paragraph 16.  Right?  Where I've got to fill in

20    the date?

21         MR. BOWLING:  Yes, that's right, Your Honor, 16E.

22         (Pause in the proceedings.)

23         THE COURT:  All right.  I have signed 1492-1.  To

24    the extent that there were any objections that had been made

25    orally today, they are overruled and I've previously today

1       overruled all of the written objections for lack of any

2       evidentiary support.  And I have signed the order, I've sent

3       it to docketing.  It'll be docketed shortly.

4               What else should we accomplish today?

5               MR. PEREZ:  Your Honor, on behalf of Mr. Barr and

6       Mr. Genender and the whole Weil team, we want to thank you

7       for, you know, being able to deal with this so expeditiously.

8       I know the company is very grateful.  And we have a -- the

9       company has -- still has a large challenge in front of it, but

10      I think this is probably the best that we could emerge from

11      bankruptcy.  So, again, on behalf of Mr. Barr, Mr. Genender

12      and Mr. Bowling and the whole team, Mr. Carlson, we really

13      want to thank you for all your time and effort.

14              THE COURT:  You needn't thank you me, I'm glad that

15      this all got done and it appears to have gotten done to the

16      satisfaction of all of your constituents with, you know, maybe

17      a couple of loose edges here and there, but in general people

18      are very happy I think with what you've done, and I hope that

19      we have a Chuck E. Cheese I can take my grandson to some day.

20      So let's hope we get there.

21              Mr. Rubin, you look like you're talking and I don't

22      have your line active.  I think I do have your line active,

23      you may need to unmute your own.

24              MR. RUBIN:  Yes, thank you, Your Honor, that was

25      actually on my end.  Briefly on behalf of the Ad Hoc Group we

1      would like to echo the Debtor and thank the Court and his

2      staff.  Also, Your Honor, the Ad Hoc Group would very much

3      like to recognize and thank the very hard-working management

4      team which worked tireless during these cases that both

5      shepherded the company through Chapter 11, all the while

6      managing its business on a day-to-day basis during, you know,

7      these very difficult and unprecedented times, especially for

8      the industry in which CEC operates.

9             And the plan that the Court confirmed today is a

10     testament to their hard work and dedication and we would not

11     be here today without their effort.  And our clients very much

12     look forward to continuing to work with them towards making

13     CEC a continued success in the future.

14            And lastly, Your Honor, echoing the statements you

15     just made, we do believe that these cases are a real good

16     example of what can be achieved when all the stakeholders, the

17     company, the secured lenders, the unsecured bondholders, the

18     Creditors Committee, landlords and vendors all work together

19     towards the common goal of first stabilizing the company

20     during these unprecedented times, and then setting the company

21     up for hopefully long-term success.  And I know that we all

22     look forward to seeing CEC continue (indiscernible) in the

23     future.  Thank you.

24            THE COURT:  Mr. Rubin, thank you.  Those comments

25     are very well taken and appreciated.

1          I've got one more person that wants to speak.

2     Mr. Adams, good afternoon.

3          MR. ADAMS:  Good afternoon, Your Honor.  For the

4     Record again, Jason Adams, Kelley Drye & Warren on behalf of

5     the Committee.  Your Honor, I wrote the waiver of the Record

6     with (indiscernible) too much.  Obviously the plan speaks for

7     itself in terms of (indiscernible) restructuring that's been

8     (indiscernible) here where hard work by all of the

9     constituencies.

10         And so as everyone else did, I did want to thank the

11    other professionals here as well as Your Honor and Your

12    Honor's staff for allowing the company to be able to be

13    restructured in a very short period of time during

14    unprecedented times, and we've all talked about that.

15         A couple of people who I thank, or groups that

16    should be thanked in addition is the vendors and the landlord

17    community here who have supported this company throughout this

18    process.  The landlords particularly many of which who signed

19    on to an interim payment arrangement to allow for reduced

20    payments to provide the company the liquidity to survive this

21    bankruptcy process and to emerge.

22         And, Your Honor, I do hope that my kids will be

23    going to Chuck E. Cheese once the pandemic is over and that

24    future generations will be able to enjoy what many of our

25    children enjoy.  So with that, Your Honor, (indiscernible) as

1       we said in our letter of support continue to support the plan.

2       We appreciate the parties' efforts in getting to a plan that

3       will allow for this company to exceed, to provide for the

4       recovery for unsecured creditors, and we thank everybody as

5       well as Your Honor.

6               THE COURT:  Mr. Adams, thank you.

7               All right.  I'm simply going to make the -- a

8       comment that all of the professionals in the case were totally

9       instrumental in making this case a success.  I don't think

10      this case lasts if we take 18 months to get it confirmed.

11      Everyone moved fast and everyone had to work hard, and I've

12      noticed that at every hearing Mr. Perez, who is just a

13      remarkable individual, has taken the lead and is doing

14      everything and is not shirked his duties to lead the case.

15      And I am going to single him out for recognition in terms of

16      getting this done, but that's not to take anything away from

17      all the other people that worked very hard on it, not only

18      from his own firm but from your firm and from others.  But

19      it's quite an accomplishment that this is being done on a

20      consensual basis.  So my grandkids can join yours at Chuck E.

21      Cheese one day, so.

22              MR. ADAMS:  I'm not that old yet.

23              THE COURT:  You're not that lucky yet, but you're

24      definitely that old yet.

25              MR. ADAMS:  I'm not that lucky, you're right.

1        (Laughter.)

2               THE COURT:  All right.  We're in adjournment.  Thank

3    you.

4               MR. PEREZ:  Thank you, Your Honor.

5                    (Hearing adjourned 12:21 p.m.)

6                        * * * * *

7               *I certify that the foregoing is a correct transcript*

8    *to the best of my ability due to the condition of the*

9    *electronic sound recording of the ZOOM/telephonic proceedings*

10   *in the above-entitled matter.*

11    */S./   MARY D. HENRY*

12   *CERTIFIED BY THE AMERICAN ASSOCIATION OF*

13   *ELECTRONIC REPORTERS AND TRANSCRIBERS, CET**337*

14   *JUDICIAL TRANSCRIBERS OF TEXAS, LLC*

15   *JTT TRANSCRIPT #63512*

16   *DATE FILED:  FEBRUARY 24, 2021*

17

18

19

20

21

22

23

24

25